DANIEL J.
The decree of the Circuit court, in so far as it sustains the deed of trust of the 30th of May 1842, is, I think, correct. The fact that a deed of *trust embraces articles which must perish or be consumed in the use, before a sale of them can be made according to the terms of the deed, is not one which, of itself, necessarily shows the deed to have been made with a fraudulent design. The amount, in number or value of such articles, may be so inconsiderable, as compared with the main subjects of the trust, as to justify the conclusion that they were embraced through inattention of the parties to the inconsistency bf providing a security out of property which, from its nature, would necessarily perish before it could be made available as a means of satisfying the trust. Or the deed may embrace other property, to the improvement, support or sustenance of which, such perishable property is essential; and in such last supposed case the fact that the perishable property is embraced in the deed, so far from being indicative of a fraudulent purpose, might rather serve to show an honest and a provident design and effort to make the main subjects of the trust a more certain and productive security. It would be but fair in such case to construe the deed in accordance with the probable design and motives of the parties, and to relieve it of any apparent inconsistency, by holding the provisions in regard to the continued pos *153 session, and the sale of the property, as intended to apply only to such of it as from its nature might reasonably be expected to be in existence at the day of sale.
T'he main objection to the deed is founded on the fact that it embraces growing crops of wheat, rye, corn and oats, which the bill alleges would be severed and consumed before the trustee would, under the provisions of the deed, be at liberty to execute the trust. It seems to me that it is a fair answer to this objection to say, that even if these crops were of such a nature that they could not be preserved till the day of sale, it would be harsh to construe the provision of the deed *in relation to them as designed merely to cover them up from creditors; seeing that the deed also embraces a number of horses and a cow, to the sustenance of which they would not, according to the testimony, probably be more than adequate. Besides, we have no proof that these crops are of such a nature as necessarily to perish before the dajr of sale: On the contrary, common observation and experience prove that they may be preserved without material loss or deterioration, for a longer period.
There is, therefore, nothing on the face of the deed, to show that the property conveyed was not designed by the parties to be a substantial and bona fide security for the debts, to secure the payment of which it was made.
It remains to be considered whether the appellee Paris had, at the date of his surrender, on taking the oath of an insolvent debtor, any such interest under his father’s will, in the property sought to be subjected to the payment of the appellant’s demand, as can, in equity, be so subjected.
A court of equity will not, in general, assume the exercise of a discretionary power vested in a trustee, nor interfere to control the trustees acting bona fide in the exercise of their discretion. Nor will a suit be entertained to compel the trustees to exercise their power. And the refusal of a trustee to exercise a purely discretionary power is not a breach of trust for which he can be removed from office, although the trustee assigns no conclusive reason for the refusal, and the proposed act is apparently beneficial to the trust estate. Hill on Trustees 715.
Again: On page 725 of the same treatise, the author says, the fourth and last class of discretionary powers is where the discretion is to be exercised on matters of pure personal judgment. For instance, when the trustees are empowered to give their opinion *on the good or ill conduct or merits of an individual; or to determine the propriety or impropriety of continuing the payment of an annuity; or to give their approbation to a settlement. The trustees alone are competent to exercise these powers, for they may have private and peculiar grounds for arriving at a proper conclusion, into which the court could not providentially enquire, and which the trustee might refuse to disclose. The exercise of such authorities cannot in general be assumed or even controlled by the court. If, however, a trustee is actuated by fraudulent or improper motives in exercising or refusing to exercise his discretionary powers, a court of equity, upon proof of the improper conduct, interposes its jurisdiction on a totally different principle -not for the purpose of exercising the discretion committed to the trustee, but to check or relieve from the consequences of an improper exercise of that discretion. Ibid. 716.
If the rights of John Paris the son had been left by the will of his father dependent on the mere will or discretion of the trustees, to be exercised or not as they might please, without reference to the conduct of the son; or if the trustees had never expressed themselves satisfied of his reformation; or on being called on to express their opinion as to his habits and steadiness, had either disclaimed doing so, or had said that from “proper information” they had formed the judgment that it would not be prudent to entrust him with the management of the estate intended for his benefit, it would have been difficult, in view of the foregoing authority, to find any ground on which the interference ot a court of equity could have been justified. But I do not think that the will is to be so construed: And the course -of the trustees has been exactly the reverse of that just supposed. The fifil clause of the will, after directing the funds arising from the sale of the property to be loaned out, and the interest to be paid *over annually to the son, proceeds, “but should my executors judge, from proper information of my son’s habits and steadiness, that it would be prudent 1o entrust him with the full management of the funds intended for his benefit, then it is my will that they turn over the whole into-his hands.” Bet it be that the executors are the sole judges whether the conduct of the sou has been such as to render it prudent that he should be invested with the estate, and that no court has a right to correct their judgment, however erroneous it might be, yet when their judgment is formed and announced, and is in favor of turning over the estate, does there not arise a duty on their part to do so? Whenever the trustees, in the exercise of their judgment and discretion, have arrived at the conclusion that it is prudent the son should have the property intended for his benefit, free from their control, the testator says, it is his will that he should so enjoy it. Is not any further holding by, or control over the property on the part of the trustees thenceforward in conflict with the mandatory language of the will? Suppose the will to have been in all respects, as it is, with the exception that the “turning over of the estate into the hands of the son” had been made dependent on the approval of his conduct by persons other than the executors, would not the executors, upon being certified of such approval, have been bound at once *154 to invest him with the title? And are the rights of the son consequent on the approval •of his conduct, modified by the fact that the persons who by the will are to judge of his conduct and those who upon the approval of it are to turn over the property to him, are the same? It seems to me whenever the son shows that his conduct has met with the approbation of the executors, he does all which the testator intended he should do in order to entitle him to the free and uncontrolled enjoyment of the bounty intended *for him. This he has done. In their answer to the bill filed by him, and in their depositions taken in this cause, the executors express themselves satisfied of his reformation; and in the latter they say that such is their conviction on the subject, that they would, at all times, since his marriage, have been willing to place the full control and management of the estate in his hands. Besides, they are parties to this suit, and have not denied the allegations of the bill. They have exercised their discretion and pronounced their judgment in the only matter which was left to their discretion. From the moment of their having done so the right or power in or over the estate intended for the testator’s son remaining in them, call It by whatever name, became subject to the command, in the will, to turn it over to him free from their control. They thenceforward became trustees of an estate, to the full and unrestricted enjoyment of which another is beneficially entitled under the provisions of the instrument whence all their powers are derived.
The executors, in their answer to the bill filed by the appellee Paris, having admitted his reformation, he had, I think, a right to insist on a decree directing them to convey the legal title to the property held by them for his benefit. The decree which was rendered neither affirmed nor denied that right. It is true that the court then expressed the opinion, which it has carried out in the decree rendered in this cause, viz: that it was a matter resting entirely in the discretion of the executors (notwithstanding the reformation of Paris and their approval of his conduct), whether they would invest him with the legal title to the estate. Yet the decree went no further than to stay the sale of the property, except so far as might be necessary for the payment of debts and legacies. The waiver for the present by Paris of a decree directing *the executors to convey the title, did not, I think, conclude his rights, nor deprive him of the power, at any time thereafter, to ask for and insist upon such a decree. The executors still remained clothed with the legal title, but they still stood, as they had alwaj^s stood, ever since they had announced their judgment of approval of the conduct of Paris, simply as trustees bound by the requirements of the will, and in foro conscientias, to invest him with the title and control of the estate. In this state of things, he took the benefit of the insolvent debtors’ oath, and whatever right he had, passed to the sheriff for the benefit of his creditor the appellant. In asking the court to subject the property to the satisfaction of his demand, the appellant, it seems to me, seeks no interference with the exercise of any discretion with which the trustees are clothed by the will. He in effect only asks the court to declare, what they have admitted and still admit, that the condition on which they were to convey the estate has been complied with, and to announce the conclusion which follows, that it stands, in equity, freed from their control, and .subject to the contracts and engagements of the beneficiary. The case is a peculiar one, and counsel have not furnished us with any precedents, nor have I been able to find any which would seem to rule it. The definition of powers and trusts, as given in the authorities, may be sufficiently plain, yet it often becomes a difficult task, in construing the language of an instrument, to determine whether it confers a mere power or a power in the nature of a trust, and consequently, whether the power is one over the exercise of which a court of equity can take any control. When the executors are clothed with an arbitrary discretion, an absolute power to appoint or withhold the bounty, as in Pink & others v. De Thuisey, 2 Madd. R. 423, where the executor was left at liberty to give to the legatee one thousand pounds, ‘ ‘If he found the thing *proper, ” or as in the case of Weller v. Weller (cited in the foregoing case as having been decided at the rolls), where the testator gave his son, who had been extravagant, a sum of money, with a power to the executors to advance more, “if there thought proper,” the courts have, I think, very properly refused to decide upon the propriety of the executor’s withholding the legacy, holding that to do so would be to assume an authority confided solely to the discretion of the executors. But in a case like this, where the judgment and discretion of the executors are limited and directed to a specified enquiry, the reformation of the conduct of the legatee, and where in the event of such judgment being favorable, the will, imperatively requires the executors to hand over the legacy; where the executors have exercised their judgment and discretion, have declared themselves satisfied with the result, and have admitted their willingness to hand over the estate; where a refusal on their part to execute the power could be from no motive connected with the conduct of the beneficiary, but would be directly in conflict with their own convictions of right and their own views of the intention of the testator; it seems to me that a claim to the interposition of a court of equity is presented, which it cannot reject without violating the principles which usually govern its action; that the executors stand before the court, not in the attitude of persons clothed with a mere power, but as charged with an acknowledged trust or duty, which, in equity and good conscience, they are bound to perform.
*155 The only person here making opposition to the performance of this duty is the beneficiary, the appellee Paris. Without stopping to comment on the unenviable attitude in which he has placed himself before the court, it is obvious to remark that no desire .of his that a power over the estate shall remain in the executors, can prejudicially affect the rights of the appellant.
*Regarding that power as one in the nature of a trust, which the executors, at the date of the surrender by Paris, stood bound to perform, I think that he then had such an interest in the estate as could pass for the benefit of his creditor, and that the latter has a right to have it subjected to the payment of his demand.
I am, therefore, of opinion to reverse the decree of the Circuit court, and to render, instead thereof, a decree dismissing the bill so far as it seeks to invalidate the deed of trust; and remanding the cause, in order that the interest of Paris in his father’s estate may, after a settlement of the proper accounts, be subjected to the satisfaction of the appellant’s debt.
The other judges concurred in the opinion of Daniel, J.
The decree was as follows:
The court is of opinion, that the deed of trust of the 30th of May 1842 is bona fide, and not made to delay, hinder or defraud creditors; and is, therefore, valid against the claim of the appellant. The court is further of opinion that the appellee John Paris, by virtue o£ the power conferred upon the executors by the will of John Paris the elder, and the action of the executors under it, acquired, and held, at the date of his surrender as an insolvent debtor, at the suit of the appellant, an interest in the estate of his father, which passed by said surrender to the sheriff of Augusta county, and which ought to be subjected to the payment of the appellant’s debt. So much of the decree as dismisses the bill as to the appellee Fultz, and orders the proceeds of the sale of the trust property to be paid to the parties entitled under the trust deed, is, therefore, affirmed; and so much of the decree as denies the appellant’s right to have satisfaction of his debt out of the interest of the appellee Paris in his ^'father’s estate, is reversed with costs to the appellant as against the appellee Paris. And this cause is remanded to the Circuit court, in order that the accounts of the executors may be settled, and that the debt of the appellant may be satisfied by a sale of the tract of land of one hundred and fifteen acres in the bill and proceedings mentioned, if a resort thereto shall become necessary.
FRAUDULENT AND VOLUNTARY CONVEYANCES.
1. In General.
II. Void Transfers.
A. Absolute Transfers.
1. Void as to Creditors and Subsequent Purchasers for Value and without Notice-Fraud in Fact.
a. Purchases.
(a) Realty.
(b) Personalty.
b. Liens Given by Confession of Judgment or Otherwise.
3. Transfers Which Are Inoperative as to Certain Persons Though Not Affected with Fraud in Fact.
a. Transfers Which Are Voluntary, or upon Consideration Not Deemed Valuable in Law.
(a) Common-Law and Statutory Doctrines as to Voluntary Conveyances.
(b) Antenui>tial Settlements in Consideration of Marriage.
(c) Postnuptial Settlements.
(d) Gifts.
(1) Personalty.
(2) Realty.
b. Fraud Presumed from Inadequacy of Consideration.
c. When, and as to Whom Unrecorded Transfers Are Void.
d. Effect of Retention of Possession by Vendor.
e. Possession Retained by Donor.
B. Conditional Transfers.
1. Loans.
2. Deeds of Trust.
a. In General.
b. Provisions Which Postpone the Time for Enforcing the Deed—Effect.
c. Deed Furnishing Security against Losses and Liabilities -Potential Lien.
d. Reservations to the Vendor.
e. Provisions Conferring Special Powers upon the Trustee and Providing for His Compensation- -Validity.
f. Special Privtheges Given to Certain Creditors—When Valid.
C. Cases Illustrating Circumstances under Which Transfers Have Been Declared Valid Though Attacked as Fraudulent.
III. Rights and Liabilities.
A. Immediate Parties.
1. Vendor and Vendee.
a. In General.
b. Vendor.
c. Married Women as Vendors.
d. Vendee.
(a) In General.
(b) Bona Fide Purchasers.
2. Trustee and Cestui Que Trust.
3. Mortgagor and Mortgagee.
4. Loaner and Loanee.
5. Donor and Donee.
6. Assignor and Assignee.
B. Third Persons.
1. Creditors.
a. In General.
b. Rights and Liabilities of Creditors under Transfers Not Affected with Actual Fraud.
c. Rights and Liabilities of Creditors under Transfers Fraudulent in Fact.
d. Compromises by Creditors.
2. State.
3. Subsequent Purchasers.
IV. Remedies.
A. In General.
B. Equity Jurisdiction.
1. In General.
*156 2. Statute of Limitations as a Bar to Instituting Suit.
a. Voluntary Conveyances.
b. Effect When Fraud Is an Element.
3. Specific Lien as a Condition Precedent to the Institution of Suit.
C. Parties.
D. Pleading and Practice.
1. In General.
2. Bill, Complaint or Petition,
a. In General.
h. When a Bill Is Not Multifarious.
c. Allegations and Averments Necessary to Sustain Bill. >
d. Bight to Sue.
3. Plea, Answer and Subsequent Pleadings.
4. Variance.
E. Evidence.
1. Presumption and Burden of Proof.
a. In General.
b. As Affected by Consideration.
c. As Affected by Possession.
d. Transactions between Belatives.
e. Transactions between Husband and Wife.
f. Indebtedness as an Element.
g. Intentof Grantor.
2. Admissibility.
a. In General.
b. Evidence Inadmissible by Reason of the Incompetency of Parties.
c. When Evidence Is Admissible to Preve Consideration.
d. When and against Whom Recitals in Deeds Are Admissible as Evidence.
e. Prior 'or Subsequent Conduct of Persons Interested.
3. Weight.
a. In General.
b. In Equity.
c. Circumstantial Evidence.
d. Nature and Circumstances of the Transaction.
(a) In General.
(b) Conduct.
(c) Possession.
(d) Relationship.
(e) Husband and Wife.
e. Insolvency.
f. Consideration.
g. Bill Pro Confesso.
F. Injunction.
G. Trial.
H. Decree.
1. Interlocutory Decree—As a Bar to Another Suit.
2. When Decree Is Final.
3. When Decree Is Erroneous.
4. When Improper for a Court to Decree as to the Sufficiency of Property to Pay Debts.
5. When Vendor of Land and Assignee of Debt Not Entitled to a Decree.
6. Decree When Relief in General Prayed for.
7. Decree Setting Aside a Conveyance.
8. Decree Ordering Sale.
9. Decree for Sale of Property Other Than That Conveyed.
10. Personal Decree.
11. Operation and Effect of Decree.
J. Lien of Attacking Creditor.
1. Lien of Plaintiff.
2. Petitioning Creditor’s Lien.
K. Disposition of the Property.
1. In General.
3. Subjecting Land to Claims of Creditors.
3. Costs and Attorney’s Fees.
4. Priorities of Creditors.
L. Review.
]. Presentation and Reservation in Lower Court of Grounds of Review.
3. What Parties Are Entitled to Allege Error.
3. Reversal Dependent upon a Question of Fact.
Cross References.—Monographic notes on “Gifts”; “Creditors Bills”; “Assignments”; “Assignments for Benefit of Creditors”; “Decrees.”
Subjects Excluded.—The following note does not include within its treatment transfers by husband or wife, void as to each other; transfers by partners void as to partnership or individual creditors; fraud in assignments for the benefit of creditors, by rea-, son of preferences or otherwise; transfers void under acts of bankruptcy or insolvency laws; nor fraud in disposing of property as grounds for arrest, or attachment.
1. IN GENERAL.
Construction of Statutes against Fraudulent Conveyances.—The statute against fraudulent conveyances, chapter 74, section 1, of W. Va. Code 1899, like all other statutes against fraud., is to be liberally expounded for the suppression of fraud. Harden v. Wagner, 22 W. Va. 356.
And in Hutchison v. Kelly, 1 Rob. 123, the policy of the statute of 13 Eliz., chap. 5 (substantially adopted in Va. Code, ch. 109, to prevent frauds and perjuries), was investigated by Judge Baldwin, and the true principle was declared by him to he, that a fraudulent intent of a grantee against one or more creditors is fraudulent against all; and that no distinction exists between prior and subsequent creditors, other than that which arises from the necessity of showing a fraudulent intent against some creditors, which cannot he done in behalf of creditors in existence at the time of the conveyance, but by proving either a prior indebtedness or a prospective fraud against them only.
Meaning of “Void” as Used in Statute, Va. Code 1887, § 2458.—The statute relating to fraudulent conveyances, Va. Code 1887, § 2458, provides that gifts, conveyances, etc., made with intent to “delay, hinder, or defraud creditors, purchasers, or other persons,” etc., shall he void as to such creditors, etc. From the provision following in this same section, the true effect intended by the statute would seem to be.that such “conveyance,” etc., is rendered “voidable” (not void), as the statute expressly protects a purchaser for valuable consideration, who had no notice of fraud affecting the title of his immediate grantor.
Principles Applicable to Voluntary and Fraudulent Conveyances.—Designating the principles applicable to a voluntary conveyance, in a controversy between the creditors of the grantor and the claimant under the deed, Baldwin, J., in Hunters v. Waite, 3 Gratt. 26 (1846). says that, "If a man In insolvent circumstances conveys away his property to strangers, or settles it upon his wife and children, the law concludes the design to he fraudulent against his creditors, and all evidence to the contrary is idle or delusive; and, so if he renders himself insolvent by a voluntary conveyance, however meritorious in itself merely. It is in vain to speculate upon his motives, ,or adduce evidence of an honest purpose. It may he that he has acted through igno *157 ranee, or mistake or misconception. Apologies and .excuses may be found to absolve him from moral turpitude, but to these the law cannot listen. He is bound to know his own circumstances and the just demands against him: and the injustice and wrong to his creditors are palpable and unquestionable. On the other hand, if a man is in flourishing or unembarrassed circumstances, and exercises a reasonable and prudent discretion in gifts or advancements to his children, adapted to their wants and justified by his means, leaving an ample fund for the payment of his debts; there can be no propriety in the conclusion of a fraudulent purpose, from the mere fact of indebtedness at the time.'’ At present, however, it is provided by statute, that a voluntary conveyance, etc., which is upon consideration not deemed valuable in law shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account, merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made, etc. Va. Code 1887, § 2459.
But where there is a fraudulent intent on the part of the grantor in a deed founded upon a valuable consideration, and such intent is not known to the grantee, the latter is not chargeable with want of good faith, since no rule is better established than that both parties must concur in the fraudulent intent to render the deed absolutely void. Rixey v. Deitrick, 85 Va. 45, 6 S. E. Rep. 615; Skipwith v. Cunningham, 8 Leigh 271; Norris v. Jones, 93 Va. 183, 24 S. E. Rep. 911; Hazlewood v. Forrer, 94 Va. 703, 27 S. E. Rep. 507; Bishoff v. Hartley, 9 W. Va. 100; Herring v. Wickham, 29 Gratt. 628; Bank v. Belt (Va.), 30 S. E. Rep. 467; Boggess v. Richards, 39 W. Va. 567, 20 S. E. Rep. 599, 45 Am. St. Rep. 938; Henderson v. Hunton, 26 Gratt. 926.
And, ¡if a conveyance is not fraudulent in its Inception, it cannot become so by subsequent matters; because the statute requires that the act .should be done with the criminal intent; however, if it be afterwards employed for a fraudulent purpose, a court of equity will interpose to prevent such use of it. Harden v. Wagner, 22 W. Va. 356. Yet a deed which is fraudulent in fact, is void in loto, and cannot stand as security for grantees who have notice of the fraud. Livesay v. Beard, 22 W. Va. 585.
Who Is an Insolvent—And a person is insolvent within the statutory meaning (W. Va. Code 1899, eh. 74, § 2) when all of his property is not sufficient to pay his debts. Carr v. Summerfield (W. Va. 1899), 34 S. E. Rep. 804.
Homestead Deed.—However, the filing of a homestead deed, claiming as exempt, under the homestead law, store fixtures and certain merchandise in stock, is not a conveyance or assignment which .can be attacked as in fraud of creditors, under Va. Code 1887. § 2460, as amended. Simon v. Ellison (Va.), 22 S. E. Rep. 860.
Fraud Determined by Inspection of Deed.—When a court is called upon to decide whether a deed is fraudulent upon its face, it must decide the question from theinspection of the deed alone. And unless, upon an inspection of the deed claimed to be fraudulent on its face, the court sees that it contains some provision which clearly shows that the intent of the grantor, in executing the deed, was to hinder, delay, or defraud his creditors, the court cannot hold the deed fraudulent on its face. Landeman v. Wilson, 29 W. Va. 702, 2 S. E. Rep. 203.
A Suit to Set Aside Conveyances on Ground of Fraud Is Not a “Controversy Concerning Land.” -A suit to set aside several deeds on the ground of alleged fraud and to subject the lands thereby conveyed to the debt of the complainants, is not in the category of “controversies concerning the title or boundaries of land,” within the meaning of the constitution of the state, art. 6, § 2. Fink v. Denny, 75 Va. 663.
Claims Protected against Fraudulent Transfers.—The Va. Code 1873, ch. 114, § 1, protects against fraudulent transfers, all claims, debts and demands, including claims to damages for breach of contract to marry, for which judgment may, after the execution of the conveyance, be obtained. Burton v. Mill, 78 Va. 468.
II. VOID TRANSFERS.
A. ABSOLUTE TRANSFERS.
l. Voji) as to Creditors and Subsequent Purchasers for Value and without Notion -Fraud in Fact.

a. Purchases.

(a) Realty.
In General—Fraudulent Intent Vitiates.-A voluntary conveyance will be declared fraudulent as to subsequent creditors, if, from the circumstances and other evidence, the court is convinced the deed was made with intent to defraud such creditors; and the conveyance being voluntary, it is immaterial whether the grantee had notice of the fraud. Mayhew v. Clark, 33 W. Va. 387, 10 S. E. Rep. 785; Duncan v. Custard, 24 W. Va. 730; Connoway v. McCann, 30 W. Va. 200, 3 S. E. Rep. 590.
And while it is true, as held in Lockhard v. Beckley, 10 W. Va. 88 (1877), under the second section of chapter seventy-four of the Code of West Virginia, that a voluntary conveyance, as to subsequent creditors, is not void merely on the ground that it was voluntary, and the party indebted at the time it was made; yet upon the question whether it is fraudulent in fact, it is proper to consider the circumstances of its being voluntary, and the party indebted at the lime: and if additional circumstances connected with these two be sufficient to show fraud in fact, it is void as to subsequent creditors.
When intent Is to Avoid Payment of Fines.—Thus, if a party engaged in the unlawful retailing of ardent spirits conveys away his land with the intent to prevent the state from subjecting it to the payment of any future fines for such unlawful retailing, such deed is fraudulent, although the sales in which fines were subsequently recovered had not then been made. State v. Burkeholder, 30 W. Va. 593, 5 S. E. Rep. 439.
When Intent Is to Defeat Recovery of Damages in Tort.-Likewise it is a settled doctrine that a deed made with intent to defeat a recovery of damages in an action of tort, and before trial and judgment, is fraudulent and void to the same extent as a conveyance to hinder and delay existing creditors, and the intent need not be established by express proof. Johnson v. Wagner, 76 Va. 587.
A Valuable and Adequate Consideration Passes, but Intent Is Fraudulent.—-And although a deed be made for a valuable and adequate consideration, yet if the intent of the grantor be dishonest or unlawful, the deed will be deemed fraudulent, if the grantee had notice of such intent. Harden v. Wagner, 22 W. Va. 357; Goshorn v. Snodgrass, 17 W. Va. 717; Briscoe v. Clarke, 1 Rand. 213; Livesay v. Beard, 22 W. Va. 585; *158 Bowyer v. Martin, 27 W. Va. 442; Bartlett v. Cleavenger, 35 W. Va. 719,14 S. E. Rep. 273. Moreover, if a deed is fraudulent in fact, it matters not, -whether the grantor had much or little property, when the conveyance was made. Silverman v. Greaser, 27 W. Va. 550.
Fraud on Grantor’s Part Alone—Conveyance without Consent or Knowledge of Grantee.—In Roanoke Nat. Bank v. Farmers’ Nat. Bank, 84 Va. 603, 5 S. E. Rep. 682, a grantor conveyed land to a certain grantee, as it appears, without his consent or knowledge, and had the deed recorded. A creditor at large under Va. Code 1873, ch. 175, § 3, brought a suit to annul it as fraudulent. The grantor made no appearance. After the decree was entered and during the same term, the grantee filed his answer, denying that he had ever claimed any title, under the deed. The court held the deed fraudulent as to grantor’s creditors, and therefore void.
Effect of Inadequacy of Consideration Combined with Subsequent Fraud.—And, as further held in Livesay v. Beard, 22 W. Va. 585, if an insolvent debtor for an inadequate consideration conveys a valuable portion of his real estate to his children, and others, and on the same day makes a conveyance of other property to secure preferred creditors, which deed is fraudulent on its face, and four days thereafter makes a similar deed conveying all the residue of his property, which last deed is also fraudulent on its face, these facts taken together are strong evidence of a fraudulent intent in the execution of the first deed.
Purchasers Participating' in Debtor’s Design to Avoid Payment of Debts.—So, where the uncontroverted facts in the case show that the debtor, for the purpose of escaping a pursuing creditor, conveyed his real estate to a purchaser, even for value, which purchaser had knowledge of the creditor’s pursuit and was aiding the debtor to escape the same, such purchaser will be held to have participated in the fraudulent purpose of his grantor, and the conveyance will be avoided as to such creditors. Gillespie v. Allen, 37 W. Va. 675, 17 S. E. Rep. 184.
Where Only a Part of the Grantees Have Notice of Fraudulent Intent.—But where a deed of several grantees jointly is fraudulent in fact, but it being proven that the grantor executed it with intent to defraud his creditors, it will be void only as to such grantees as had notice of the fraud, and may stand as security for the consideration paid by such grantees as had no notice of such fraud. Livesay v. Beard, 22 W. Va. 585; McGinnis v. Curry, 13 W. Va. 29.
Fraudulent Scheme between Debtor and Grantor to Defeat the Creditor’s Recovery.—The case of Davis, etc., Co. v. Dunbar, 29 W. Va. 617, 2 S. E. Rep. 91, affords a striking example, illustrating the fraudulent intent of the grantor in making a conveyance. The facts were that, a certain sewing machine company, by its agent, made a contract with a person by the name of Dunbar, to sell sewing machines for the company: the father of Dunbar, the defendant, gave guaranty, that the son would faithfully pay all sums which he might owe under said contract, and the father and his two sons, the defendant and another, represented that the father was solvent and owned 94 acres of land. Three years before this date, the father had made and delivered a deed for this land to these two sons, but the deed had never been recorded. After the contract with the machine company was made, the two sons and the father agreed that the deed should be made for the land to the brother of the defendant, which was done, and placed on record the day before the defendant entered upon his duties under the contract. The defendant became indebted, soon after, to the company in a large sum of money, and then became insolvent. Upon a bill filed to subject the 94 acres of land to the payment of the debt, it was held, that under the circumstances, the scheme was one to defraud the plaintiff, and the 94 acres of land should be subj ected to the payment of the debts.
Fraudulent Intent Evidenced by Grantee’s Participation and Notice.—And where property is conveyed for the benefit of creditors to a trustee, and the trustee sells it to the wife of the debtor, and it is afterwards taken on fi. fa., against the husband, the question whether the transaction is fraudulent depends on the wife’s good faith and want of notice, and not on the good faith of the trustee. Hughes v. Kelly (Va. 1898), 30 S. E. Rep. 387.
So, if it appears that the wife actively participated in the attempt to sustain a conveyance from her husband to her, by claiming that certain additional and unfounded indebtedness was a part of the consideration for the property, the conveyance will be treated as fraudulent in fact, and void in toto as to the creditors of the husband, and will not be permitted to stand as security to the wife for the valid portion of the consideration paid by her, as against such creditors. Webb v. Ingham, 29 W. Va. 389, 1 S. E. Rep. 816.
Homestead Deed.—See, in this general connection of transfers made with fraudulent intent, the case of Rose v. Sharpless, 33 Gratt. 153, in which it was declared that, where a "householder or the head of a family” executes a homestead deed as a part and in furtherance of a design to hinder, delay, and defraud his creditors in the recovery of their just debts, such deed will be vitiated and invalidated by such conduct.
(/;) Personalty.
Assumed Ownership of Property by Consent of Real Owner—Fraudulent Intent.—In Bolling v. Harrison, 2 P. & H. 532, a resident of Virginia, owned certain slaves in Florida, and wished to bring them to Virginia but fearing lest his creditors should seize them under execution, on their arrival, he persuaded another to assume to be the owner of them and conveyed them, by deed, to a trustee for the benefit of his (true owner’s) wife and children. This was done, and the increase were brought to Virginia, and were kept in the possession of the true owner for several years, and were then carried by the true owner, with their family, beyond the limits of the state. Certain judgment creditors of the true owner then sought to hold the pretended owner liable in equity for the value of the negroes. The pretended owner never had the title to the negroes, nor possession or control of them, but merely lent himself to the scheme of the true owner, as above stated. The court held the deed void; and further, that the mere representation in the deed as to the ownership of the property, did not make the pretended owner liable in equity, for the value of the property, as constructive trustee for the creditors, though he would have been so liable if he had acquired the possession or control of the property. And if any creditor had suffered actual damage by the fraudulent misrepresentation, his remedy was at law.
b. Liens Given by Confession of Judgment, or Otherwise.— And in Crawford v. Carper, 4 W. Va. 56, a debtor, who was insolvent, confessed judgment in favor of one of his creditors, giving the creditor *159 first lien upon his land. The debt thus attempted to be secured, was barred by the statute of limitations. The land upon which the lien rested was not sufficient to pay all of the debts owed. Upon these facts the court declared the judgment void, as coming within the purview of the prohibition, against fraud in obtaining judgments, contained in Va. Code 1860, ch. 118, § 1; Va. Code 1887, § 2458.
But In Elliot v. Trahern, 35 W. Va. 634, 14 S. E. Rep. 223, a judgment was confessed by a son to his father upon notes previously executed to him. The court held that the judgment was not fraudulent as to debts existing against the estate of the intestate, although the son was at the time the judgment was confessed one of the sureties of the administrators of the estate on their official bond; and several months after the judgment was confessed it was ascertained that the administrators had committed a considerable devastavit.
However, where a grantor for another’s benefit, puts a lien on his real estate for the amount of a fictitious note that would cover its value, and then xefershis creditors to the supposed beneficiary, as a probable purchaser of their debts, and some sell at fifty cents on the dollar, there being a secret agreement between the grantor and supposed beneficiary that the discounts should be shared equally between them, the deed creating the lien is fraudulent in fact and void as to the grantor’s creditors. Rucker v. Moss, 84 Va. 634, 5 S. E. Rep. 527.
3. Transfers Which are Inoperative as to Certain Persons Though Not Affected with Fraud in Fact.

(/. 'Transfers Which Are Voluntary, or upon Consideration Jfeoi Deemed Valuable in Law.

(a) Coinmon^Law and Statutory Doctrines as to VoI= untary Conveyances.
Common^Law Doctrine.—Declared and enlarged by 13 Eliza, ch. 5 (substantially adopted in 1 R. C. § 2. ch. 101; Va. Code 1887, § 2458). It seems to have been a well-settled doctrine at common law that a voluntary conveyance, which interfered with or broke i ri upon the rights of existing creditors, would not be permitted to take effect to the prejudice of other just demands : and this according to many of the cases, without regard to the amount of the debts, or the extent of the property settled, or the circumstances of the party. Nevertheless, numerous cases are to be found, which in effect maintain the doctrine, that a conveyance, although voluntary, may be good, under circumstances, even as against existing creditors ; and that the parties being indebted at the time is but an argument of fraud, the question still being in every case, whether the conveyance is a bona fide transaction, or a mere device to delude and defeat creditors. The subject is one involving the inquiry into the relations which the two great classes of creditors, prior and subsequent, occupy in relation to a voluntary settlement. And the question is, whether they occupy a common ground, so that the convej’ance which would be adjudged fraudulent as to the former, would also lie held fraudulent as to the latter; or will a discrimination be made, the effect of which will be to withdraw from inquiry in the case of a prior creditor the various circumstances attending the execution of the conveyance, such as the nature of the consideration, the value of the property settled, compared with that, if any. retained, the extent of the indebtedness, etc.; all of which are in the case of the subsequent creditor most proper to be considered ; and upon which, in order to succeed, he must be able to fix the imputation of fraud in the absence of direct and positive proof of the intent. Chancellor Kent clearly recognizes the distinction between the two classes. In the case of the prior creditor, he considers that any inquiry into the amount of debts existing at the time would be embarrassing if not dangerous; and he regards it as wholly unnecessary, considering the debtor as absolutely disablea from making any voluntary settlement to the prejudice of any existing debts ; and such, he says, is the clear and uniform doctrine of the cases. See Reed v. Livingston, 3 Johns. Ch. R. 481, 500. Judge Story, on the other hand, evidently considers him as carrying the doctrine too far. He thinks that, mere indebtedness would i&otper se avoid a voluntary conveyance even as to subsisting creditors, unless the other circumstances are such as justly to create a presumption of fraud. 1 Story’s Eq. Jur. 360-365, inclusive.
The question has been the subject of a most animated and elaborate discussion between two of the former judges of the supreme court of Virginia, in the cases of Hutchison v. Kelly, 1 Rob. 123, Bank of Alexandria v. Patton, 1 Rob. 499, and Hunters v. Waite, 3 Gratt. 26, in which Judge Baldwin opposes the opinion of Chancellor Kent, and Judge Stanard maintains the correctness of Chancellor Kent’s opinion. But it seems that both these eminent jurists agree, that in the case of a subsequent creditor, a settlement cannot be impeached on Uumere ground of its being voluntary, if there be no actual fraudulent view or intent at the time it is made. To let in .such a creditor it must be shown that there was mala fldes or fraud in tact in the transaction. If the grantor, however, be indebted at the time he makes the voluntary conveyance, and due provision is made of all existing debts, it. is maintained by some courts that it is clear, that all just imputation of fraud in respect to them is out of the question. The above discussion of the principles relating to fraudulent and voluntary conveyances, their effect upon the rights of existing and subsequent creditors, at common law, is taken almost verbatim from the well-considered opinion rendered by Judge Lee in Johnston v. Zane, 11 Gratt. 552. See this case also for a valuable collection of English, and other authorities supporting propositions set forth in the principal case.
In the light of 13 Eliz. ch. 5 (substantially, Va. Code 1887, § 2458), which is held tobe declaratory of the principles of the common law, though “more extensive and salutary,” the question as to the validity of a voluntary conveyance made by a debtor, who was perfectly solvent, and retained sufficient property out of which to pay all existing debts, continued to be controverted until the provision relating to “voluntary gifts, conveyances,” etc., contained in the revisal of the Code in 1850 (Va. Code 1887, § 2459), in which the view as held by Judge Stanard (dissenting opinion in Hutchison v. Kelly, 1 Rob. 128) is adopted, namely, that any transfer of property upon a consideration not deemed valuable in law (or upon consideration of marriage) shall be void as to existing creditors. See W. Va. Code 1899. ch. 74, § 2. For fuller discussion of the statutes involved, and collection of cases on general subject, see the divisions which immediately follow.
Statutory Provisions.—Sections 1 and 2, chapter 74, of the West Virginia Code 1899, make a clear distinction between the rights of existing and subsequent creditors as to a voluntary conveyance; and such a conveyance cannot be impeached by subse *160 quent creditors on the mere ground of its beingvoluntary, and the party making it, or at whose instance it was made, being indebted to some extent, if there be no actual fraudulent view or intent in the party at the time. Lockhard v. Beckley, 10 W. Va. 38. See similar provisions of Va. Code 1887, §§ 2468, 2459; Pratt v. Cox, 22 Gratt. 330; Penn v. Whitehead, 17 Gratt. 528.
But a voluntary transfer of property to be valid against subsequent creditors must be recorded, or possession must remain solely and bonajlde with the donee. Davis v. Payne, 4 Rand. 332. In this general connection, see Bank of Alexandria v. Patton, 1 Rob. 499; Hunters v. Waite, 3 Gratt. 26; Penn v. Whitehead, 17 Gratt. 503; Huston v. Cantril, 11 Leigh 137; Davis v. Noll, 38 W. Va. 66, 17 S. E. Rep. 791; Wick v. Dawson, 42 W. Va. 43, 24 S. E. Rep. 587.
However, there seems to be a conflict among the decisions in West Virginia, differing among themselves as well as from the Virginia decisions, relating to the construction of similar sections in the respective Codes, regarding “transfers” and “charges” “upon a consideration not deemed valuable in law.” The provisions are almost identical in their wording, as will appear from the following extracts: the West Virginia Code, 1899, ch. 74, § 2, is in partas follows: “Every transfer or charge (‘transfer’ including every gift, sale, conveyance and assignment, and the word ‘charge’ including every confessed judgment, deed of trust, mortgage lien and incumbrance), which is not upon consideration deemed valuable in law, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not upon that account merely be void as to creditors whose debts shall have been contracted, or as to purchasers who shall have purchased after it was made; and though it be declared to be void as to a prior creditor because voluntary, it shall not for that cause be decreed to be void as to subsequent creditors or purchasers.” The Virginia enactment, § 2459, reads as follows: “Every gift, conveyance, assignment, transfer, or charge, which is not upon consideration deemed valuable in law, or which is upon consideration of marriage (the latter clause not appearing in the West Virginia statute, it will be observed), shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account, merely, be void as to creditors whose debts shall have been contracted, or as to purchasers who shall have purchased after it was made; and though it be declared to be void as to a prior creditor, because voluntary or upon consideration of marriage, it shall not, for that cause, be declared to be void as to subsequent creditors or purchasers.”
Earlier West Virginia Doctrine.—In Greer v. O’Brien, 36 W. Va. 277 (1892), 15 S. E. Rep. 74, a husband purchased a tract of land and directed it to be conveyed to his wife. It was charged that the husband was insolvent at the time of this gift to the wife, but the answer denied the fact of the indebtedness or insolvency. In the discussion of the case the effect of the “amount” of the husband’s indebtedness as to existing' creditors, was held immaterial to the decision as to them. Judge Lucas, in delivering the opinion of the court, held, in substance, as follows: that since the enactment of section 2, chapter 74, West Virginia Code 1891, (§ 2, ch. 74, W. Va. Code 1899) voluntary conveyances are void as to prior creditors, not because they are fraudulent but because they are “voluntary,” and because the consequent subordination of the rights of the donee to that of all prior creditors. And in the application of this act to voluntary conveyances or donations, made since its passage, which are confessedly and on their face voluntary, the act itself should be regarded as embraced in the purview of such donation or settlement. And further, that this section should receive the plain common sense, remedial construction, and not be frittered away by resorting to refinement, and to the complicated and almost undeterminable questions of fact and evidence which formerly embarrassed the courts, but which the act referred to was intended to cut up by the roots. By thus construing such instruments, namely, that all existing debts are recognized as liens upon the property superior to the donee in equity and priority, much of the ancient learning about conclusive presumptions of fraud, and much of the inquiry formerly required to maintain a financial standing with reference to his position in life, and his financial capacity to make reasonable advancements, ought to be regarded as cut up by the roots. Consequently the voluntary conveyance to the wife was declared void as to existing creditors, though valid as to subsequent creditors in the absence of any fraudulent intent. Thus, according to this decision, as it seems, the statutory effect is to render void as to existing creditors a gift by the debtor, even though the debtor may retain ample funds out of which his existing creditors may be paid. See Rogers v. Verlander, 30 W. Va. 619, 5 S. E. Rep. 847; Clarke v. King, 34 W. Va. 631, 12 S. E. Rep. 775; Kanawha Val. Bank v. Wilson, 25 W. Va. 242.
Later West Virginia Doctrine.—But it would seem that the doctrine as declared in Greer v. O’Brien, 36 W. Va. 277, 15 S. E. Rep. 74, consequently the construction of the statute, § 2, ch. 74, W. Va. Code 1899, has been inadvertently overruled by the later decision of Hume v. Condon, 44 W. Va. 553 (1898), 30 S. E. Rep. 56. In this latter case it was held, that the husband could make a donation to his wife (or return her a loan of money received, augmented by profits), if he retain an amount of tangible property largely more than sufficient to pay all his just indebtedness. Judge Dent, in delivering the opinion of the court, seemingly adopted the following language as his own: “The ancient rule that a voluntary postnuptial settlement can be avoided if there was some indebtedness existing has been relaxed, and the rule generally adopted in this country at the present time will uphold it, if it be reasonable, not disproportionate to the husband’s means, and clear of any intent, actual or constructive, to defraud creditors.” Citing Kehr v. Smith, 20 Wall. (U. S.) 35; Hunter v. Hunter, 10 W. Va. 321. And further, “this rule is generally adopted even where a statute expressly provides that a transfer from husband to wife in prejudice of the rights of subsisting creditors shall be invalid. A husband’s love and affection for his wife, and a desire to secure her support, is ample reason for a gift to her. Still his actual intention is a mere question of fact; but whether the gift is a reasonable one, considering his circumstances, seems to be a question of law. It is reasonable if his debts are trifling, or if he retains enough to readily pay them all; but unreasonable if his debts are so great as to embarrass him, or if he is insolvent, or if the gift leaves him insolvent, or if he denudes himself of all his property, or if the property he conveys is easily accessible to creditors, while that which *161 he retains, though ample in amount, is inaccessible to them.” Citing 14 Am. & Eng. Enc. Law 563-64.
However, it is to be observed that in the decision of this case, § 2, ch. 74, W. Va. Code of 1891 W. Va. Code 1899, § 2, ch. 74) was not referred to or discussed, nor was there any reference direct or indirect, in the majority opinion, to the case of Greer v. O’Brien, 36 W. Va. 284, 15 S. E. Rep. 74. Bnt Bbannon, P., in his dissenting opinion referred to it, and declared as follows: “It. is contrary to the Code provisions that every voluntary conveyance is void as to existing creditors, no matter how pure in intent; no matterwhether the grantor had, or had not. enough property left to pay his debts; no matter what his debts amounted to. The amount of his indebtedness, and the amount of his property left besides that conveyed were proper matters, before the statute, for consideration, and are now, when we are seeking to set a deed aside as to subsequent creditors', but it is utterly immaterial and foreign to the question of whether a voluntary conveyance shall be set aside as to prior creditors. It seems to me that the decision in this case reopens the door to variable •oral evidence and opinion as to a man’s pecuniary worth, and his indebtedness, and his intent, which the statute was designed to close,—vexatious questions, which ‘ought to he regarded as cut up by the roots,’ to use the apt and forcible expression of President Lucas in discussing this statutein Greer v. O’Brien, 36 W. Va. 284, 15 S. E. Rep. 74” See Mayhew v. Clark, 33 W. Va. 387, 10 S. E. Rep. 785.
Virginia Doctrine.—In Chamberlayne v. Temple, 2 Rand. 384 (1824), it is held, that a voluntary conveyance of property to children, at a time when the donor is largely indebted, is void against creditors. But the creditors meant are defined, as those “who .are thereby delayed, hindered, or defrauded,”—and further, that only those can be defrauded who have a right to specifically charge the property, viz,: lien creditors. Johnson v. Zane, 11 Gratt. 552. But see Quarles v. Lacy, 4 Munf. 251; Bentley v. Harris, 2 Gratt. 357. When this principle was declared, the present statute, Va. Code 1887, § 2460, had not been enacted, providing that a creditor before obtaining a judgment or decree against his debtor may institute any suit before, that he could bring subsequent to, obtaining a judgment or decree, to avoid a transfer under §§ 2458, 2459. See ante, sub-head, “Common-Law Doctrine.”
There are few decisions in Virginia involving this point exclusively, since the enactment of the statute in 1850 (Va. Code 1887, § 2459). The tendency of the cases seems to he to give the statute its plain and evident meaning. Furthermore, no conflicting construction is observed. The law seems to be as stated by Mr. Barton, in Barton’s Law Practice, p. 860 (3d Ed.), where, in the discussion of the distinction made by the statutes (Va. Code 1887, §§ 2458, 2459) between the rights of prior and subsequent creditors, when a transfer is attacked as voluntary, or fraudulent, he says that, “inrespeetto after-existing creditors, a fraudulent deed differs from one that is merely void because not upon a consideration deemed valuable in law, in that the former is void a,s to such creditors, as well as those whose debts were created after the deed was made; while, as we jiave before stated, the latter is only void as to antecedent debts, and may he wholly sustained as to those coming into existence after its date.” Pratt v. Cox, 22 Gratt. 330; Penn v. Whitehead, 17 Gratt. 528; Taylor v. Mallory, 96 Va. 18, 30 S. E. Rep. 472. See also, Broadfoot v. Dyer, 3 Munf. 350; Ruddle v. Ben, 10 Leigh 467; Flynn v. Jackson, 93 Va. 341, 25 S. E. Rep. 1; De Farges v. Ryland, 87 Va. 404, 12 S. E. Rep. 805.
(ib) Antenuptial Settlements ill Consideration of Marriage.—Prior to Va. Code 1887, sec. 2459, which went into effect May 1, 1888, rendering marriage an insufficient consideration to support a gift, conveyance, etc., as against creditors of the grantor whose debts had been contracted at the time it is made, it was held, that whatever the design of the grantor might be. in making a settlement on a woman in contemplation and in consideration of marriage, it was valid; unless her knowledge of his intended fraud was clearly and satisfactorily proved. Clay v. Walter, 79 Va. 92 (1884); Herring v. Wickham, 29 Gratt. 628. And the service by creditors of the grantor, of a written notice in accordance with the Va. Code of 1873, ch. 163, sec. 1, on the grantor, before the marriage, of his fraudulent design in making the settlement, cannot affect her constructively with notice of such design; but her actual knowledge of a participation of that fraudulent design must have been clearly established by proof, in order to render the deed of conveyance fraudulent as against creditors of the grantors. See Moore v. Butler, 90 Va. 683, 19 S. E. Rep. 850. And in Bumgardner v. Harris, 92 Va. 188 (1895), 23 S. E. Rep. 229, it was held that, marriage prior to Va. Code 1887, § 2459, constituted a valuable consideration for a settlement by a man on his intended wife, and after the marriage the settlement was valid against existing creditors; hut where the settlement was upon the wife for her life, with remainder over to the sister of the grantor and her children, the remainder was without valuable consideration, and void as to creditors whose debts' existed at the time of the settlement.
But in Greenhow v. Coutts, 4 H. & M. 485 (1810), upon a given state of facts, the principle was declared by the superior court of chancery for the Richmond district, that a marriage settlement on a wife with whom the husband had long lived in a state of fornication, and by whom he had several children, will he deemed not to have been on valuable consideration, but voluntary and fraudulent as to creditors. However, upon appeal, the court in Coutts v. Greenhow, 2 Munf. 363, reversed this decision, declaring that the wife and children were purchasers for value, and the deed was not void as to creditors, no fraudulent intention being proved.
And an agreement made in contemplation of marriage, though void against creditors because not recorded, is valid between the parties. Dabney v. Kennedy, 7 Gratt. 317.
it) Postnuptial Settlements.
Validity at Common Law and in Equity Dower as a Consideration.—Postnuptial settlements on a wife for value are valid in equity, though void at common law; and relinquishment of her right of dower is a good consideration to the extent of its value as against the husband’s creditors. Ficklin v. Rixey, 89 Va. 832 (1893). 17 S. E. Rep. 325.
Thus, in Strayer v. Long, 86 Va. 557, 10 S. E. Rep. 574, it is declared that, a relinquishment of dower, to the extent of the other is a sufficient consideration for a postnuptial settlement as against the husband’s existing creditors: and if it is made before the relinquishment, no distinct proof of the agreement is required, and though the settlement is made fraudulently as to the husband’s creditors, the fraud will not be imputed to the wife. Nevertheless It must be duly recorded, else it is void as to *162 the husband’s creditors, -without notice, whose claims accrued after its execution and before its admission to record. Glascock v. Brandon, 35 W. Va. 84, 12 S. E. Rep. 1102.
Validity When Voluntary.—Nevertheless, every voluntary postnuptial settlement is fraudulent and void as against creditors, when the settler is indebted. Flynn v. Jackson, 93 Va. 341, 25 S. E. Rep. 1.
Presumption and Burden of Proof.—And postnuptial settlements are presumed voluntary, therefore void as to existing creditors, and the burden of proof is on those claiming under them. Perry v. Ruby, 81 Va. 317; Flynn v. Jackson, 93 Va. 341, 25 S. E. Rep. 1; Robbins v. Armstrong, etc., 84 Va. 810, 6 S. E. Rep. 130; Massey v. Yancey, 90 Va. 626, 19 S. E. Rep. 184; De Farges v. Ryland, 87 Va. 404, 12 S. E. Rep. 805; Rixey v. Deitrick, 85 Va. 42, 6 S. E. Rep. 615; Hatcher v. Crews, 78 Va. 460. But a postnuptial settlement will be good against subsequent creditors where there is no fraud, and the settler is not in debt when he makes it. De Farges v. Ryland, 87 Va. 401, 12 S. E. Rep. 805. See post, “Evidence.”
Failure to Record—Effect.—However, a postnuptial settlement made by a husband on his wife, of personal property derived from her father’s estate, but of which he retains possession, not having been properly recorded, is void as against the creditors of the husband. Lewis v. Caperton, 8 Gratt. 148.
When Valid to Extent of Consideration, Though Void as to Creditors.—And although a postnuptial settlement may have been made under such circumstances as to be void as to creditors of the husband, yet if the wife relinquish her right in the property, or assumes the payment of debts of her husband, so as to make them charges on her separate estate, 'upon the faith of such settlement, it will be held good to the extent of a just compensation for the interest which she may have parted with, or of the debts which she has assumed to pay. Flynn v. Jackson, 93 Va. 341, 25 S. E. Rep. 1. These facts, however, are essential to the validity of the deed.
Thus in Beecher v. Wilson, 84 Va. 813, 6 S. E. Rep. 200, a husband who was heavily indebted conveyed his land to his wife’s separate use, reciting the settlement to be in consideration of his indebted- ' ness to her on account of her money used by him in paying for said land and otherwise. There was at the time of its use no distinct promise, written or parol, that the money should be applied to the de- I ferred payments of the lands, which was conveyed to himself, and afterwards treated as his own property, or that the use of the said money should be regarded as a debt from him to her. The court declared that such postnuptial settlement must be annulled as fraudulent as to his creditors.
(d) Gifts.—See monographic note on “Gifts.”
1. PERSONALTY.
In General.—By the Acts 1858, to prevent fraudulent gifts of slaves, though the parol gift of slaves may be given in evidence to show the character of the possession held by the donee, yet the gift itself is void. Thus if a father-in-law put slaves into the possession of his son-in-law on loan, no length of possession will give the lendee title against the. lender, until such possession has become adverse by demand and refusal of the possession. Cross v. Cross, 9 Leigh 245.
And a verbal gift of slaves to a feme sole, to whose husband, upon her subsequent marriage, they were delivered, and by him kept until his death, four years after the marriage, is within the statutes for preventing, fraudulent gifts of slaves. Taylor v. Wallace, 4 Call 92.
How a Gift Is to Be Evidenced.—And a gift of slaves can only be evidenced by deed or will duly proved and recorded, or by possession passing from the donor to the donee, and remaining with him, or one claiming under him and the possession here meant, is an actual, abiding, permanent possession. If a gift is evidenced in either of these ways, it will serve to effectually vest title in the donee, certainly as against the donor. Durham v. Dunkly, 6 Rand. 135.
Thus, in Henry v. Graves, 16 Gratt. 244, a husband, in’the lifetime of his wife, made an absolute gift of his wife’s remainder in slaves, by deed, which was recorded after her death, and he survived both the wife and the life tenant. The gift was valid and. effectual against him, though before possession was obtained by the donees he dissented from it.
Effect of Reservations and limitations. E'ji where any reservation or limitation is pretended to have been made of a use or property, by way of condition, reversion, remainder or otherwise, in goods and chattels, the possession whereof shall have remained in another for five years, the same, as to the creditors and purchasers of the person so remaining in possession, is, under the act to prevent frauds and perjuries, taken to be fraudulent, and the absolute property to be with the possession, unless such reservation or limitation were declared by will or by deed in writing, proved and recorded. London v. Turner, 11 Leigh 403.
Thus, in Durham v. Dunkly, 6 Rand. 135 (1828), a slave was given to an infant child, by deed, with the reservation expressed in the deed, that the donor was to keep the slave and raise it for the donee, until she arrived at the age of thirteen. The slave was delivered to the donee on the day of the execution of the deed, and on the same day, taken back by the donor. The deed never was recorded; and the donee never lived with the donor. It was held that the gift was void under the act of assembly, t Rev. Code, Va. 432, § 51.
So if a father delivers a slave to his infant son residing with him, and calls upon persons present to take notice that he gives the slave to the son, but says at the same time, that he claims an estate in the slave for his own life, nothing passes to the son by such parol gift. Anderson v. Thompson, 11 Leigh 439.
Property Given on Parol Trust—As to Whom Valid.— Although, where personal property is given to one upon a trust by parol for another, the declaration of trust by parol may be valid as between the donee and the cestui que trust, yet as between the cestui que trust and the creditors of the donee the case is essentially different. London v. Turner, 11 Leigh 403.
Gift from Parent to Child—Unrecorded.—So a parol gift of a slave to a child, after possession in the donee, is void, as between the donor and donee; and if the slave given be conveyed by deed (accompanied witb possession in the donee) but without being recorded, it is void as to creditors and purchasers. Shirley v. Long, 6 Rand. 764.
And in Shirley v. Long, 6 Rand. 764 (1827), it was further declared, that if a father gave a slave to his child, and the donor retained possession of the slave, and exercised control over it, the gift was not the less fraudulent because the child always lived with the father, and the slave was always called the child’s in the family and the neighborhood.
So a parol gift of a slave by a father to an infant *163 child living with him, by a declaration that the gift is made, but there is no delivery of possession, is not good against a subsequent purchaser of that slave, although such purchaser knew at the time of his purchase, that the father had so made the gift. Hunter v. Jones, 6 Rand. 540 (1828).
Same Marriage Provision.—A verbal gift of personal property to a daughter before marriage, in consideration thereof, accompanied by delivery of possession, is (like a promise in writing to make such a gift), valid and effectual against the creditors of the father. However, such verbal gift of property. HMWcomiunrU'd by possession before the marriage, but in consideration of which the possession is delivered after the marriage, though valid between the parties and privies to it. and against debts of the father afterwards contracted, is voluntary and void against all pre-existing creditors; and this is true though the property be delivered before any lien by execution is acquired by the creditors. Hayes v. Jones, 2 Patt. & Heath 583.
Thus, where a father who is possessed of an ample fortune sends certain of his slaves immediately after the marriage of his daughter to her husband, in whose possession they remained, without interruption or claim, until his death which happened two years and four months afterwards, it will be presumed (no proof of fraud appearing), that such slaves, being no more than a reasonable provision for the daughter at the time, were a gift in consideration of the marriage; and the right of the representatives of the husband is good against the creditors of the father. Moore v. Dawney, 3 H. & M. 127 (1808).
Likewise, in London v. Turner, 11 Leigh 403, a father, upon the marriage of his daughter, made her a gift of slaves, and the possession thereof remained in the daughter’s husband five years. Whthe the husband was in possession, the father made his will, confirming the gift, and declaring that the same was “to her in trust for the sole and only purpose of her immediate use and comfort in lthe, and after her decease the title and fee-simple interest to be vested forever in the children or issue lawfully begotten of her body, free from the claim, control or direction of any other person whatever.” Although this will was made and recorded within five years from the time of the gift, yet the slaves were held liable to be taken in execution by the creditors of the husband. This case was distinguished from Beasley v. Owen, 3 Hen. & Munf. 449.
And in Huston v. Cantril, 11 Leigh 136 (1840), a father, who was indebted at the time made a deed of gift of personal chattels to his infant daughter, which was duly recorded; subsequent to that time the daughter married and after the father’s death, a creditor filed a bill against the daughter and her husband, impeaching the deed as fraudulent, and seeking to subject the property to the payment of his demand. The court held that, whatever might have beer, the character of the conveyance in its origin, if was rendered good and valuable against creditors upon the marriage of the daughter, who thereupon was to be considered a purchaser by relation for valuable consideration. But see Va. Code 1887, sec. 2159, which declares that marriage shall not be deemed a sufficient consideration to support a gift, conveyance, etc., against existing creditors.
Gift from Husband to Wife—Presumption.—To rebut the presumption of a gift from a wife to her husband, where with her knowledge and consent he has at different times received, and she has delivered to him, the proceeds of the sale of her realty, no receipt of written obligation being given to repay, and the same is mingled with his funds, the proof must be clear, full and above suspicion. See Fitzhugh v. Anderson, 2 H. & M. 289.
Thus in Kanawha Val. Bk. v. Atkinson, 32 W. Va. 203, 9 S. E. Rep. 175. a husband, with the knowledge and consent of bis wife, at different times, received, or she delivered to him, the proceeds of the sale ol her realty; he gave her no note or other written, obligation to repay it; and he mingled it with his means ; used it in his business for years ; kept no written account of such moneys (nor did she); then became insolvent, and some eight or ten years after his receipt of the money, purchased real estate in the name of his wife, and it was alleged by him and her that it was paid for with the money so received ; and several years afterwards he and she united in a deed of trust to secure a very considerable debt on said real estate, such debt being a loan to the husband, and before such purchase a judgment was rendered against him for a debt. The lot was held liable to the judgment. And it was further declared that, if. when such purchase was made, any claim which she may have had on him for such proceedvS of her real estate was barred by limitation, that circumstances tended strongly to repel the wife’s claim to exempt the lan&against creditors. See, in this general connection. Fones v. Rice, 9 Gratt. 568; Miller v. Cox, 38 W. Va. 747, 18 S. E. Rep. 960. See post “Evidence.”
(e) Really.—'Under the state of the law existing previous to the Acts of the Assembly. Va. Code 1887, abolishing the common-law right of the husband to the wife’s personalty in possession at or during coverture, if property were bequeathed to a wife and her children jointly, the husband became invested with her interest jure maritL so that, as to her, any conveyance made in consideration of the receipt of such property was voluntary as to her. But as to the children, the conveyance was based on valuable consideration, and stood as security to them. Rixcy v. Deitrick, 85 Va. 42, 6 S. E. Rep. 615.
And a deed made by a husband embarrassed at the time, by which he conveys the proceeds of his wife’s land which had been sold, and the note for the purchase money made to him, in trust for himself and his wife for their lives and the life of the survivor, and during his life to be under his control and management, is voluntary and fraudulent as to creditors. Lewis v. Caperton, 8 Gratt. 148; Clarke v. King, 34 W. Va. 631, 12 S. E. Rep. 775.
But a voluntary transfer of property from husband to wife is not, simply because voluntary, void as to subsequent creditors of the husband. McClaugherty v. Morgan, 36 W. Va. 191, 14 S. E. Rep. 992.
Nevertheless, a court of equity will declare a voluntary conveyance fraudulent as to subsequent creditors, if from the circumstances and other evidence the court is convinced, that the deed was made with the intent to defraud such creditors. The conveyance being voluntary, it is immaterial, whether or not the grantee had notice o f such fraud. Duncan v. Custard, 34 W. Va. 730; Mayhew v. Clark, 33 W. Va. 387, 10 S. E. Rep. 785.
Thus, if a man largely indebted at the time voluntarily and without consideration deemed valuable in law, incumbers all of his lands and invests the proceeds of the incumbrance debt in making valuable improvements upon his wife’s separate real estate, and then becomes insolvent, and the incumbrance remains nnsatisiied, such mcam *164 brance debt will, in a court of equity, be regarded as a gift to the wife, and fraudulent as to his creditors, whose debts existed at the time the incumbrance was created, and the real estate of the wife in her possession, as well as the land incumbered, will be held liable for the payment of her husband, which existed at the time the incumbrance was created. Kan. Val. Bank v. Wilson, 25 W. Va. 242.
And if a deed which is alleged to be voluntary and fraudulent, forms a part of the plaintiff’s claim of title, in an action of ejectment, it is the province of the jury to determine, under a proper instruction from the court, whether the deed is voluntary and fraudulent or not. Taylor v. Mallory, 96 Va. 18, 30 S. E. Rep. 472. However, as elsewhere stated, if the deed is merely voluntary, it is, nevertheless, valid as between the parties, and void only as to existing creditors. Chamberlayne v. Temple, 2 Rand. 384 (for fuller explanation of the principles expounded in this case, see ante, “Void Transfers,” sub-head 2); Clarke v. King, 34 W. Va. 631, 12 S. E. Rep. 775. See in support of general principles, Stokes v. Oliver, 76 Va. 72; Burkholder v. Ludlam, 30 Gratt. 255; Harvey v. Steptoe, 17 Gratt. 289.
6. Fraud Presumed from Inadequacy of Consideration.
Transfers from Husband to Wife.—Transfers of property, either directly or indirectly, by an insolvent husband to his wife during coverture are justly regarded with suspicion, and unless it clearly appears, that the consideration was paid from the separate estate of the wife or by some one for her out of means not derived either directly or remotely from the husband, such transfers will be held fraudulent and void as to the creditors of the husband. Core v. Cunningham, 27 W. Va. 206. See also, Davis v. Davis, 25 Gratt. 587.
Thus, a conveyance of real estate, made directly or indirectly, by a husband to his wife, in consideration of a valid debt due from the husband to the wife, is fraudulent and void, as to the existing creditors of the husband, when it is shown that said consideration is much less than the value placed upon the property by both the husband and thewife, and they attempt to make out a consideration equal to or in excess of the value of the property by adding to said valid debt other indebtedness of the husband to the wife which had no existence in fact. Webb v. Ingham, 29 W. Va. 389, 1 S. E. Rep. 816.
Conveyance by Wife to Husband.—So, if a married woman directly or indirectly convey her separate real property to her husband upon a consideration not deemed valuable in law, this is void as to her creditors whose debts shall have been contracted at the time it was made, if such creditors had the right, while the land was hers, to subject it or its rents and profits to the payment of their debts; as against existing creditors such voluntary conveyance is conclusively presumed to be fraudulent in law. Wick v. Dawson, 42 W. Va. 43, 24 S. E. Rep. 587.
Transfer from Father to Son.—Likewise, a conveyance of all his property by a father, who is greatly in debt and apprehensive of a heavy liability by the decision of a suit against him for damages for breach of warranty of title to land sold by him, to his son, for an improbable cash payment, and defend'd payments without interest, extending through a period of fifteen years, upon an agreement on the son’s part to provide maintenance for his father and mother during their lives, presents a case, which, without full examination, is indicative of fraudulent intent, especially where the son, Who might afford the necessary explanation, if there was any, is not examined as a witness in the suit to set aside the conveyance for fraud. Click v. Green, 77 Va. 827.
Conveyance from Debtor to Creditor.—And if an insolvent grantor justly indebted to one of his creditors in a comparatively small amount, convey to him all his property, or the greater portion thereof, in satisfaction of his debt, for a nominal consideration, falsely recited in the deed, and claimed by the grantee to have been in hand paid, equal in value to that of the property conveyed but largely in excess of the debt actually due such creditor, and he accepts the same, such deed, as to the other creditors of the grantor, will be held to be fraudulent and void; as the necessary effect of such deed is to hinder, delay and defraud such other creditors; and the grantor and grantee in such deed will be held to have intended the necessary result of their wrongful act. Knight v. Capito, 23 W. Va. 639.
Purchase.—In Moore v. Triplett (Va. 1895), 23 S. E. Rep. 69, the court held that, the fact that th e consideration paid on property worth $26,000 was $2,872 less than that amount, does not show such an inadequacy of consideration as to justify a cancellation of the conveyance, as in fraud of the grantor’s creditors. See also, Sutherlin v. March, 75 Va. 223.

e. When, and as to Whom TInrecorded Transfers Are Void.

Statutory Provisions.—If, before the time limited by law for recording a deed has expired, a bill be filed to impugn it as fraudulent, the court cannot afterwards declare it void, as against the complainant, on the grounds of its not having been duly recorded. Gibson v. Randolph, 2 Munf. 310.
And by Va. Code 1887, § 2465, Pollards’ Supp. Code, § 2465, a deed is void as against creditors, “until and except from the time it is duly admitted to record.” See Slater v. Moore, 86 Va. 26, 9 S. E. Rep. 419. As to the time within which deeds must be recorded after their date of acknowledgment, in order that they may relate back and be valid as of the date of acknowledgment, see Va. Code 1887, § 2467, and amendment, Acts 1895-6, p. 285; Pollards’ Supp. Code, § 2467. See, in this connection, Ogg v. Randolph, 4 H. & M. 445.
Thus, in Cocke v. Haxall, 2 Rob. 470 (1843), Judge Allen, delivering the opinion of the court, said, "That it was the intention of the legislature, in the act of 1792, regulating conveyances, 1 R. C., ch. 99, p. 362, sec. 2; p. 365, sec. 13; Va. Code 1849, ch. 118, sec. 4; Va. Code 1887, sec. 2464-65, to require a deed of trust or mortgage of personal estate to be recorded in the general court, or in the court of the district, county or corporation in which the grantor resided. Therefore, where a deed of trust of personalty, dated the 15th of July, 1812, stated the grantor to be of Henrico county, and the trustee and cestui aue trust to be of the town of Petersburg, and the deed was never recorded in Henrico but only in Petersburg, and there was no evidence to show that either at the date of the deed, or of its recordation in Peters-burg, the grantor resided in that town, the deed so recorded is void as to the grantor’s creditors.” However, a voluntary conveyance of personal property, by a party not ind ebted at the time, is good against subsequent creditors, if the deed be duly recorded or the possession remain solely bona fide with the donee. Otherwise it is void by the statute of frauds. Davis v. Payne, 4 Rand. 332.
Marriage Settlement—And in Thomas v. Gaines, 1 Gratt. 347 (1845), the court declared that a deed of marriage settlement made before the marriage *165 conveying the property of the wife, and in which the intended husband joined, is fraudulent and void against subsequent purchasers from the husband. without notice, unless duly recorded. By this decision the case of Pierce v. Turner, 5 Crunch 162, and the opinions of Judges Carr, Coalter and Brooke, in Land v. Jeffries, 5 Rand. 211, were overruled. The facts in Land v. Jeffries were as follows : A woman who was about tobe married made a personal conveyance of her property to a third person with the privity and approbation of her intended husband ; the marriage took place a few minutes after the conveyance and the husband took possession of the property after the marriage ; the property thus conveyed was held not to be subject to the husband’s creditors, as his possession after marriage was not that of his wife (she not being sai juris), and her short possession between the time of the conveyance and that of the marriage, not being sufficient, or of the nature to render the deed fraudulent.
Contract for Sale of Land.—So where a contract in writing which is executed for the sale of land, before judgments are obtained against the vendor, and the deed is executed in pursuance of such contract. but is not recorded until after the judgments are duly docketed, and the contract is never recorded, the contract and deed are void as to the creditors: and the land so contracted to be sold, and so conveyed is subject to the satisfaction of the judgments. Anderson v. Nagle, 12 W. Va. 98.
Loan of Chattel.—So if no writing declaring a loan be recorded, or no demand be made by the lender, and pursued by course of law, for more than five years after possession commenced, the loan is void as to the loanee’s creditors, whose rights cannot be affected by the lender’s subsequent resumption of possession. But the creditors meant are those whose debts were contracted before the resumption of possession, or conveyance of the chattels, by the lender—they having given credit to the loanee on the apparent ownership of property. Scott v. Jones, 76 Va. 233.
d. Effect of Retention of Possession by Vendor.—It is a settled rule that an absolute deed of personal property is fraudulent ver se as to creditors of the vendor when the possession remains with the vendor. Alexander v. Deneale, 2 Munf. 341; Claytor v. Anthony, 6 Rand. 285; Shields v. Anderson, 3 Leigh 729; Davis v. Turner, 4 Gratt. 422; Robertson v. Ewell, 3 Munf. 1; Williamson v. Farley, Gil. 15; Land v. Jeffries, 5 Rand. 211. But according to Sydnor v. Gee, 4 Leigh 535, it seems, that, in the case of an absolute sale and delivery of chattels, and an immediate redelivery thereof by the vendee to the vendor, upon bailment, for a limited time, on valuable consideration, both transactions being in fact fair, such bailment of vendee to the vendor is not inconsistent with the sale, so as to make the sale fraudulent per se, within the rule of Alexander v. Deneale, 2 Munf. 341.
Thus, in Lewis v. Adams, 6 Leigh 320, a vendor for full value paid him, sold certain slaves to a vendee in December 1821, and the property was delivered to the vendee; on the same day, the vendee hired the same slaves to the vendor till January 1823, and took his bond for the hire; in November, 1822, the vendee, by deed duly recorded, conveyed the slaves to a trustee for the use of his daughter, who was the vendor’s wife, and her children. Upon these facts the court declared that the exercise of full ownership by the vendee, by the execution of such deed of trust, was equivalent to an actual resumption of the possession at the date of the deed, consequently, whether the sale from the vendor to vendee was originally accompanied and followed by possession or not, it was valid as against any creditors of the vendor whose rights attached after the date of the deed of trust.
However, it is not conclusive evidence of fraud, but is open to explanation. Land v. Jeffries, 5 Rand. 211.
Thus, as held in Benjamin v. Madden, 94 Va. 66, 26 S. E. Rep. 392, the retention of the possession of personal property by the vendor after an absolute sale is prima facie fraudulent against creditors of the vendor, though not as against a subsequent purchaser for value, without notice of the prior sale, but this presumption may be rebutted by proof. In the case at bar there was a bona .ride. sale for value of a stock of goods, and delivery of l>ossession, and the facts that the vendor did not transfer his license to the vendee before levy on the stock; that the name of the vendor upon the window shades, which had constituted his only sign remained as before; and that the vendor and his former clerk remained in the store and sold goods, do not, in view of other evidence in the cause, establish a case of fraud upon creditors of the vendor. Nor, under the admitted fact, does section 287 of the Virginia Code apply.
But in Mason v. Bond, 9 Leigh 181. the court declared that while it is a general rule, that an absolute sale of chattels not accompanied and followed with transfer of possession to the vendee, is per se fraudulent and void as against creditors of the vendor; and though there are exceptions to the rule, yet it is no ground of exception, that the possession at the time of the sale was in a third person, if, notwithstanding such possession, the vendor had a right, and it was in his power, to take the possession and deliver it to the vendee. Mason v. Bond, 9 Leigh 181.
Nevertheless, in the absence of a fraudulent intent, it is not fraudulent per se as to creditors, in one, who has assumed an indebtedness of a firm, in consideration of a sale of specified merchandise, to allow such merchandise to remain in said firm's possession to be disposed of in the usual course of trade. King v. Levy (Va. 1895), 22 S. E. Rep. 492.
But a bill of sale of chattels, which is absolute in form, executed by a debtor,--but which is in fact a mortgage to secure a debt, is fraudulent and void, as it tends to deceive and injure others. Shields v. Anderson, 3 Leigh 729; Clark v. Hardiman, 2 Leigh 347.
And if personal property is mortgaged, and is afterwards sold absolutely to the mortgagee but the bill of sale is not recorded, it is fraudulentas against .a subsequent purchaser. And a court, of equity will (under the particular circumstances), entertain a bill to recover the property as against the fraudulent vendee who has clandestinely gotten possession of the property. Such fraudulent vendee, cannot prevent a recovery, by showing that the plaintiff did not take possession at theinstant of the purchase; because such an omission as this cannot make a fraudulent sale good. Glasscock v. Batton, 6 Rand. 78.
So if there is an absolute bill of sale of slaves, by an executor, and he is permitted to retain the possession thereof, it is fraudulent and void, as to legatees. as well as creditors and purchasers. Robertson v. Ewell, 3 Munf. 1.
*166 But where a purchaser of property leaves it in the possession of the original owner, but the possession thereof is taken by the administrator of the purchaser before creditors have acquired a specific lien thereon, by judgment and execution, it is not liable to the creditors of the original owner. Carr v. Glasscock, 3 Gratt. 343 (1846).
Similarly, if there is a sale of personal property under an execution, by a sheriff, and it is bona fide, though irregular, the sale is valid, even though the purchaser leaves the property with the debtor in the execution; moreover, the property is not liable to the creditors of the debtor in execution. Carr v. Glasscock, 3 Gratt. 343 (1846).
And, where an owner of personal property has bathed it out to a third party, and then gives an absolute bill of sale to a vendee, and the vendee at the expiration of the time for which it is bathed out, applies to the bathee to deliver the property to him, and the bathee tells him that he may have possession,. but he does not take actual possession, but leaves the property in the hands of the bathee, the bill of .sale is good against the creditors of the vendor. Kroesen v. Seevers, 5 Leigh 472.
e. Possession Retained by Donor.—In Charlton v. Gardner, 11 Leigh 281, the father in consideration of natural love and affection, made a deed, which was duly recorded, conveying slaves and other property to three infant children, upon the-condition understood and reserved, that the slaves were to remain in the donor’s possession, during his life, and if his wife should survive him, that she should have the ,use of one-third of the slaves and their increase, during her life. At the time of executing the deed, the father was indebted by two bonds, on which judgments were afterwards obtained, and the executions returned satisfied. Subsequent to the deed, the father became appearance bail, and a judgment was obtained against him as such, and the execution thereon was levied upon the slaves so conveyed, which were still in his possession and they were sold by the sheriff. After the father’s death an action of detinue was brought against the purchaser by the widow and children jointly, and another action was brought by the children alone; in each of which cases there was a special verdict, finding the facts as. above, mentioned. Upon these facts, the court held, that the action in which the widow was joined could not be maintained, but that the action by the children alone was well brought; and further, the facts found did not constitute fraud per se; and so.far as the fraud was a matter of fact, the jury not having found fraud, the court could not as a matter of law infer it.
B. CONDITIONAL TRANSFERS.
l. Loans.
Loans, and Reservations of a Use or Property, to Be Redorded.—Where any loan of goods or chattels is pretended to have been made to any person with whom, or those claiming under him, possession shall have remained five years without demand made and pursued by due process of law on the part of the pretended lender, or where any reservation or limitation is pretended to have been made of a use or property, by way of condition, reversion, remainder or otherwise, in goods or chattels, the possession whereof shall have so remained in another as aforesaid, the absolute property shall be taken to be with the possession, and such loan, reservation, or limitation void as to creditors of and purchasers from the person so remaining in possession, unless such loan, reservation, or limitation be declared by will which, or a copy of which is, by deed, or other writing, duly admitted to record within the said five years in the county or corporation in which said goods or chattels may be. Va. Code 1887, ch. 109, sec. 2461, p. 599; Taylor v. Beale, 4 Gratt. 93; Lightfoot v. Strother, 9 Leigh 451.
However, proof of notice of the loan, from the lender, recorded in the court of a county wherein neither of the parties live, is not sufficient to do away with the effect of possession in the loanee. Gay v. Moseley, 2 Munf. 543.
So a deed declaring a loan of a slave from a father to his daughter during her life (being admitted to record on proof by one witness only), is not good against her husband’s creditors, or purchasers from him, without notice of such deed ; possession of such slave having remained with the husband for .five years without interruption. Lacy v. Wilson, 4 Munf. 313 (1814) ; Beasley v. Owen, 3 H. & M. 449. And in Garth v. Barksdale, 5 Munf. 101, it is held that five years’ peaceable and uninterrupted possession of slaves, under a loan not evidenced by deed duly recorded, vests a title in the loanee, which inures in favor of his creditors, and cannot be divested as to them, by his returning the same to the lender, after the five years have expired. See also, Gay v. Moseley, 2 Munf. 543. So, if a debtor remains in possession of slaves for five 3rears, under a parol loan, they are liable to satisfy his creditors, though the possession is resumed by the lender before executions are levied upon them. Beale v. Digges, 6 Gratt. 582.
But -the creditors meant are those whose debts were contracted before the resumption of possession, or conveyance of the chattels by the lender— they having given credit to the loanee on the apparent ownership of the property. Scott v. Jones, 76 Va. 233.
And where possession has remained with the loanee or with those claiming under him for five years, and is then resumed by the creditor, the possession must continue with the lender the full period of five years from the time it was actually resumed, before the title will be revested in the lender as against a creditor of the loanee. Pate v. Baker, 8 Leigh 80. It is to be observed, however, that § 2461, Va. Code 1887, does not apply to the case of property remaining in possession of a debtor for more than five years, on hire. Therefore, slaves remaining in possession of one person on hire for more than five years, are not subject to be taken in execution for his debts. McKenzie v. Macon, 5 Gratt. 379 (1849).
Yet, a loan of slaves, though not declared by deed in writing duly recorded, and therefore void as to creditors, the loanee having continued in possession for five years without such demand, as would bar their right, is-nevertheless effectual between the parties and their representatives. If, therefore, the loanee died in possession of such slaves, they are not to be considered assets belonging to his estate, nor can be recovered as such ; being liable to his creditors so far as their claims remain unsatisfied by their assets in the hands of his executor or administrator, but no farther. Boyd v. Stainback, 5 Munf. 305; Scott v. Jones, 76 Va. 233.
Likewise, if a father-in-law puts slaves into the possession of his son-in-law on loan, no length of possession will give the lendee title against the lender, till such possession has become adverse by demand and refusal of the possession. Cross v. Cross, 9 Leigh 245.
*167 So, if a father sends a slave to a son upon a loan, but the agent who takes the slave to the son, neglects to inform him that the slave is a loan, the neglect of the agent does not effect the right of the father to have the slave considered as a loan. Dickinson v. Dickinson, 2 Gratt. 493 (1846).
When the Operation of the Statute Is Avoided.— Nevertheless, according to the settled construction <A the clause In the statute of frauds, Va. Code 1887, § 2461. concerning loans, a resumption of possession by the lender, or the recorded deed or will granting away the property to another within five years, avoids the operation of the statute and puts an end to the loan. Collins v. Lofftus, 10 Leigh 5: Scott v. Jones, 76 Va. 233.
And. if the property he sold before possession shall have remained five years with the loanee or those claiming under him, the loan is not, under the statute, taken to be fraudulent as to the purchaser. Lightfoot v. Strother, 9 Leigh 451.
But a demand of slaves by the lender, who thereupon receives, and immediately redelivers them to ihe loanee to be held on the same terms, as before .-mch demand, receipt, and redelivery being in private, is not sufficient to bar the rights of creditors, under the act to prevent fraud and perjuries. Boyd v. Stainback, 5 Munf. 305 (1817); Va. Code 1887, § 2461.
And it is to be further noted that, after a loan to a person with whom, or with those claiming under him, possession has remained live years and a deed is made by the lender, declaring the original loan and continuing it; but this deed is never admitted to record, it cannot affect the creditor of a person in possession, and the deed is not to be received as evidence against such creditor. Pate v. Baker, 8 Leigh 80.
3. Deeds of Trust.

a. l7i General.

Deed Executed without Knowledge of Creditors— When Valid.—Though a deed of trust be executed without the knowledge of the creditors secured by It, yet if wb en in formed of its execution they assent to it. it is valid. Cochran v. Paris, 11 Gratt. 348. See also, Dance v. Seaman, 11 Graft 778.
Deed Secures Debts Not Due—Trustee Is Not Author^ ized to Take Possession of Trust Property -VaSidity.— However, a deed, conveying a stock of goods and merchandise, and notes and accounts of a merchant to a trustee to secure the payment of notes not then due, which provides that said conveyance shall cover “such goods and merchandise as may be added to saidsiock, from time to time, by the grantor and brought into the store in course of business, or to take the place of such goods as may hereafter be •sold,” but does not authorize the trustee to take possession or control of said goods until the grantor has made default in tke'payment of one or more of said notes, and has been refused to do so by the holder or holders of such note or notes, is as against the unsecured creditors of the grantor fraudulent and void on its face, although it provides that the “trustee, by himself or by his agent or attorney, shall at once take possession” of the notes and accounts transferred by such deed, and collect the same for the benefit of the trust creditors.
Nor is such deed validated or its character affected by the fact, that subsequent to its execution and on the same day a second trust deed is made between the .same grantor and grantee, conveying the same goods and merchandise, to secure other and different eestuis que frustent, which authorizes the trustee to take possession of said goods and merchandise at once, “and manage and control the same for the benefit and advantage of the parties secured and indemnified by the deed.” Claflin v. Foley, 22 W. Va. 434.
Insolvency of the Trust Deed Not Necessarily Void. --The fact that a trustee in a trust deed is insolvent and untrustworthy will not. of itself, make the deed void; but in such case the court may appoint a receiver, and administer the trust according to the provisions of the deed. Cohn v. Ward, 32 W. Va. 34, 9 S.E. Rep. 41.
Deeds Executed with Improper Motive -Provisions to Hinder, Delay and Defrasid CreditorsNot Secured.—And a creditor who takes a conveyance from his debtor, to secure his debt, and at the same time, inserts provisions in the deed, to delay, hinder, or defraud other creditors, comes within the statute of frauds, and the conveyance is void. Garland v. Rives, 4 Rand. 282.
So, likewise, if the grantee be privy to a fraudulent intent on the part of the grantor, and takes a deed to secure his own debt, with provisions to delay, hinder, or defraud other creditors, the deed will be void, although his only motive was, to secure his own debt, and the other provisions were forced upon him by the grantor, as the only means of having his own debt secured. Such a grantee will not be considered as a bona fide purchaser. Garland v. Rives, 4 Rand. 282.
But a deed of trust executed in part to secure fraudulent debts, and partly to secure a dona fide debt, the dona fide creditor having no notice of the dishonest purpose on the part of the grantor, isa valid security for the dona fide debt. Billups v. Sears, 5 Gratt. 31.
So the fact that the grantor in a trust deed made to secure, among other things, the surety on a building contract of the grantor, performed the contract, a f ter executing the deed, so that no liability remained on the surety, does not show that the deed was executed with improper motives. Harvey v. Anderson (Va.), 24 S. E. Rep. 914. See in general connection, Gardner v. Johnston, 9 W. Va. 403; Spence v. Bagwell, 6 Gratt. 444.
d. Provisions Which Postpone the Time for Knforcino the Deed—Effect—Though a deed is not fraudulent by reason of a postponement of the time of sale, and the reserving the property to the grantor in the meantime, yet where the time of the sale mai' be postponed or hastened by the grantor, so as to enable him to defeat any creditor who should attempt to subject the interest in the property reserved to the grantor, to the payment of his debt, the deed is fraudulent. Quarles v. Kerr, 14 Gratt. 48.
I3ut a trust deed conveying real and personal property, including a stock of store goods, is not per sft fraudulent because it postpones the sale of real estate for six months from the date of the deed, and authorizes the trustee, after taking an inventory of the store goods, to take control of them, and sell the same at private sale, if that can be done in six months, and then sell the residue at public auction; in either case the sales to be in the best possible manner for the interests of the creditors of the grantor. Cohn v. Ward, 32 W. Va. 34, 9 S. E. Rep. 41. And a deed which conveys land to secure a dona fide debt, which is not. to be enforced for two years, and only then or afterwards upon a notice of the sale for one hundred and twenty days, is valid against creditors. Such a deed is *168 valid though the execution of the deed is postponed forfive years from the date of the conveyance; and the rents and profits of the property in the meantime, are reserved to the grantor. Lewis v. Caper-ton, 8 Gratt. 148. So a deed of trust ^hich among other things conveys growing crops of wheat, rye and oats, and which is not to be enforced for two years from its date, is not necessarily fraudulent as to creditors. Cochran v. Paris, 11 Gratt. 348. Moreover, a deed which conveys without a schedule, household furniture, the various kinds of stock on a farm, bacon and lard, to secure a bona fide debt, but not to be enforced for eighteen months after its execution, is valid against creditors, though the deed was made without the knowledge of the creditor, and the grantor was indebted to insolvency at the time of the conveyance. Lewis v. Caperton, 8 Gratt. 148.
And a deed executed bona fide to secure a loan of money, not to be enforced for ten years, is a valid deed as against creditors of the grantor. Lewis v. Caperton, 8 Gratt. 148.
c. Deed Furnishing Security against Losses and Liabilities-Potential Lien.—A deed of trust, though made solely to secure one against any future loss as indorser, cannot for that reason be impeached, if made bona fide. Harvey v. Anderson (Va.), 24 S. E. Rep. 914.
Thus, in Alexandria Savings Inst. v. Thomas, 29 Gratt. 483, by deed which was duly recorded in January, 1856, the grantor and his wife conveyed a house and lot in trust to secure a certain beneficiary against any loss or damage which he might sustain by his acceptance of any drafts or bills which might thereafter be drawn by the grantor upon the beneficiary, which acceptance the beneficiary had agreed to make for the accommodation of the grantor. The beneficiary, accordingly, from the date of the deed to January, 1861, accepted the drafts of the grantor to a large amount, and the grantor was indebted to him for much more than the house and lot was worth. In 1871, a certain savings bank, being the holder of three of the notes of the grantor in the deed of trust, given on renewals of notes which were due before the date of the deed, filed a bill against the grantor as an absent defendant, to attach the house and lot, insisting that the deed having been given to secure future advancements, was null and void as to the creditors of the grantor. The court held that, though the beneficiary secured in the deed of trust was under no liability for the grantor when the deed was executed, it was, nevertheless, a valid security for all of his acceptances for the grantor given before some other creditor had acquired a lien on the house and lot conveyed in the deed of trust.
Moreover, a deed which conveys future rents and profits of property conveyed in other deeds, which were reserved to the grantor in the previous deeds, for the purpose of paying a bona fide debt, is valid against creditors of the grantor. Lewis v. Caperton, 8 Gratt. 148.
d. Reservations to the Vendor.—It is well settled that conveyances professedly to indemnify creditors, but expressly or impliedly reserving to the grantors powers inconsistent and adequate to defeat such purpose, are void as to creditors and purchasers. Wray v. Davenport, 79 Va. 19; McCormick v. Atkinson, 78 Va. 8; Saunders v. Waggoner, 82 Va. 316; Sheppards v. Turpin, 3 Gratt. 373; Lang v. Lee, 3 Rand. 410; Addington v. Etheridge, 12 Gratt. 436; Perry v. Shen. Val. Nat. Bank, 27 Gratt. 755. See also, Hughes v. Epling, 93 Va. 426, 25 S. E. Rep. 105; Norris v. Lake, 89 Va. 517, 16 S. E. Rep. 663; Harden v. Wagner, 22 W. Va. 364; Claflin v. Foley, 22 W. Va. 441. See further, in this connection, Paul v. Baugh, 85 Va. 955, 9 S. E. Rep. 329; Young v. Willis, 82 Va. 291: Kuhn v. Mack, 4 W. Va. 186; Marks v. Hill, 15 Gratt. 400. So where an insolvent debtor conveys his land even for valuable, though inadequate consideration, with a secret reservation, that he shall for the time have use of the land without payment of rent, this fact is evident, that the conveyance was made with fraudulent intent. Livesay v. Beard, 22 W. Va. 585.
And a deed of trust on lands and personal property with no definitely fixed period at which a sale could be required, and which puts it in the power of the grantor by collusion, or otherwise, to indefinitely postpone a sale thereunder, and of the live stock convei7ed by the deed, and the increase thereof, and. all future crops to be raised from the ground in the quiet enjoyment of the grantor, from which to support his family and pay the debts secured thereon, as he may deem most advantageous, is. fraudulent on its face and void. Such deed being fraudulent on its face is void in toto and cannot stand as security for the debts therein attempted to be secured. Livesay v. Beard, 22 W. Va. 585.
Moreover, a deed of trust on a stock of merchandise which provides that the grantor shall be suffered to remain in the possession and enjoyment thereof until default is made in the payment of the debt secured, and request by the creditor to foreclose, and without accountability to the trustee for the proceeds of sale made by the grantor, is fraudulent per se. Hughes v. Epling, 93 Va. 424, 25 S. E. Rep. 105.
Nevertheless, where a deed of trust to secure certain debts, conveys certain real estate, and the grantor reserves in it, to himself and his family all exemptions and property allowed by the constitution of Virginia, and all laws passed in pursuance thereof, and in addition thereto all exemptions, allowed under the bankrupt laws, such reservation is legal and valid, and does not render the deed void on the ground of any fraudulent intent on the part of the grantor. Brockenbrough v. Brockenbrough, 31 Gratt. 580 (1879).
Neither is a trust deed on a stock of goods for the security of creditors which provides that the trustees shall take immediate possession of such goods, and manage them for the benefit of the trust, fraudulent per se, and void as to creditors, because it contains a provision allowing the grantor, without the power of sale, to replenish such stock of goods, and extending the trust to cover the same. Baer Sons Grocer Co. v. Williams, 43 W. Va. 323, 27 S. E. Rep. 345.
So a reservation in a deed to secure creditors, of the right to manage property therein conveyed for three years before sale, the rents and profits in the meantime to belong to the creditors secured, is not such an unreasonable restraint upon the power of sale as to constitute a fraud in itself. Noyes v. Carter (Va.), 23 S. E. Rep. 1.
In Kevan v. Branch, 1 Gratt. 274, the court held that a deed of trust for the benefit of creditors was not fraudulent, which conveyed among other things, cattle, household and kitchen furniture, and debts, without specification, either in the deed, or by schedule accompanying it; and further provided that the grantor should remain in possession of the property, for six months; and that no creditors *169 should have the benefit of the trust, who did not release the grantor from any further liability, in three months. Phippen v. Durham, 8 Gratt. 457.
And in Baldwin v. Van Wagener. 33 W. Va. 293, 10 S. IQ. Rep. 716, 3vhere a piano was delivered under an agreement in writing purporting to rent the same at $10 per month, the owner agreeing that when $300, the value of the piano, was paid in such monthly payments or otherwise, the title to the piano should vest in the renter, the court held, that such writing showed a sale upon a condition precedent, and, under the provisions of sec. 3, ch. 74, W. Va. Code 1887, the reservation of the title, unless a notice thereof is duly recorded, is void as to the creditors of the purchaser.
However, where a vendor agrees to sell to the vendee personal property for a price agreed to be paid at any future time, and delivers possession, but expressly retains title until payment, it is a conditional sale, and though by parol or by an unrecorded instrument, it is, nevertheless, valid as against vendee’s creditors or subsequent purchasers, with or without notice. This on the ground that such transaction, not being a chattel mortgage, but a conditional sale does not come within the scope of the Va. Code of 1873, ch. 114, § 5. McComb v. Donald, 82 Va. 903, 5 S. E. Rep. 558 (1876); O. D. Steamship Co. v. Burkhardt, 31 Gratt. 664 (1879). But see Va. Code 1887, § 2462, which provides that, every sale or contract for the sale of goods or chattels, wherein the title is reserved until the same be paid for in whole or in part, or the transfer of the title is made to depend on any condition, and possession be delivered to the vendee, shall be void as to creditors of, and i>urchasers for value without notice from said vendee, unless such sale or contract be evidenced by writing executed by the vendor, in which the said reservation or condition is expressed, and until and except from the time the said writing is duly admitted to record in the county or corporation in which said goods or chattels may be, etc.
e. Provisions Conferring Special Powers upon the Trustee, and Providing for His Compensation—Validity. —A discretionary power vested in a trustee to run and operate the business for a year, if he deem it wise to do so, having in view the interest of the creditors secured, does not render void ver se a deed of conveyance of astock of goods. Nor is such deed rendered void by the further provision empowering the trustee to replenish the stock by cash purchases of such articles as will aid in keeping up the business, and disposing of the other stock to better advantage. Hurst v. Leckie, 97 Va. 550, 34 S. E. Rep. 464. See also, Williams v. Lord, 75 Va. 390.
Thus, as held in Marks v. Hill, 15 Gratt. 400, a provision in a deed of trust to secure creditors, that the trustee may continue the business and replenish the stock, if intended merely as a means of realizing the trust fund, and with a view to winding up the business, is not fraudulent per se, so as to avoid the deed. And in such a case a provision in the deed that one of the grantors shall attend to the business, he being under the control of the trustee, who may at any time on his motion, and shall at the request of creditors, sell the property at auction, is not fraudulent per se, so as to avoid the deed. Harden v. Wagner, 22 W. Va. 356. Neither will a provision in a deed of trust authorizing the trustee to sell the property at private sales render the deed fraudulent on its face. Landeman v. Wilson, 29 W. Va. 702, 2 S. E. Rep. 203.
And a trust deed given to secure a note payable one day after date which conveys personal property and choses in action, is not fraudulent merely because it provides that the trustee shall sell the property conveyed on demand by the cestuis que trust or either of them. Harden v. Wagner, 22 W. Va. 356. So a provision in a deed of trust on a stock ot goods: to secure creditors, which authorizes the trustee to dispose of the stock in due course of trade, does not. render the deed fraudulent on its face, nor is the deed rendered void by a failure to provide in express terms for a sale by the trustee on request of the creditors secured. Taylor v. Mahoney, 94 Va. 508, 27 S. E. Rep. 107. Similarly a conveyance to a trustee of a stock of goods to secure creditors, which authorizes the trustee to sell in the usual course of trade for a limited period, and to that end to employ clerks and salesmen, is notinvali dated by the fact that the trustee employs the grantor as his chief salesman to dispose of the stock of goods. Hurst v. Leckie, 97 Va. 550, 34 S. E. Rep. 464.
Moreover, a provision in a deed of trust for 10 per cent, commissions for the trustee, though more than provided by statute, is not evidence of fraudulent intent, this not being shown to be excessive or unreasonable compensation. Harvey v. Anderson (Va.), 24 S. E. Rep. 914.
f. Special Privileges Given to Certain Cr editor s-When Valid— The inclusion, in a deed of trust to secure certain creditors, of the balance due on a, building contract, without regard to rights of subcontractors, has little if any weight on the question whether the deed was made with fraudulent intent. Harvey v. Anderson (Va.), 24 S. E. Rep. 914.
And where a deed of trust is madeb3r an insolvent, debtor conveying his household and kitchen furniture to secure a bonafide debt due from him to his mother and payable at six months, with a provision in the deed that the creditor shall retain the possession, use and enjoyment of the property, until there is a default in the payment of the debt, at maturity, and the trustee be required by the debtor to sell the same, the conveyance is valid. Klee v. Reitzenberger, 23 W. Va. 749.
But where a deed of trust is made about the same time by the same debtor, conveying the store goods and merchandise in his store to secure other creditors, with provisions of a similar character, it is invalid; and what purports to be an absolute sale of the same goods made shortly afterwards by the debtor to the principal creditor secured in the deed of trust, without the consent of the trustee or the other creditors, in consideration of the debts secured in the deed, but without any actual delivery of the goods so sold, and the seller afterwards conducts, the store in the name of the purchaser, will be held to be a part of the same fraudulent transaction, and under the circumstances both the trust deed and the subsequent pretended sale will be held fraudulent and void as to the creditors of the grantor. Klee v. Reitzenberger, 23 W. Va. 749.
C. OASES IRRUSTRATING- CIRCUMSTANCES UNDER WHICH TRANSFERS HAVE BEEN DECLARED VARID, THOUGH ATTACKED AS FRAUDURENT.
Sale of Land by Execution Debtor.—A sale of a tract of land, by a debtor charged in execution, is not necessarily fraudulent and void as to the creditors at whose suit heis in custody, butmaybe supported-if made to a bona tide creditor, fora reasonable consideration, and without any secret agreement, or understanding between the parties, that the land is *170 to be holden for the use and benefits of such debtor. Bullock v. Gordon, 4 Munf. 450.
Conveyance by Wife Immediately before Marriage. —And a conveyance made by a woman Immediately before her marriage is prima facie good, and can be impeached only by proof of fraud. Pusey v. Gardner, 21 W. Va. 469.
Thus, in Prior v. Kinney, 6 Munf. 510, an agreement was made between two unmarried sisters, that the property of the one who should die first, or be married, should, in either event, belong to the other; in consideration of which agreement, one of them, by a deed of gift executed two days before her marriage, conveyed ail her slaves to her sister, who, after the'marriage, lived partly with her, and partly with her brother; permitting the hushand (who was in embarrassed circumstances), to have the use of the slaves; except two, whom the donee retained in her own employment, and principally to wait upon herself. This deed, though admitted to record on the oath of one of the subscribing witnesses, one swearing to the handwriting of another who was dead, was adjudgéd not to be fraudulent as to the creditors of the hushand, notwithstanding a judgment for the debt had been rendered against him, and was unsatisfied, when it was executed, and when the marriage was solemnized. See Leonard v. Smith, 34 W. Va. 442, 12 S. E. Rep. 479.
Conveyance from Child to Parent.—So a conveyance from a child to its parent, whether with' or without a valuable consideration, is presumed to be valid in the absence of any circumstances of proof tending to show fraud, misrepresentation or undue influence, on reasonable ground, from which the court may presume that the act was not entirely free and voluntary on the part of the child. Pusey v. Gardner, 21 W. Va. 469.
Conveyance by Insolvent in Consideration of an Antecedent Debt—Creditor Knows of Insolvency.—
Moreover, a conveyance in consideration of an antecedent debt, from an insolvent to his creditor, without'fraudulent intent in the creditor though the creditor know of his debtor’s insolvency, does not alone stamp the conveyance as one fraudulent in fact and utterly void; but it stands for the benefit of all creditors, including the one thus preferred. Herold v. Barlow (W. Va.), 36 S. E. Rep. 8.
Title Bond Given in Husband’s Name, but Consideration Paid Outof Wife’s Separate Estate.—So in Hamilton v. Steele, 22 W. Va. 348, the court declares, that if a title bond for land is executed by a vendor of the land to a husband, and the consideration is paid by the husband as the agent-of his wife, directly from the proceeds of the sale of certain separate estate belonging to the wife, the husband having no estate or means of his own,-and the circumstances show that the purchase is made for the wife, and the deed is subsequently made by the vendor directly to the wife, such deed is not fraudulent as against the creditors of the hushand, and the land cannot he subjected to the payment of the debts of the husband’s creditors..
Consideration Composed of a Promise to Pay Off Grantor’s Debts and Abandon a Suit for Divorce.—And in Casto v. Fry, 33 W. Va. 449, 10 S. E. Rep. 799, a worthless husband, indebted to, insolvency, in pursuance of an agreement that his wife would abandon her purpose to sue for a divorce, and that she and her sons would pay certain specified debts of the hushand, which he asserted and they believed were all he owed, amounting to over $800, conveyed to a third person, who on the same daj’ conveyed to the wife, real estate worth from $600 to $800. The wife and sons at the time assumed to pay, and after-wards, iu good faith and without notice of any fraud, did pay off said debts. Upon these facts the court declared that, the conveyance was valid as against the creditors of the husband whose debts existed prior to and at the time of the conveyance, but of which the wife had no notice.
Assignment of Bond in Consideration of -Maintenance —Validity as to Existing Creditors.—Likewise in Hisle v. Rndasill, 89 Va. 519, 16 S. E. Rep. 673, two maiden ladies, the one an invalid and the other fifty-five years old, without means except certain bonds of uncertain value, assigned these bonds to a certain assignee, in consideration that this assignee would support them during their lives. The assignee did not know certain prior creditors of theirs, these creditors taking no steps to enforce their claims until more than twenty years after the assignment was made. Thenceforth they both resided with the assignee ; the invalid continuing with him twenty-three years, until her death, the other still continuing. There was no evidence that the transaction was voluntary or fraudulent. Neither assignor sough.t to annul it. The court held upon these facts that it was a contract of hazard and the bill of the prior creditor to set it aside was without merit.
Execution Creditor Purchases the Debtor’s Property and Permits It to Remain in His Possession.—So in Wilson v. Butler, 3 Munf. 559, a suit, on a bond was brought against the debtor in a county in which he did not reside; he confessed judgment on the return of the writ, and furnished the sheriff having the execution, with a list of slaves, and other property of his, to be advertised for sale at his house ; the property (without being seen.by the sheriff until the day of the sale) was advertised, and sold to the creditor, for a fair price, though uo other person bid; the creditor (whose claim was proved to he just and bona fide), being a brother of the debtor’s wife, permitted the property to remain in the debt- or’s possession, and within five years afterwards, conveyed the same, in trust, for the use of the wife and children of the debtor, by a. deed recorded in a different county from that in which the property was. The court held that none of these circumstances were considered unfair ; and the deed -was adjudged-to be good against others creditors.
Land Conveyed in Consideration of Stock—Effect as to Creditors.—And in Baker v. Naglee, 82 Va. 876, 1 S. E. Rep. 191, a grantor conveyed land, in exchange for stock, to an incorporated company, which conveyed it to secure bonds issued by it. The grantor’s creditor subsequently filed a bill, alleging that the grantor and the company were one and the same, and that the conveyance was a contrivance to hinder, delay and defraud his creditors ; and prayed that the conveyance he annulled and the issue and sale of the bonds be enjoined. The court held the .conveyance valid, the stock a valuable consideration, and that there was no proof of fraud iu the transaction.
Purchase under Deed of Assignment, by Mother and Aunt of Assignor—Subsequent Sale to Wives of Assignors—Business Managed by Husbands.—In Catlett v. Alsop (Va. 1901.) 7 Va. Law Reg. 625, a purchaser at a sale by the trustee under a deed of assignment made by a firm, was the mother of one of the partners and aunt of the other. She purchased the stock of goods for $1,500, to be credited *171 on her debt of 83.000, preferred in and secured ' by the assignment. She continued business in the name of the firm as her agent. Subsequently she sold the stock to the wives of the partners on their agreement to pay her the balance due from the firm. This agreement was reduced to writing a year later. On payment of such balance, she relinquished to the wives all claim to the stock of goods, and they continued the business under the management of their husbands, but in their own names. The wives had no experience in business, nor separate estates, when they contracted to purchase the goods. The Va. Code of 1887, § 2287, allows a married woman to carry on business on her own account and § 2285 provides that her own separate estate shall not be subject to the use or control of her husband, or for his debts or liabilities. The court held, that no fraud was shown sniiicient to subject the profits of the business and property purchased therewith to the claims of the creditors.
III. RIGHTS AND LIABILITIES.
A. IMMEDIATE PARTIES.
1. VENDOR AND VKNDEJB.
a. Jn General.- A deed, though fraudulent and void as to creditors, is nevertheless valid and binding between the parties to the fraud, which brought it into existence. Core v. Cunningham, 27 W. Va. 207; Thomas v. Soper, 5 Munf. 28; Alexander v. Deneale, 2 Munf. 341; Gay v. Moseley, 2 Munf. 543; Robertson v. Ewell, 3 Munf. 1. And in Far. Bank v. Corder, 32 W. Va. 233, 9 S. E. Rep. 220, it is held to be error for the court tosetitaside in toto. Linsey v. McGannon, 9 W. Va. 154; Thornburg v. Bowmen, 37 W. Va. 538, 16 S. E. Rep. 825.
But a party who, to hinder and delay his creditors, fraudulently conveys his property to another, cannot, except under peculiar circumstances, maintain a bill to rescind the contract. The grantor and grantee being generally in pari delicto, neither is entitled to come into equity. James v. Bird, 8 Leigh 310.
And where a suit has been brought to set aside a deed as fraudulent and subject the land to the payment of a judgment, which with interest is less than $100. but the land is worth $150. the judgment debtor, and grantor, is not entitled to appeal from a decree declaring the deed fraudulent, but the grantee, whose land is subjected, the value thereof being more than $100, is entitled to an appeal. Parker v. Valentine, 27 W. Va. 677.
And where a suit has been brought to subject land to the payment of a lien, and to set aside a fraudulent conveyance, and the report of the sale has been made, and it is found that there will not be sufficient money produced by the sale to pay the lien, expense of sale and costs, there should be rendered a personal decree against all the fraudulent grantors and grantees, for whatever costs remain after providing for the payment of the liens and expenses of the sale. Hinton v. Ellis, 27 W. Va. 422.
And it is well to observe in this connection, that where property is incumbent to its full value by reason of prior liens thereon, an insolvent debtor may convey it in satisfaction of such prior liens, without rendering it subject to the provisions of section 2. ch. 74, W. Va. Code 1891: for such conveyance is not to the exclusion or prejudice of other creditors, but only amounts to the surrender of a valueless equity of redemption. Johnson v. Riley, 41 W. Va. 140, 23 S. E. Rep. 698.
b. Vendor.—Until there is a legal lien by judgment or execution fixed upon the debtor's property, he may, though insolvent or in failing circumstances, convey or transfer his estate in trust; and if it be done in good faith, he may thereby prefer one creditor to another without committing fraud, within the statute, upon the creditors who are delayed or hindered by such conveyance. Nor is it an objection that the conveyance defeats allother creditors of their legal remedies, though they be a majority in number and value. Harden v. Wagner, 22 W. Va. 356.
Claim of Homestead -Deed Annulled and Set Aside. - And where there is a fraudulent conveyance of property, which is subsequently annulled at the suit of a creditor, the grantor is not estopped as against such creditor to assert his right of homestead in the premises. Wray v. Davenport, 79 Va. 19: Marshall v. Sears, 79 Va. 49; Hatcher v. Crews, 83 Va. 371, 5 S. E. Rep. 221; Wilkinson v. Merrill, 87 Va. 513, 12 S. E. Rep. 1015; 1 Min. Inst. (4th Ed.) 910 911. See also, Mahoney v. James, 94 Va. 180, 26 S. E. Rep. 384; Shipe v. Repass, 28 Gratt. 716; Russell v. Randolph, 26 Gratt. 705; Boynton v. McNeal, 31 Gratt. 456; Calhoun v. Williams, 32 Gratt. 18: Oppenheim v. Myers (Va. 1901), 7 Va. Law Reg. 269.
In this latter case it was held, that where a bill is filed to set aside a.s fraudulent a deed made by a married woman, her husband having died leaving infant children dependent on their mother for a support; and the deed is set aside as fraudulent and the widow claims the homestead, that the right of the widow to claim the homestead is superior to the lien given creditors by § 2460, Va. Code 1887, relative to setting aside fraudulent conveyances, on filing their bill.
Sale Induced by Fraud—Vendor’s Rights.—It may be observed in this connection that the doctrine is now well established, that if the owner is fraudulently induced to sell his goods (fraud in the inducement as distinguished from fraud in esse contractus), yet the sale passes the title, and that the vendor, on discovering the fraud, may disavow the sale and reclaim the goods, provided they have not passed into the hands of a Dana flete purchaser. Oberdorfer v. Meyer, 88 Va. 384, 13 S. E. Rep. 756.
Fraudulent Vendor’s Liability to a Bona Fide Purchaser.—And in Whitehorn v. Hines, 1 Munf. 557, the court declares that a bona fide purchaser, without notice of fraud, having received a deed from two persons (one of whom fraudulently induced the other to join therein), is not responsible in equity; but the loss ought to fall on the fraudulent vendor.
c. Married Women as Vendors—Where it is clearly shown that a married woman holds a bona Jide debt against her husband, she is entitled to the same legal rights as any other creditor, except as to remedy. Righter v. Riley, 42 W. Va. 633, 26 S. E. Rep. 357. And in the absence of fraud, a settlement upon a wife by her husband, will not be disturbed unless it manifestly appears to be grossly excessive. Burwell v. Lumsden, 24 Gratt. 443; Payne v. Hutcheson, 32 Gratt. 812; Kanawha Val. Bk. v. Wilson, 25 W. Va. 242. So improvements afterwards put upon the property by the husband or father cannot be subjected by creditors to the payment of their debts, unless such improvements were put upon the property with intent to hinder, delay or defraud the creditors of the husband or father. Lockhard v. Beckley, 10 W. Va. 87.
See. in this connection, Hall v. Hyer (W. Va. 1900), 37 S. E. Rep. 594, in which case a solvent husband put improvements on his wthe's separate property *172 to the amount of $1,100; afterwards, she as surety, 3 oined in a deed of trust on the property to secure his individual indebtedness to an amount in excess of $1,100. It was held that, former creditors of the husband could not attack such property because of the gift of the improvements by the husband to the wife, so long as such trust debt remained unpaid by the husband, and the wife was liable for the same, as such trust debt unpaid was equivalent to revocation of the debt.
As a consideration to support such settlement, dower to the extent of its value, or the wife’s equity in property, is deemed a valuable consideration. Walden v. Walden, 33 Gratt. 88; Burwell v. Lumsden, 24 Gratt. 443. It is further held that, the participation of the wife in the fraud of the husband will not impair her rights, where she has given an equivalent for the property out of her dower. Blanton v. Taylor, Gilmer 209. And formerly, it was settled principle of law, as declared in Clay v. Walter & Co., 79 Va. 92, that whatever the design of the grantor, a settlement on a woman in contemplation and in consideration of marriage, was valid, unless her knowledge of his intended fraud was clearly and satisfactorily proved; and it was held that service by creditors of the grantor, of written notice on the grantee before the marriage, of the grantor’s fraudulent design in making the settlement, could not affect her constructively with notice of such design, but her actual knowledge of and participation in the fraudulent design must be clearly established by proof. If valid, the wife was deemed a .purchaser for value' of the property settled on her, in consideration of the marriage, and was entitled to hold it against all the world. Herring v. Wickham, 29 Gratt. 628. See also, Moore v. Butler, 90 Va. 683, 19 S. E. Rep. 850; Triplett v. Romine, 33 Gratt. 651; Coutts v. Greenhow, 2 Munf. 363; Eppes v. Randolph, 2 Call 125; Shobe v. Carr, 3 Munf. 10; Huston v. Cantril, 11 Leigh 136; Bentley v. Harris, 2 Gratt. 357; Welles v. Cole, 6 Gratt. 645; Fones v. Rice, 9 Gratt. 568; 1 Min. Inst. (4th Ed.) 319; 6 Am. & Eng. Enc. Law (2d Ed.) 724. But see Va. Code 1887, sec. 2459, where it is provided that as against creditors whose debts were contracted at the time the conveyance or settlement was made, marriage shall no longer be a valid consideration. Barton’s Ch. Pr. (2d Ed.) 549, 550, 561, 575, 578.
Thus, the court expresses itself in Quarles v. Lacy, 4 Munf. 251; “Although it is not competent to a husband, after his marriage, to defeat or obstruct his creditors, by selling or exchanging his property, and taking a conveyance of the money or other property received therefor, to the use, or for the benefit of his wife and family (such conveyance being deemed voluntary, and fraudulent as to creditors) ; yet the case may be otherwise in relation to so much of such money or other property as goes to compensate the just interest of the wife. If,'* therefore, the wife relinquish her right of dower in other land, in consideration of such conveyance, the value of such dower ought to be saved to her, in opposition to thé daifas of her husband’s creditors.” Johnston v. Gill, 27 Gratt. 587.
But in Harrison v. Carroll, 11 Leigh 476 (1841), a husband and wife made a parol agreement, that the husband should settle personal property to the separate use of the wife, on condition that the wife would relinquish her contingent right of dower in lands of the husband, which he proposed to convey for the benefit of creditors. The settlement upon the wife was accordingly executed. Subsequent to the execution of this deed of settlement, a creditor of the husband obtained judgments against him, and sued out a Aeri facias thereon, and delivered it to the sheriff. Some time after this, the wife, in pursuance of her agreement, joined her husband in a deed conveying the lands. Upon these facts, the court held that the property settled on the wife was liable to the execution of the judgment creditor, and that it was" not proper for a court of equity to restrain the creditor from proceeding to make his debt out of same. This on the ground that the agreement which was the ostensible consideration, in no wise bound the wife, and in respect of every legal obligation on her, or remedy on the part of the husband or his creditors, the agreement was a mere nullity. And in the case of a mere parol unexecuted contract, between husband and wife, where nothing passed from the wife, no obligation was incurred, and no remedy existed to compel her to convey anything.
Moreover, where a wife is induced to unite wi th her husband in conveying away her interest in his real estate, upon condition that certain and specific property shall be settled on her in consideration of her thus parting with her rights, if such settlement is set aside and annulled at the instance of the husband’s creditors, she has the right to be placed in the same position, and restored to the same rights, with which she was invested by law before she united in the deed of which the specific settlement was the consideration. However, this must be without prejudice to the rights of creditors or purchasers. Davis v. Davis, 25 Gratt. 587. So if property of the wife which a court of equity would direct to be settled upon her, is conveyed by the husband to a trustee for her benefit, the court will sustain the deed against creditors of the husband. Poindexter v. Jeffries, 15 Gratt. 363. And in Bentley v. Harris, 2 Gratt. 357, it is held, that if an embarrassed debtor makes a voluntary conveyance of personal property, to an unmarried female, and afterwards, upon her marriage, the property is settled to the use of the wife for life, and at her death to her children, it is not liable for the debts of the first donor. Bentley v. Harris, 2 Gratt. 357.
But, if it appears that the wife actively participated in the attempt to sustain a conveyance by claiming that a conditional and unfounded indebtedness is a part of the consideration for the property, the conveyance will be treated as fraudulent in fact, and void in tolo as to the creditors of the husband, and will not be permitted to stand as security to the wife for the valid portion of the consideration paid by her, as against the creditors of her husband. Webb v. Ingham, 29 W. Va. 389, 1 S. E. Rep. 816.

d. Vendee.

(a) In General.
If the grantee in a deed be a bona Ade purchaser for a valuable consideration, his or her title is unassailable, whatever may have been the motives or intentions of the grantor in executing the deed. It is absolutely essential that both parties shall concur in the fraud, to invalidate the deed. Herring v. Wickham, 29 Gratt. 628.
Moreover, where there is no pretense of fraud in procuring a deed, creditors of a grantor upon debts contracted since the execution of the deed cannot subject the land to the payment of their debts. Irvine v. Greever, 32 Gratt. 411.
And to avoid a deed at the suit of a subsequent *173 creditor, actual fraud must be shown. Johnston v. Zane, 11 Gratt. 552.
Thus, in Fischer v. Lee, 98 Va. 159, 35 S. E. Rep. 441, the court declares, that proof of the fraud of a grantor or transferrer of property is not sufficient of itself to avoid an assignment or transfer thereof, where value has been paid, but it must also be proved that the grantee or transferee had notice of the fraud or evil design of his vendor, or of facts and circumstances naturally calculated to excite suspicion in the mind of a person of ordinary care and prudence, and which would naturally prompt him to inquire before consummating the purchase, and that such enquiry, if diligently pursued, would have led to the knowledge or notice sought to be imputed.
And the doctrine is similarly stated in Newberry v. Bank of Princeton, 98 Va. 471, 36 S. E. Rep. 515, where it is said, that if the grantee in a fraudulent deed had knowledge, at the time of the conveyance, of facts and circumstances which were naturally and justly calculated to excite suspicion in the mind of a person of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction, and such inquiry would have necessarily led to a discovery of the fact with notice of which he is sought to be charged, he will be considered to be affected with such notice, whether he made inquiry or not. But while the fact of notice may be inferred from circumstances, as well as proved by direct evidence, yet the proof must be such as to affect the conscience of the purchaser, and must be so strong and clear as to fix upon him the imputation of mala fides.
But it should be noted that, if a debtor in Ms lifetime conveys his lands to a grantee by deed, and after the death of the debtor certain of liis creditors file their bill to set aside the deed as fraudulent and to subject the lands to the payment of their debts, the grantee of such lands may contest the claims of the creditors on the ground that they are barred by the statute of limitations or otherwise. Werdenbaugh v. Reid, 20 W. Va. 588.
In a suit to set avside a fraudulent deed, where it appears that the grantee acquired notice of the fraud before he had paid bonds given for deferred payments of purchase money, and also had notice of the plaintiff's execution against his grantor, a decree should he entered against the grantee in favor of the plaintiff for the amount of such bonds and the interest thereon from maturity. Newberry v. Bank of Princeton, 98 Va. 471. 36 S. E. Rep. 515.
And if a grantor conveys a tract of land to a grantee with intent to defraud his creditors, of which the grantee has notice, and the grantee conveys the land to an innocent purchaser for value, and the first grantee receives this sum, which is proved by the evidence in the cause, and the court sets aside the deed from the first grantor to the first grantee, for fraud, and renders a personal decree for the amount with interest which the first grantee received for the land, it is no error. And there is no necessity for an account to see what the value of the land is. unless the appellant is dissatisfied with the value as fixed by the first grantee, as the first grantee is not prejudiced by being required to pay only what he received in fraud of the creditors of the first grantor. Hinton v. Ellis, 27 W. Va. 422. So there may be a money recovery against a fraudulent grantee of property who has sold such property to a bona Me purchaser and realized money therefrom in favor of the defrauded creditor. Ringold v. Suiter, 35 W. Va. 186, 13 S. E. Rep. 46.
In Williamson v. Goodwyn, 9 Gratt. 503, the vendor sold a number of slaves at a price much below their value, for the purpose of defrauding his creditors, and soon afterwards died. The vendee executed to him her bonds for the purchase money, and the vendor assigned the bonds to bona fide creditors. The vendee sold a part of the property and discharged the bond, and then conveyed the remainder of the property to the widow and child of her vendor. Upon the bill filed by the creditors of the deceased vendor to set aside these deeds as fraudulent, the court set them aside, and the property conveyed in the last of them was sold and the proceeds were applied to pay the claims of the creditors. And as all the creditors of the deceased vendor were not satisfied out of this fund, his vendee was held liable to satisfy them to the extent of the price of the property sold by her, the vendee.
Moreover, if a deed be set aside as fraudulent and void as to creditors of the grantor, because the same was made with intent to hinder, delay and defraud such creditors, and a part of the consideration of such deed was the satisfaction of a bona fide debt due from the grantor to the grantee, such fraudulent grantee is not entitled to charge the lands thereby attempted to be conveyed with the amount of such bona fide debt. Kan. Val. Bk. v. Wilson, 25 W. Va. 242.
(b) Bona Fide Purchasers.- See post, “Deeds of Trust.”
Under ch. 74, W. Va. Code 1900, a bona fide purchaser for valuable consideration, who has no notice of the fraudulent intent on the part of his immediate grantor, and the fraud rendering the title of such grantor void, is protected. Root-Tea-Na-Herb Co. v. Rightmire (W. Va.), 36 S. E. Rep. 359. See Goshorn v. Snodgrass, 17 W. Va. 717; Va. Code 1887, § 2458; Garland v. Rives, 4 Rand. 282; Lockhard v. Beckley, 10 W. Va. 88.
But one, who purchases from a fraudulent grantee with notice of the fraud and of the invalidity of his title, can acquire no better right than the fraudulent grantee has. He cannot be protected as a bona fide purchaser, but must stand in the shoes of his grantor. Goshorn v. Snodgrass, 17 W. Va. 717; Spence v. Smith, 34 W. Va. 697, 12 S. F. Rep. 828.
Nevertheless, a bona fide sale, for a fair price, to an innocent purchaser, should not he set aside at the instance of the creditor of the grantor, on the grounds of alleged fraud, for the sole reason that in the opinion of sundry witnesses the property might have brought a larger price if sold on credit. Douglass v. Douglass, 41 W. Va. 13, 23 S. E. Rep. 671.
Moreover, if a person defrauds another of slaves, and afterwards makes a deed conveying them, to a trustee to secure a debt, and the trustee sells the property to a bona fide purchaser for value and without notice, and the purchaser then conveys the property to a third person, the latter purchaser is entitled to hold the slaves against the person defrauded, whether he had notice of the fraud or not. In the former case, he holds a valid title under the purchaser; in the latter, he is himself a bona fide purchaser without notice of the fraud. Montgomery v. Rose, 1 P. & H. 5. And where a deed conveys and assigns property in trust, to be applied to discharging a bond ‘executed by a wealthy and unembarrassed father to his daughter, to be paid to her on her marriage, it is valid as against creditors of the father, becoming such after the marriage of *174 the daughter, although at the time of the execution of the deed, the father was embarrassed to insolvency. Welles v. Cole, 6 Gratt. 645, So where a child, who is an infant, is deemed a purchaser for valuable consideration, of a slave, the circumstance that the child resides in the family of its father, and there keeps the slave, over whom it exercises every act of ownership, will not entitle the creditors of the father to disturb the possession of the child, although the father had included the slave in a mortgage, to indemnify the mortgage against certain securityships. Braxton v. Gaines, 4 H. & M. 151.
Moreover, upon a bona Mo sale of personal property though the vendee does not take possession at the time of the sale, yet if he does get possession before an execution is issued against the vendor, his title is good as against the creditors of the vendor. So also, where a bona Me vendee of personal property has gotten possession of the property before the issuing of an execution against the vendor, his title is good as against the creditor of the vendor, though after such possession by the vendee, he employs the vendor as his agent to sell the property; an d the vendor is in possession as the agent of the vendee at the very time that the execution issues, and is levied upon it. M’Kinley v. Ensell, 2 Gratt. 333.
And although, if a son obtain a conveyance for land purchased by his father, the conveyance may be set aside for fraud by a creditor of the father, whilst the land is in the hands of the son; yet, if the son sell and convey the land to a third person for valuable consideration, who has no notice of the fraud between father and son, such third person being a bona Me purchaser, will be protected in his purchase against creditors of the father from the operation of the statute of frauds, by his proviso. Coleman v. Cocke, 6 Rand. 618.
However, a widow having received her distributable share of the personal estate of her husband, is not a purchaser for value, so as to be entitled to set up the defence of purchaser for value without notice. And if in such case the husband has obtained slaves by a conveyance fraudulent as to the creditors and grantor, and one of the slaves has been allotted to the widow, a slave in her possession may be taken in execution at the suit of the creditor of the grantor, though the husband and those claiming under him have been in possession of the slave more than five years. Snoddy v. Haskins, 12 Gratt. 363.
It is to be further observed, however, that if a bona Me purchaser, without notice of fraud, who has received a deed from two persons (one of whom fraudulently induced the other to join therein), is not responsible in equity; but the loss ought to fall on the fraudulent vendor. Whitehorn v. Hines, 1 Munf. 557.
2. Trustee and Cestui Que Trust.—In order to make void a deed of trust, notice of the grantor’s fraudulent intent must in some way be brought home to the trustee, or to the creditor. Douglass, etc., Co. v. Laird, 37 W. Va. 687, 17 S. E. Rep. 188; Baer Sons, etc., v. Williams, 43 W. Va. 323, 27 S. E. Rep. 345. Thus, a deed which conveys land to secure a bona Mo debt due to the grantee, and also a debt to the grantor’s wife, which is voluntary and fraudulent as to his creditors, and the nature of which debt is known to the grantee, is null and void as a security for the first as well as the last-mentioned debt, as against subsequent incumbrancers and creditors of the grantor. Lewis v. Caperton, 8 Gratt. 148.
It is a settled principle, nevertheless, that the beneficiaries in a deed of trust are affected with notice to the trustee, although he did not know of the existence of the deed or of an intention to make it until it was recorded, and then immediately declined the trust. Merchants’ Bank v. Ballou, 98 Va. 112, 32 S. E. Rep. 481.
But where a trust deed secures many debts in separate classes or to different persons, the simple fact that a part of the debts secured are shown to be invalid or voluntary will not make the deed invalid as a security for other and bona Me debts secured therein. Cohn v. Ward, 32 W. Va. 34, 9 S. E. Rep. 41. However, a debtor cannot convey his property to a trustee to secure creditors and reserve an interest in or control over the property inconsistent with the grant, and adequate to its defeat, but a direction of the trustee, “when so required by the creditors, to take charge of said property’ and sell the same at public auction” is not of itself such reservation of interest or control as to avoid the deed. Stoneburner v. Motley, 95 Va. 784, 30 S. E. Rep. 364.
It must be observed that the trustee and beneficiaries in a deed to secure bona Me debts, without notice, are purchasers for valuable consideration, within the meaning of the exception in the statute, Va. Code 1849, ch. 188, § 3, p. 717; Va. Code 1887, § 3601; and will be preferred to an execution creditor of the grantor in the deed, as to a chose in action thereby conveyed. Evans v. Greenhow, 15 Gratt. 153.
Still, if a sale be fraudulent (so as to render the sale void as between the purchaser, or cestui que trust, and the creditors of the original debtor), yet if the deed is good, it still operates to shield the property (conveyed for the benefit of the cestui que trust) from the execution of the creditors of the original debtor; in other words, it operates as effectually to prevent an execution from being levied on the property as if there had been no sale. Claytor v. Anthony, 6 Rand. 285.
And although a party to whom property is conveyed upon a fraudulent secret trust, may hold it as his own, against the grantor and his representatives, yet, if the grantee assents to the trust, and executes it in part, it is not competent for such of the cestuis que trust as may have gotten possession of the property, to set up the fraud for the purpose of defeating the claim of the other cestuis que trustent to their share of the property. Turner v. Campbell, 3 Gratt. 77.
3. Mortgagor and Mortgagee.—The possession remaining with the mortgagor, for five years, without demand made and pursued by process of law on the part of the mortgagees, does not make a case in which, under the statute of frauds the property is taken to be with the possession, and liable to the creditors of the person in possession. Rose v. Burgess, 10 Leigh 186.
4. Loaner and Loanee.—If a debtor remains in possession of slaves for five years, under a parol loan, they are liable to satisfy his creditors, though the possession is resumed by the lender before executions are levied upon them. Beale v. Digges, 6 Gratt. 582; Va. Code 1887, § 2461.
And In Lacy v. Wilson, 4 Munf. 313 (1814), a similar provision to section 2461 of Va. Code 1887, in force in 1814, was construed. The court declared that, the loan of the slave by a father to his daughter during her life, and a gift over to her children after her *175 death (being admitted to record on proof by one witness only), is not good against her husband’s creditors, or purchaser from him, without notice of such deed ; possession of such slaves having remained with the husband for five years without interruption. See Beasley v. Owen, 3 H. & M. 449.
So in Gay v. Moseley, 2 Munf. 543, it was held that, a slave lent either before or after the act to prevent frauds and perjuries, having remained since the commencement of that act, more than five years in the loanee's possession, without any demand made on the part of the lender, must be considered the absolute property of the party so remaining in possession. as to creditors of, and purchasers under him.
A similar but inore extensive doctrine was expounded in Fitzhugh v. Anderson, 2 H. & M. 289, in which case a father, anterior to our statute of frauds, having delivered certain slaves to his son, which were proved by verbal evidence (without any deed of writing), to have been lent, for an indefinite period, and the son having retained the uninterrupted possession for many years, used the property as his own, and acquired credit on the strength of his possession ; in a controversy between the father, or volunteer claimants under him, and creditors of, or fair purchasers from the son, the court said that, “the father shall be deemed to have given him the slaves ; and on general principies of law and equity, independently of any statutory provision, the title of the creditors and purchasers will be protected. The circumstance that the father, afterwards, by his j last will and testament, bequeathed the slaves to the son for life, remainder to his children, makes no difference in the case.”
Moreover, a demand of slaves by the lender, who thereupon receives, and immediately redelivers them to the loanee, to be held on the same terms, as be fore such demand, receipt and redelivery being in private, is not sufficient to bar the rights of creditors, under the act to prevent frauds and perjuries. Boyd v. Stainback, 5 Munf. 305.
And where possession has remained with the loanee, or with those claiming under him for five years, and is then assumed by the lender, the possession must continue with the lender thefull period of five years from th e time it was actually assumed, before the title will be revested in the lender as against the creditor of the loanee. Pate v. Baker, 8 Leigh 80.
But a loan of slaves, though not declared by deed in writing duly recorded, and therefore void as to creditors, the loanee having continued in possession five years without such demand, aft would bar their right, is nevertheless effectual between the parties and their representatives. If. therefore, the loanee die in possession of such slaves, they are not to be considered assets belonging to his estate, nor can they be recovered as such ; but they are liable to his creditors so far as their claims remain unsatisfied by the assets in the hands of his executor or administrator, but no farther. Boyd v. Stainback, 5 Munf. 305.
And where a father sends a slave to his son upon a loan, but the agent who takes the slave to his son neglects to inform him that the slave is a loan, such neglect of the agent does not affect the right of the father to have the slave considered as a loan. Consequently, if the father dies within five years from the time when the slave so went into possession of the son. and having by his will disposed of the slave* of which the administrator of the son has notice, the slave may be recovered for the father’s estate, after five years from the loan. Dickinson v. Dickinson, 2 Gratt. 493 (1846).
5. Donor and Donee.—Til Wilson v. Buchanan, 7 Gratt. 334, one Webb, who was largely indebted in proportion to his property, made a gift of slaves to his married daughter, and her husband remained in possession of them for eight years. .Judgment having been recovered on some of these debts, and also on other debts contracted since the gilt, Buchanan became the surety of Webb in the forthcoming bonds; and was" compelled to pay them. Afterwards he tecovered judgment against Wilson for the amount paid by him on behalf of Webb, and as all the property of Webb had been sold at that time, by the direction of Buchanan, his (Buchanan's) executions were levied on the slaves given by Webb to his daughter, and their increase. Suit iva» instituted by Wilson, the son-in-law, in whose possession the slaves had been, against Buchanan and the sheriff who made the levy. The court held that, the slaves were liable to satisfy the debts of Webb.
6. Assignor and Assignee.—The assignment of a promissory note carries with it all remedies of the assignor, including the right to attack a fraudulent conveyance. Billingsley v. Clelland, 41 W. Va. 234, 23 S. E. Rep. 812.
And, although an assignee of a bond which has been taken in payment of purchase money of land, may have notice of fraud in the sale of land, yet he cannot be placed in a worse condition than his assignor, the vendor, with reference to the payment of the purchase money. Highland v. Highland, 5 W. Va. 63.
B. THIRD PERSONS.
1. Creditors.
a. In General.--Any creditor who has been injured by a fraudulent deed has the right to the protection of the court; and the legal rights of .such creditors cannot be made to depend upon what any other creditor, or a majority of the creditors, may say or do with regard to the debtor’s property after the preferred creditors have been satisfied. Landeman v. Wilson, 29 W. Va. 702, 2 S. E. Rep. 203. And a. creditor at large may maintain a suit in equity to set aside as fraudulent a deed conveying real estate, made by his debtor, both the debtor and his grantee living and being out of the commonwealth. Peay v. Morrison, 10 Gratt. 149.
Moreover, if a deed of trust secures several creditors, and one or more of the debts secured is fictitious and fraudulent, that fact does not invalidate the deed as to bona fide creditors secured by it, not guilty of any fraud. Cohn v. Ward, 36 W. Va. 516, 15 S. E. Rep. 140.
But it should be observed, that a creditor cannot purchase the goods of his debtor at a price in excess of his debt, when he knows that the excess so paid such debtor is by the latter to be placed beyond the reach of his other creditors. Such purchaser is a participant in the fraud of his debtor, whether his purpose be to aid him or not. Hart v. Sandy, 39 W. Va. 644, 20 S. E. Rep. 665.
Yet the statute to prevent fraudulent conveyanees applies to no conveyance made bona fide for valuable consideration, and does not prevent a debtor in failing circumstances from preferring one class of creditors to another. However, in such case, the judgment creditor has a right to an account of the trust fund, and to the payment ol his debt out of the surplus, if any, after satisfying- the pre *176 ferred creditors and those who accede to the composition. Skipwith v. Cunningham, 8 Leigh 271.
And it is held in Trapnell v. Conklyn, 37 W. Va. 242, 16 S. E. Rep. 570, that the fact, that an insolvent husband voluntarily bestowing his labor and skill in the business of farming carried on by his wife upon land which is her separate property, will not, in the absence of fraud, render the products of the property of the husband liable for his debts. If such products, after the support of the family, leave a surplus in property attributable to his skill and labor, equity will make a just apportionment between his wife and creditors. But see W. Va. Code 1899, ch. 74, § 2; Va. Code 1887, § 2459. Also, ante, "Transfers Which Are Inoperative as to Certain Persons Though Not Affected with Fraud in Fact.”

l>. Bights and Liabilities of Creditors under Transfers Not Affected with Actual Fraud.

In General.—A voluntary conveyance which interferes with, or breaks in upon the rights of existing creditors, will not be permitted to take effect to the prejudice of their just demands, but as to such creditors is absolutely void, without regard to the amount of the debts, the extent of the property so conveyed, the motives that prompted the settlement, or the condition or circumstances of the party at the time. Lockhard v. Beckley, 10 W. Va. 87.
And if there is an absolute bill of sale of certain personal property for valuable consideration, and the vendor notwithstanding the deed retains uninterrupted possession, and dies in possession of the property, although the vendee takes possession after his death, a creditor of the vendor, who takes administration of the estate, may file a bill in equity against the vendee, and subject such property to the debt due to the administrator, as it is fraudulent and void as to the administrator, who is also a creditor of the vendor. The rights of the vendor’s creditors attach on the subject immediately upon the vendor’s death,—-therefore before the vendee came into possession. Shields v. Anderson, 3 Leigh 729. This case supposes that the bill of sale was not recorded.
So if a man incur debts for moneys advanced or loaned to him, which with large amounts of other moneys of his own, are voluntary and without consideration deemed valuable in law, used and invested by him in making valuable improvements upon the real estate so settled upon his wife, and in consequence thereof he becomes insolvent, and the moneys so advanced or loaned to him remain unpaid, such creditors may charge the moneys upon the real estate in the possession of his wife. Kan. Val. Bk. v. Wilson, 25 W. Va. 242.
And under Va. Code 1887, § 2459, so far as the means of an insured are withdrawn from creditors to pay premiums, they are entitled out of the proceeds of the policy to have the sums so paid, applied to their claims. Stigler v. Stigler, 77 Va. 163.
This principle is illustrated, though in its application to a different set of circumstances, in Rose v. Brown, 11 W. Va. 122. In this case a husband procured a voluntary conveyance to be made to his wife, of a house and lot. At the time the conveyance was made, he was not indebted more than $218. On that day there was paid on the property $1,500, which he had before given to his wife, and within the next two years he had $3,000, which from time to time, he paid on said property, and discharged the purchase money; and debts to the amountof about $1,250 had afterwards accumulated, after such conveyance and during the time such payments were being made. TJpon these facts being presented the court held that they were insufficient to make a prima facie case of fraudulent intent, on the part of the husband, at the time the voluntary conveyance was by him procured to be made, consequently, the conveyance was not fraudulent in fact. But, nevertheless, in fraud of his existing creditors, he did divert his means from the payment of his debts, and invest such means in the property, so voluntarily conveyed to his wife ; therefore his creditors could charge the real estate for the payment thereof.
Surrender by Grantee of a Deed of Gift—Effect on Creditors of Grantee.—And in Graysons v. Richards, 10 Leigh 57, the father by deed of gift conveyed land to his son, and shortly after this conveyance, the son voluntarily surrendered the deed to the father to be canceled, with design to divest the title out of himself and restore it to the father, to the deed so canceled. The court held, upon these facts, that the son’s title was not divested by the cancellation of the deed, and that the land was chargeable in equity with the debts of the son. And further, if the creditor had obtained a judgment against the son, subsequent to the cancellation of the deed, under which the son had taken the oath of insolvency, he was not only entitled to satisfaction of his judgment out of the land as still the property of the son, but he could also claim satisfaction out of it by the simple contract debt which the son owed him ; and other creditors of the son, who had not recovered judgments against him, but came in at the same time, should also be entertained to claim satisfaction of the debts due them out of the same amount.
Insolvent Father Pays Part of Purchase Money and Has Land Conveyed to Son—Rights of Father’s Cred - itors.—So in Burbridge v. Higgins, 6 Gratt. 119, aperson who was largely indebted, purchased land and paid a part of the purchase money, and had the land conveyed to his son ; subsequently the son conveyed it in trust to secure the balance of the purchase money. The son then sold the land to a third person at an advance upon the price given by the father. After this a decree creditor of the father filed a bill to set aside the conveyance as fraudulent against creditors ; and pending this suit the balance of the original purchase money was paid by the last purchaser out of the money due from him to the son. The court held that, the deed of trust given to secure the balance of the purchase money on the first sale, being still outstanding, though satisfied after the commencement of the suit, the plaintiff was entitled to have the whole of the purchase money, after satisfying the trust, and not a moiety only, applied to the discharge of his debt.

c. Bights and Liabilities of Creditors under Transfers Fraudulent in Fact.

In General.—Where a deed is fraudulent as to any provision therein contained, it is void in toto as against creditors who are entitled to take advantage of the fraud. Landeman v. Wilson, 29 W. Va. 702, 2 S. E. Rep. 203.
So where it is shown, that there was fraud in the making of the deed conveying real estate, whether the actual fraudulent intent relates to existing creditors or is directed exclusively against subsequent creditors, the effect is precisely the same, and subsequent as well as existing creditors may, for such’fraud successfully impeach said conveyance. *177 Silverman v. Greaser, 27 W. Va. 550; Lockhard v. Beckley, 10 W. Va. 88.
And a conveyance fraudulent as to existing creditors us fraudulent as to subsequent ones. Pratt v. Cox, 22 Gratt. 330; Johnson v. Wagner, 76 Va. 587; Lockhard v. Beckley, 10 W. Va. 101; Core v. Cunningham, 27 W. Va. 206.
Moreover, under a deed fraudulent on its face no valid act can be done to the prejudice of creditors not secured therein. Livesay v. Beard, 22 W. Va. 585.
Creditors’ Right to Personal Decree.—And creditors who successfully assail a fraudulent conveyance made by their debtor, are entitled to a personal decree against the fraudulent alienee, when the latter has, in the meanwhile, aliened the property to a third person. The amount of such personal decree is not limited to the price i^aid by the fraudulent alienee, nor to the price received by him in a subsequent alienation, but by the actual value of the debtor’s interest in the property, not to exceed, however, the amount of the plaintiffs’ claims against him.
And in such a case, if actual fraud has been established against the alienee, he will not be permitted to set off against the value of the debtor's property received by him, a debt due to him by the debtor, even though such debt was a part of the consideration for the conveyance. Ellington v. Moore (Va. 1897), 4 Va. Law Reg. 608.
Property Conveyed on Secret Trust—Rights of Grantor’s Creditors.—So where a vendor makes a fraudulent bill of sale of a female slave, absolute on its face, in order to protect the property from his creditors, but there is a secret trust that the grantee shall hold the property for the benefit of grantor’s daughters, the daughters cannot establish a secret trust in equity, and have the decree for the slave as against the creditors of the grantor. Owen v. Sharp, 12 Leigh 439.
d. Oompromises by ÜreáMors.—Under the Va. Code of 1887, §§ 2856, 2857, and 2859, regarding compromises by creditors, a creditor who compromises with one of several joint obligors, and assigns his full share of the obligation, may sue the other obligors without making the released obligor a party. And by such compromise the right of contribution between the joint obligors is not, under these sections, impaired. Penn v. Bahnson, 89 Va. 253, 15 S. E. Rep. 586.
Right to Uphold Validity of Some Debts and Assail Others.—And a creditor secured by a deed of trust, while claiming under the deed, may, nevertheless, assail the validity of other debts secured in the same deed. His attitude as purchaser does not impair his right as creditor to assail such debts as fraudulent or otherwise void. Runkle v. Runkle (Va. 1900), 6 Va. Law Reg. 613.
2. State.—The state has the same right as one of its citizens to maintain a suit in equity to set aside a fraudulent conveyance, and subject the land of the defendant to its demands. Thus, the state can maintain a suit to set aside a fraudulent conveyance and subject the land of the defendant to the payment of a judgment for a fine recovered against the defendant for the unlawful sale of spirituous and other liquors. State v. Burkeholder, 30 W. Va. 593, 5 S. E. Rep. 439.
3. Subsequent Purchasers.—A purchaser with notice, who buys of a purchaser without notice, will not be affected by a deed which declares the transfer of certain chatteli>roperty tobe a loan, but which is invalid as to a purchaser without notice, from the loanee, because not recorded as required bylaw. Lacy v. Wilson, 4 Munf. 313.
So if a purchaser with notice, buys from a bona fide purchaser for value, and without notice from a trustee who makes a tortious sale, he will take a valid title. This is done out of respect for the title of the bona fide purchaser, who otherwise would not receive the protection which his position entitles him to. Montgomery v. Rose, 1 P. & H. 5.
And as held in Coleman v. Cocke, 6 Rand. 618, although if a son obtain a conveyance for land purchased by his father, the conveyance may be set aside for fraud by a creditor of the father, whilst the land is in the hands of the son; yet, if the son sell and convey the land to a third person for valuable consideration, who has no notice of the fraud, between the father and the son, such third person being a bona fide purchaser, he will be protected in his purchase against the creditors of the father, from the operation of the statute of frauds, by its proviso (Code 1887, § 2458). And ii the deed of such bona fide purchaser be not duly recorded, yet he will be protected in his purchase against a creditor of the father, who obtains a decree against the father, after the bona fide purchase so made, because such a purchaser has a prior equity to such creditor. For, if the original vendor had never made a deed to the son, yet the purchaser, holding the equitable title transferred from the father to the son, and from the son to him, would have had a better right to call on the original vendor for the conveyance of the legal title, than any creditor of the father obtaining a judgment against him, after his transfer of the equitable right to the son.
IV. REMEDIES.
A. IN GENERAL.—Where a debtor makes divers fraudulent conveyances to different grantees, all colluding with him to defraud his creditors, the latter may proceed, by a single creditor’s bill to assail them, or any one or more, of such conveyances; and, as there is no contribution among tortfeasors, the fraudulent alienees who are made parties cannot complain that others in the same category are omitted. Ellington v. Moore, 4 Va. Law Reg. 608 (Va. 1897).
And in Commonwealth v. Ricks, 1 Gratt. 416, it is held, that a court of equity will, at the suit of a creditor of an insolvent debtor, pursue property, the avails of his labor, in the hands of parties united with him, to screen the same from his creditors, or in the hands of voluntary purchasers from such i)arties.
But a court of equity, upon the application of the grantor, will not interfere to set aside a conveyance made to hinder, delay and defraud creditors, on the ground of the natural weakness of mind, increased by habits of intoxication, of the grantor, if he had legal capacity to contract, unless it is shown that some advantage was taken, or undue influence exerted, to procure the conveyance. Smith v. Elliott, 1 P. & H. 307.
B. EQUITY JURISDICTION.
1. In General..—In cases of actual fraud, a court of equity has concurrent jurisdiction with a court of law, in remedying the fraud. And equity usually follows the law, and gives relief to the same extent as a court of law. And therefore, where a creditor comes into equity to set aside a conveyance tainted with actual fraud, and the grantee has notice of the *178 fraud, the conveyance should be set aside in toto. Garland v. Rives, 4 Rand. 282.
Thus, where an eleait is levied on land of the debtor, but the inquisition does not set out the moiety by metes and bounds, and possession is not delivered to the creditor; and the debtor makes a conveyance of the land to third persons; and after-wards the eleait and return are quashed, on the motion of the creditor, who then files a bill impeaching the conveyance as fraudulent, a court of equity has jurisdiction to entertain the suit. Claiborne v. Gross, 7 Leigh 331.
But in a bill in chancery, against a debtor, as an absent debtor or defendant, and other defendants resident, holding lands by voluntary or fraudulent conveyances from the debtor, to have a decree against the debtor for the debt, and against the home defendants to subject the lands to the debt, the bill, in order to give the court jurisdiction, under the statute concerning attachments and suits against absent defendants, 1 Rev. Code, ch. 123, must distinctly aver the nonresidence of the debtor; and, if the home defendants in their answers say that the debtor is a resident, though they do not plead that matter in abatement to the jurisdiction, the plaintiff, to sustain the jurisdiction, must prom the fact of the debtor’s residence abroad; and if his nonresidence be not distinctly averred in the bill, or if so, denied by the home defendants, be not proved, the court has no jurisdiction, and a decree for the plaintiff will be reversed on that ground. Kelso v. Blackburn, 3 Leigh 299.
Likewise, to give a court in which a homestead deed, claiming goods as exempt, is attacked as in fraud of creditors, jurisdiction over the goods, there must be a valid attachment thereof, and the attachment being dismissed, the suit should also be dismissed. Simon v. Ellison (Va.), 22 S. E. Rep. 860.
Nevertheless, in a case where a court of equity has jurisdiction of the subject-matter of the suit, whatever may be the nature or amount of the demand, the parties thereto are not entitled to a trial by a jury, exceptwhere the same is prescribed by law. Broderick v. Broderick, 28 W. Va. 378.
It should be noted, however, that a transfer from one joint debtor to another will not give equity jurisdiction to entertain a suit by the creditor of the grantor, in advance of lien by judgment or otherwise. to subject the property to his debt. Such conveyance does not come within the operation of the statute (W. Va. Code 1891, § 2, ch. 133) relating to fraudulent conveyances. The mere statement in the bill that the conveyance was from one joint debtor to the other would seem to repel any imputation of fraudulent intent, and make the bill demurrable. Moreover, the deed does not remove the property out of the reach of the usual remedy. So there is no ground for chancery jurisdiction.
So where a grantee in a fraudulent conveyance has reconveyed theproperty to the debtor (grantor), a court of equity has no jurisdiction of a suit by the creditor to subject the property, in advance of a lien by judgment or otherwise, merely because of such fraudulent conveyance. Guggenheimer v. Lockridge, 39 W. Va. 457, 19 S. E. Rep. 874; Witz v. Lockridge, 39 W. Va. 463, 19 S. E. Rep. 876.
2. Statute or Limitations as a Bar to Instituting Suit.
a. Voluntary Oonveyances.—'The limitation of a suit to avoid an absolute conveyance on the sole grouhd that it is voluntary is five years from the time "the right to avoid it accrued” (Va. Code 1887, § 2929). The provision as it originally appeared in Va. Code 1849, ch. 149, § 13, and as it now appears in W. Va. Code 1899, ch. 104, § 14, reads, “five years from the making of the deed, ” etc.; and in Reynolds v. Gawthrop, 37 W. Va. 3, 16 S. E. Rep. 364, the court so construes it, declaring that the .period of limitation begins to run from "the making” of the deed. Humphrey v. Spencer, 36 W. Va. 11, 14 S. E. Rep. 410; McCue v. McCue, 41 W. Va. 151, 23 S. E. Rep. 689; Scraggs v. Hill, 43 W. Va. 162, 27 S. E. Rep. 310. In Bickle v. Chrisman, 76 Va. 687, the point was made by the plaintiff, that “the limitation did not begin to run, until there was a right of action.” The court declared that this was undoubtedly correct with respect to almost all of our statutes of limitation, but under the provision as contained in Va. Code 1873, ch. 146, § 16 (identical with § 13, ch. 149, Va. Code 1849), the statute began to run 'from the date of the execution of the deed," and not, as usual under our statutes, from the time the right of action accrued. This distinction is also made in Welsh v. Solenberger, 85 Va. 445, 8 S. E. Rep. 91, decided in 1888, shortly after the Code of 1887 took effect. The change as contained in the Code of 1887, providing that the statute should begin to run from the accrual of the right of action, was evidently made for the purpose of relieving creditors against the hardships of the former law. If such was the intention, it was accomplished to an extent, yet the law as it thus stood was not wholly satisfactory, as no right of action would accrue, until there was a right to recover on the claim, which might not mature for years after the making of the conveyance. This inconvenience was overcome, and remedied, by Acts 1893-94, ch. 566, pp. 614, 615, amending and re-enacting § 2460 of the Code, and providing that “a creditor, before obtaining a j udgment or decree for his claim, may, whether such claim be due andpayable or not, institute suit to avoid the gif t, conveyance,” etc. The above is substantially the opinion as expressed in an editorial by Judge Burks, 1 Va. Law Reg. 597, before the construction of the amendment by the Virginia Court of Appeals. The learned jurist concludes as follows, “that, under the law as it now stands, inasmuch as a creditor may institute and prosecute a suit to avoid a conveyance at any time before his’ claim has ‘become due and payable,’ the five years prescribed by section 2929 must be computed from the time his right accrued to avoid the conveyance under section 2460 as amended by the Act of 1894, though his claim be not due and payable.” Therefore the statute would begin to run from the time the voluntary conveyance is made, no question of fraudulent concealment being brought into the case. The above conclusion is reached in Vashon v. Barrett (Va. 1901), 7 Va. Law Reg. 36.
But by the terms of § 2467 of the Va. Code 1878. prior to the late amendment (Acts 1895-96, p. 295, prescribing “ten” instead of “twenty” days), if the conveyance is recorded days due acknowledgment, it is as valid against creditors, as if recorded on the day of acknowledgment. And the act of limitation to suits to avoid voluntary con. veyances does not cease to run simply no settlement has been had between parties, and the exact amount due has not been ascertained. So the mere fact that a creditor does not know that the conveyance made by his debtor is without consideration, does not stop the running of the statute of limitations. To have that effect such ignorance must proceed the of the grantee, and this should be plainly charged. The burden of proving *179 that the transfer, alleged tobe voluntary, was made more than live years before the institution of the suit to have it set aside, is on the party pleading the statute. Vashon v. Barrett (Va. 1901), 7 Va. Law Reg. 36. And the limitation applies to a marriage settlement also, attacked upon the ground of its being voluntary. McCue v. Harris, 86 Va. 687, 10 S. E. Rep. 981. See, in general connection, Snoddy v. Haskins, 12 Gratt. 363; Williams v. Blakey, 76 Va. 254.
b. Effect When Fraud Is an Element.— Under the Va. Code 1887, § 2929. limiting the period in which suits may be brought to set aside conveyances or transfers of property, on consideration not deemed valuable in law, cases of actual fraud are not included. Snoddy v. Haskins, 12 Gratt. 363; Hutchinson v. Boltz, 35 W. Va. 754, 14 S. E. Rep. 268. This for the reason that such conveyance does not come within the' purview of any statutory provision now in force. Of course, the right to institute such a suit can be lose in equity by remissness and delay in its assertion. It is true that delay in assertion of a right is always discountenanced in a court of chancery; that it does not encourage stale claims, and that a party may lose his right to complain of the fraud by delay, especially where the delay is accompanied by the loss of evidence or the death of parties, or such conditions exist as to render the court unable to pass upon the questions involved without serious risk of doing injustice. As a general rule though, in the application of statutes of limitation, equity follows the law. and wherever a demand would be barred at law, an equitable demand of the like character would be barred in equity. The bar is applied by analogy. In the cases of fraud the authorities are conflicting, as to whether at law the statute begins to run from the commission of fraud or from its discovery. It seems, however, without controversy, to be the settled doctrine in courts of equity, that the statute begins to run only from the discovery of fraud. This seems to be founded on the rule in courts of equity, that the cause of action arises as soon as a party has a right to apply to the court of equity for relief, and such right arises only when the party has actual knowledge of the fraud, or when with due diligence such knowledge could be obtained. Howe v. Bentley, 29 Gratt. 756; Shields v. Anderson, 3 Leigh 729; Massie v. Heiskell, 80 Va. 801; Cresap v. McLean, 5 Leigh 381; Bumgardner v. Harris, 92 Va. 188; 23 S. E. Rep. 229; Reynolds v. Gawthrop, 37 W. Va. 3, 16 S. E. Rep. 364. See also, McCarty v. Ball, 82 Va. 872, 1 S. E. Rep. 189; Hutcheson v. Grubbs, 80 Va. 251; Ayre v. Burke, 82 Va. 341; Switzer v. Noffsinger, 82 Va. 523; Cottrell v. Watkins, 89 Va. 810, 17 S. E. Rep. 328; Coles v. Ballard, 78 Va. 149.
3. Specxbtc Lien as a Condition Piíeob;i;>ent to the Institution of Suit.- Prior to the Code of 1849, it was held that a creditor at large could not have the aid of a court of equity to prevent, or interfere with, in any way, the disposition which his debtor might make of his property, unless such creditor had first proceeded as far as he could at law. To subject real estate, he must have obtained a judgment at law ; and to subject personal estate, he must have obtained a judgment and execution. This was held to apply to creditors attacking a voluntary conveyance as fraudulent, on the ground of its being fraudulent and void as to themselves; likewise as to those attacking conveyance as fraudulent in fact. Chamberlayne v. Temple, 2 Rand. 384 (1824); Rhodes v. Cousins, 6 Rand. 187 (1828); Cole v. M’Rae, 6 Rand. 644 (1828); Tate v. Liggat, 2 Leigh 84 (1830): Kelso v. Blackburn, 3 Leigh 299 (1831); McCullough v. Sommerville, 8 Leigh 415 (1836). The provision as contained in the Va. Code of 3849 was, that the creditor before obtaining a judgment or decree for his claim, could institute any suit which he might institute after obtaining such judgment or decree to avoid a gift, conveyance, etc., declared void by the statutes (Va. Code 1887, §§ 2458, 2459). See W. Va. Code of 1899, ch. 133, sec. 20; Wallace v. Treakle, 27 Gratt. 479; Keagy v. Trout, 85 Va. 397, 7 S. E. Rep. 329; Batchelder v. White, 80 Va. 106; Hoffman v. Fleming, 43 W. Va. 762, 28 S. E. Rep. 790; Tuft v. Pickering, 28 W. Va. 330; Watkins v. Wortman, 19 W. Va. 78. See also, Guggenheimer v. Lockridge, 39 W. Va. 457, 19 S. E. Rep. 875; Baer v. Wilkinson, 35 W. Va. 423, 14 S. E. Rep. 3; Reynolds v. Gawthrop, 37 W. Va. 4, 16 S. E. Rep. 365; Clafflin v. Foley, 22 W. Va. 443; Jackson v. Hull, 21 W. Va. 613; Clark v. Figgins, 31 W. Va. 159, 5 S. E. Rep. 645; Sweeney v. Grape Sugar Co., 30 W. Va. 456, 4 S. E. Rep. 438. Thus the old rule, that acreditor must pursue his remedy to its furthest extent at law before a court of equity would entertain jurisdiction to grant him relief, has been abrogated by the statute above alluded to. and supported by the cases construing the statute. However, under the provision as iirst contained in the Code of 1849. the question, whether a creditor, whose claim was not due, came within the purview of the statute, was controverted and long unsettled. In Devries v. Johnston, 27 Gratt. 805. the court divided equally upon this question, viz.: whether a creditor could maintain a suit to avoid a fraudulent convey ance by his debtor before the maturity of his debt, under this provision (now contained in the Va. Code 1887, § 2460). Four judges only were sitting at the time. Afterwards, in Batchelder v. White, 80 Va. 103, it was held that a creditor could not bring, such suit before the maturity of his claim-but in this latter case no notice whatever was taken of the decision in Devries v. Johnston, 27 Gratt. 805. See however, Simon v. Ellison (Va. 1895), 22 S. E. Rep. 860, sustaining this principle. But under the Acts of 1893-91, p. 614, Pollard’s Supp. (1900). § 2460, the question is now settled, as follows, viz.: that whether such claim be due and payable or not. the. creditor may institute a suit to avoid the transfer or charge. The West Virginia statute, though, does not contain this clause providing for suit when the debt is not due. See Acts 1889-90, p. 73; Davis v. Bonney, 89 Va. 758, 17 S. E. Rep. 229; 1 Va. Law Reg. 294; Barton's Ch. Pr. (2d Ed.), vol. 2, p. 543 et seq.
Moreover, a foreign judgment is a debt; and a suit in equity can be maintained on it to avoid a fraudulent or voluntary conveyance without first obtaining a judgment at law in this state, under § 2, ch. 133, Code W. Va. 1868. Watkins v. Wortman, 19 W. Va. 78.
But as further held, in Guggenheimer v. Lockridge, 39 W. Va. 457, 19 S. E. Rep. 874, a transfer from one joint debtor to another will not give equity jurisdiction to entertain a suit by that creditor of the grantor, in advance of lien by judgment or otherwise, to subject the property to his debt. Witz v. Lockridge, 39 W. Va. 463, 19 S. E. Rep. 876.
C. PARTIES.—In a bill brought by judgment creditors to set aside as fraudulent certain deeds, the plaintiff should make formal parties to his suit, either as plaintiffs or defendants, those who have obtained judgments in the courts of record in the county in which the lands of the debtor are situated, which are sought to be subjected to the payment of the judgments, and also all creditors who have *180 obtained judgments in courts of record, or before justices in any part of the state, and have had them recorded in the judgment lien docket of the county. Because if in such a suit all the j udgment creditors are not made parties, either formally or informally, and this fact is disclosed by the record, the appellate court will reverse any decree directing the sale of .the lands or the distribution of the proceeds thereof. Pappenheimer v. Roberts, 24 W. Va. 702; Neely v. Jones, 16 W. Va. 625.
For instance in a creditors’ bill to annul deeds made by a debtor, on the ground of fraud, alleging that the debtor was thereafter adjudged a bankrupt, and had never obtained a discharge, the assignee in bankruptcy is a necessary party. Tabb v. Hughes (Va.), 3 S. E. Rep. 148 (1887).
So in a suit to annul a bond and trust deed as fraudulent, it appearing that the same had been assigned to the grantor’s wife, the court, before decreeing on the merits, should require her to be made a party, and the failure to do so is reversible error, though the point was not made in the lower court. Thornton v. Gaar, 87 Va. 315, 12 S. E. Rep. 753.
And where there is a bill to set aside fraudulent conveyances made by an insolvent debtor, the trustees and cestuis que trust in the deeds, the sheriff of the counties in which the lands lie, and the execution creditors interested in the property, should he made parties. Clough v. Thompson, 7 Gratt. 26 (1850).
Likewise, where there is a suit brought by a judgment creditor to set aside as fraudulent and void certain deeds alleged to have been made by the j udgment debtor with intent to hinder, delay and defraud the plaintiff in the collection of his debt, in order to charge the lands thereby conveyed with the payment of his judgment, the alleged fraudulent alienees are necessary parties to the suit, although they may have conveyed all lands granted to them, respectively, to other persons who are defendants in the suit. Pappenheimer v. Roberts, 24 W. Va. 702.
But in a suit by creditors of a husband to subject property which he has voluntarily conveyed away to the payment of their debts, the grantee of the husband is not a necessary party; because the conveyance, notwithstanding it may be void as to creditors, will be, nevertheless, valid between the parties to it. Herzog v. Weiler, 24 W. Va. 199.
However, if a deed of trust purports to indemnify one of the parties, as to whom the deed is charged to be fraudulent, as surety of the grantor for certain debts due to specified creditors, these creditors, as well as those secured directly, and whose debts are not assathed by the bill, are necessary parties. Billups v. Sears, 5 Gratt. 31.
And in Almond v. Wilson, 75 Va. 613, it is held that, any number of alienees may be made parties defendant to a suit to set aside conveyances on the ground of fraud, although, as between the alienees themselves, no charge of combination or confederacy is made.
It must be observed, moreover, that if the want of proper parties appears on the face of the bill, such omission will be 'demurrable, and the defect may be taken advantage of by demurrer, or at the hearing of the cause. But where a demurrer for such cause is sustained, the plaintiff should have leave to amend his bill. Pappenheimer v. Roberts, 24 W. Va. 702.
D. PLEADING AND PRACTICE.
1. 1st General.
Filing Judgment and Execution.—In McNew v. Smith, 5 Gratt. 84, the court declared that, in a suit by a judgment creditor to set aside fraudulent conveyances of property by his debtor, the judgment and execution being admitted by the pleadings, the failure to file copies of them in the cause, is not ground for reversal of the decree of the court below, setting aside the conveyances; especially if no obj ection was taken in that court to the failure to file them.
Consolidating Causes.—Where creditors by several judgments file separate bills in chancery, impeaching a conveyance of land by a debtor, as fraudulent; an order of consolidation of the causes by the chancellor on motion of one of the plaintiffs, is improper. Claiborne v. Gross, 7 Leigh 331.
2. Bill, Complaint or Petition.

a. In Oenei-al.

When the Aid of a Court of Equity Should Be Refused. —A court of equity ought not to give its aid to a plaintiff claiming under a deed of gift from a person who made a previous transfer of the same property to another for the purpose of defrauding creditors; the object of the bill being to enforce a secret trust between such transferrer and transferee. Roane v. Vidal, 4 Munf. 187.
What Constitutes the Point in Litigation.—And when a bill is against fraudulent alienees, the matter in litigation is a fraud charged in the management and disposition of the debtor’s property, in which charge ail the defendants are interested, though in different degrees and proportions. Almond v. Wilson, 75 Va. 613.
Issuance of Execution, and Return Had, Not Conditions Precedent to Sustaining a Bill.—In State v. Bowen, 38 W. Va. 91, 18 S. E. Rep. 375, Judge English declares that, where a bill Is filed by the state to set aside a fraudulent conveyance made by its judgment debtor, and to subject land in the hands of a fraudulent grantee to the payment of its judgment, It is not necessary that an execution should have issued on the judgment, and that a return of nulla bona should be had, before such bill can be sustained. Nor is it necessary to convene the creditors of such judgment debtor, or to allege and show that the rents, issues, and profits of the land sought to be subjected will not pay the debt in five years.
Circumstances Making Proper a Dismissal of the Bill.—And where the evidence shows that a creditor was without means to have loaned money, which was claimed to be due, and was, previous to the suit, living adulterously with the pretended debtor, and that the claim and suit was a collusive scheme between the husband and the pretended creditor, to defraud the wife of the pretended debtor out of property, it will be proper to dismiss the bill. Waller v. Johnson, 82 Va. 966, 7 S. E. Rep. 382.
Filing of Petition by Creditor.—A creditor may file his petition in a cause pending, which has for its object the vacation of a fraudulent conveyance, and, upon proper allegations, be made a party to the suit, and the bill, exhibits, answers, depositions, orders, and decrees, and all the proceedings in said cause, may, upon proper prayer, be read as part of his petition. Richardson v. Ralphsnyder, 40 W. Va. 15, 20 S. E. Rep. 854.
Thus, as held in Pappenheimer v. Roberts, 24 W. Va. 702, in a suit brought by judgment creditors to set aside a conveyance on the ground of fraud, any judgment creditor, who has not been made a party. *181 formally or informally, and who has an unsatisfied judgment against the debtor, which was recovered before the suit was brought, may at any time before a final decree file his petition in the cause .setting up his judgment and praying to be made a party to the suit, and to have his rights under his judgment adjudicated: and if this right be denied him, it will be error for which the decree of the lower court, denying such right, will be reversed in the court of appeals.
b. When a Bill Is Not Multifarious.—'Wto.trQ a bill in equity is brought to subject to the lien of the plaintiff’s judgment his debtor’s estate alleged to have been fraudulently conveyed to various persons, who are charged with having combined and colluded with the debtor to defraud the plaintiff, and who are all made parties, the bill is not multifarious. Com. v. Drake, 81 Va. 305.
So if a bill in equity is brought to subject to the lien of a plaintiff’s judgment his debtor’s estate, which is alleged to have been fraudulently conveyed to various persons, all of whom are made defendants; but there is no charge of combination or confederacy among the alienees, the bill is not multifarious for this cause. Almond v. Wilson, 75 Va. 613.

c. Allegations and Aserinents Afecessaryto Sustain Bill.

Nonresidence.—In a bill in chancery, against a debtor as an absent debtor or defendant, and other defendants resident, holding lands by voluntary or fraudulent conveyances from the debtor, to have a decree against the debtor for the debt, and against the home defendants to subject the lands to the debt, thebill,inorderto give the court jurisdiction, under the statute concerning attachments and suits against absent defendants (1 Rev. Code. ch. 123). must distinctly aver the nonresidence of the debtor: and, if the home defendants in their answers say that the debtor is a resident, though they do not plead that matter in abatement to the jurisdiction, the plaintiff, to sustain the j urisdiction, must prove the fact of the debtor’s residence abroad; and if his nonresidence be not distinctly averred in the bill, or, if so denied by the home defendants, be not proved, the court has no jurisdiction, and a decree for the plaintiff will be reversed on that ground. Kelso v. Blackburn, 3 Leigh 299.
Fraud.—it is not sufficient to make a general charge of fraud in a bill. In addition to the general charge, the facts constituting the fraud, though not what is merely evidence, must be given. Saunders v. Parrish, 86 Va. 592, 10 S. E. Rep. 748; Zell Guano Co. v. Heatherly, 38 W. Va. 409, 18 S. E. Rep. 611; First Nat. Bank v. Bowman, 36 W. Va. 649, 14 S. E. Rep. 989; Greer v. O’Brien, 36 W. Va. 277, 15 S. E. Rep. 74; Arnold v. Slaughter, 36 W. Va. 589, 15 S. E. Rep. 250.
Generally fraud should be charged by setting forth the particular manner in which the act was done, and the end and design to be accomplished. If these show that fraud was designed and perpetrated it is not necessary to aver the legal conclusion that they constitute fraud. But the charge that a deed was made with intent to hinder, delay, and defraud creditors is not the mere statement of a legal conclusion, but a charge of a material fact. American Net & Twine Co. v. Mayo, 97 Va. 182, 33 S. E. Rep. 523.
Thus, to overthrow the title of a purchaser on the grounds of fraud, it is necessary to allege in the bill that the grantor committed the act fraudulently to defraud creditors; and the facts must be given; and, moreover, it must be alleged that the purchaser fraudulently conspired with him. or had notice of the grantor’s fraudulentintent, or had notice of the fraud rendering the grantor’s title void. Vance Shoe Co. v. Haught, 41 W. Va. 275, 23 S. E. Rep. 553.
But the privity of a grantee in the fraud of his grantor is sufficiently charged by charging that the deed was made not only without any consideration deemed valuable in law, but with intent to hinder, delay, and defraud the creditors of the grantor, ft is not necessary to charge expressly that the grantee had notice of the fraud intended by the grantor. American Net & Twine Co. v. Mayo, 97 Va. 182, 33 S. E. Rep. 523.
Moreover, where a bill to set aside conveyances contains positive and specific allegations of fraud, such allegations are taken as true on the bill being taken as confessed. Welsh v. Solenberger, 85 Va. 441, 8 S. E. Rep. 91; Price v. Thrash, 30 Gratt. 515.
When Allegations Sufficient to Give Jurisdiction. In Watkins v. Wortman, 19 W. Va. 78, a creditor filed a bill in chancery against a debtor and his wife and others alleging a recovery by him of a judgment in another state against the debtor : that execution issued thereon and was returned unsatisfied; that the debtor had removed to the state of West Virginia in which the court had jurisdiction, and purchased two tracts of land and paid for them; that one of the tracts he had caused to be conveyed to his wife with intent to defraud his creditors ; that the other tract had been conveyed to one of the other parties defendant; that whether this was accidently so done, it was equally fraudulent as to creditors ; that there was no personal property, out of which the debt was to be made ; that unless both tracts of land were subjected to the payment of his debt, the debt would be lost. The defendants demurred to this bill. And the demurrer was overruled by the lower court, and the court of appeals sustained the judgment overruling such demurrer.
And it was further held that, whether the allegation of the bill as to the second contract of land was sufficient or not, yet as the allegation to the first contract was sufficient to give the court of equity jurisdiction, it was proper to include any other property of the debtor, so that it could be first made liable in protection of the alleged voluntary or fraudulent vendee.
d. Right to Sue.—See ante, ‘'Rights and Liabilities.”
One party guilty of fraud in a transaction can have no relief in equity against another person, though equally guilty of fraud in the same. Stout v. Philippi Manuf., etc., Co., 41 W. Va. 339, 23 S. E. Rep. 571.
And in Roberts v. Kelly, 2 P. & H. 396, it was held that an agreement, between a debtor and his surety in a forthcoming bond, to the effect that the .surety should purchase slaves of the debtor, ata sale under an execution on a judgment on the bond, for the amount of the debt, which was greatly less than the value of the slaves, and, holding the legal title, permit the slaves to remain in the possession of the debtor, with liberty to redeem them, upon paying the amount advanced with interest within five years, when there is no intention to defraud creditors, is valid and would be enforced in a court of equity, bv permitting the debtor to redeem on paying the amount advanced with interest.
3. Plea, Answer and Subsequent Pleadings. - Where a bill seeks to set aside a deed of conveyance as voluntary and fraudulent, and the grantee, in his answer, denies any knowledge of fraud in the *182 transaction, in the absence of any replication to the answer.'such allegation will be taken to be true. Bierne v. Ray, 37 W. Va. 571, 16 S. E. Rep. 804.
And if a bill charges a postnuptial settlement to be voluntary, the answer does not shift the burden, and is not evidence for the respondents, but the offense must be proved. Perry v. Ruby, 81 Va. 317; Hatcher v. Crews, 78 Va. 460.
Where, however, in a bill to set aside as fraudulent certain deeds, the want of proper parties appears on the face of the bill, such omission will be demurrable, and the defect may be taken advantage of by demurrer or at the hearing. But if the deniürrér for such cause is sustained, the plaintiff should have leave to amend his bill. Pappenheimer v. Roberts, 24 W. Va. 702.
4. Variance.—Though it is true that the case stated in a bill in equity must be sustained by the evidence, this rule will not forbid relief to the plaintiff where the case proved does not materially vary from the case stated; as where two deeds are charged to be without consideration, and intended to delay and hinder the plaintiff, and the proof is that the second being a deed to a trustee for the separate use of the debtor’s wife, was without valuable consideration, the decree should be for the plairitiff. Campbell v. Bowles, 30 Gratt. 652.
*E. EVIDENCE.
1. Presumption and Burden of Prooe.

a. In General.

Presumptions. — The maxim, “Fraud must be proven and is never tobe presumed,”is true only when understood as affirming that the contract or conduct' apparently honest and lawful must be regarded as such, until shown to be otherwise by evidence, either positive or circumstantial; but fraud may be inferred from facts calculated to establish it; and fraud should be so inferred when the facts and circumstances are such as to lead a reasonable man to the conclusion that the property of a debtor has been attempted to be withdrawn from the reach of his creditors, with the intent to prevent them from recovering their just debts; and if 'prima facie such fraudulent intent be thus established, . it must be regarded as conclusively established, unless it is rebutted by facts and circumstances which are proven. Burt v. Timmons, 29 W. Va. 441, 2 S. E. Rep. 780; Bronson v. Vaughan, 44 W. Va. 406, 29 S. E. Rep. 1022; Sipe v. Earman, 26 Gratt. 563; Herring v. Wickham, 29 Gratt. 628; Keagy v. Trout, 85 Va. 390, 7 S. E. Rep. 329. And as held in Stonebraker v. Hicks, 94 Va. 618 27 S. E. Rep. 497. in the absence of fraud apparent on the face of the deed, or necessarily inferred from its terms, fraud will not be presumed, but must be proved with clearness and certainty.
Thus, the provisions of a mortgage or deed of trust may be of such a character as of themselves to furnish conclusive evidence of a fraudulent intent; but the presumption of law is in favor of honesty, and the court cannot presume fraud unless the terms of the instrument preclude any other inference. Williams v. Lord, 75 Va. 390.
And fraud cannot be presumed in an action to set aside a marriage settlement, but must be proved by clear and satisfactory evidence to have been con'curred in by both parties. And this is so, irrespective of the amount of the husband’s indebtedness, and even though his whole estate is included in the settlement. Noble v. Davies, 4 S. E. Rep. 206 (Va. 1887).
Onus Probandi.—The onus probandl is on him who alleges fraud, and if the fraud is not strictly and clearly proved as it is alleged, relief cannot be granted, although the party against whom relief is sought may not have been perfectly clear in his dealings. Harden v. Wagner, 22 W. Va. 356; Pusey v. Gardner, 21 W. Va. 469; Scott v. Rowland, 82 Va. 484, 4 S. E. Rep. 595; Fischer v. Lee, 98 Va. 159, 35 S. E. Rep. 441.
But while fraud must be clearly proved and the burden of proof rests on him who alleges it, it may be proved by circumstances, and when the evidence shows a prima facie case of fraud, the burden shifts to the upholder of the transaction to establish its fairness. Herring v. Wickham, 29 Gratt. 628; Hickman v. Trout, 83 Va. 478, 3 S. E. Rep. 131; Engleby v. Harvey, 93 Va. 445, 25 S. E. Rep. 225; Sutherlin v. March, 75 Va. 236; White v. Perry, 14 W. Va. 86; Martin v. Smith, 25 W. Va. 589; Boggess v. Richards, 39 W. Va. 567, 20 S. E. Rep. 599; Paul v. Baugh, 85 Va. 955, 9 S. E. Rep. 329; American N. & T. Co. v. Mayo, 97 Va. 182, 33 S. E. Rep. 523.
But where a subsequent creditor of a grantor assails, in a chancery suit, a deed made by the grantor as voluntary and fraudulent, the recitals in the deed that the grantee had paid the grantor a valuable consideration is not evidence against the creditor of such payment; and the burden of proving that a valuable consideration was paid by the grantee to the grantor is upon the grantee, but the burden of proving that the deed was fraudulent in fact is upon the creditor. Rogers v. Verlander, 30 W. Va. 619, 5 S. B. Rep. 847.
Moreover, the onus is on the creditor to show that his debt was contracted before the deed was recorded, in order to render the property liable therefor. Scott v. Jones, 76 Va. 233.
6. As Affected by Consideration.—It is well settled that the consideration named in a deed may be enquired into. Summers v. Darne, 31 Gratt. 804. But he who undertakes to show a different consideration, must do it by satisfactory proof. Click v. Green, 77 Va. 827. And when the consideration is inquired into, and it is shown that the conveyance is founded upon a valuable consideration, the burden of proving that the deed is fraudulent in fact, rests upon the creditor assailing it. Cohn v. Ward, 32 W. Va. 34, 9 S. E. Rep. 41.
But where a creditor flies a bill to set aside as fraudulent a deed executed by his debtor which recites the payment of a valuable consideration, and such creditor’s debts are older than the deed, the burden is on the grantee to prove the payment of the purchase money, or, if the deed was executed in payment of existing debts, to prove the existence and validity of such debts. Knight v. G. & C. Capito, 23 W. Va. 639.
Moreover, when such conveyance is made in consideration of a pre-existing indebtedness, it is a badge of fraud for the grantee to retain the evidence of such indebtedness in his possession uncanceled, after the conveyance has been completed. Webb v. Ingham, 29 W. Va. 389, 1 S. E. Rep. 816.
However, mere inadequacy of consideration in the absence of fraud will not invalidate a conveyance. Tebbs v. Lee, 76 Va. 744.
But it must be observed, that board and lodging and the keep of a horse do not, as between husband and wife, parent and child, and other near relatives constitute a consideration from which the law will imply a promise of payment, and no action can be maintained therefor in the absence of an express contract or engagement to pay for them. Nor can *183 An express promise to pay, made after the supplies have been furnished or the services rendered, be enforced against the promisor to the prejudice of bis creditors. Stoneburner v. Motley, 95 Va. 784, 30 S. E. Rep. 364.
<\ As Attested by Possession.—The vendor’s continuing in possession of goods and chattels after an absolute sale raises a legal presumption that the sale is fraudulent as to creditors of the vendor, which throws upon the vendee, imperatively, the burden of proving the fairness and good faith of the transaction; and this cannot be done without sufficient evidence that the sale was for a fair and valuable consideration, and that the vendor did not continue to have an interest in the property by secret understanding ; and in the absen ce of all evidence to show such consideration, or in the absence of all evidence from which the inference can be fairly drawn, that the vendor did not continue to have an interest in the property, the legal presumption that he did, and that the sale was not for such consideration, becomes absolute and conclusive ; and the same will be the conclusion, though there is some evidence on ¿hese subjects, if it is insufficient to rebut the strong legal presumption arising from the vendor’s retention of possession after the sale. Curd v. Isaacsen, 36 W. Va. 391, 15 S. E. Rep. 171; Curd v. Miller, 7 Gratt. 185; Bindley v. Martin, 28 W. Va. 773.
And the fact of possession remaining with the mortgagor five years without demand made and pursued by a process of law on the part of the mortgagees, does not make a case in which, under the statute of frauds, the property is taken to be with the possession, and liable to the creditors of the person in possession. Rose v. Burgess, 10 Leigh 186.
d. Transactions between Relatives.—And in transactions between a father and his child, husband and wife, brother and sister, between whom there exists a strong natural motive to provide for each other, at the expense of existing creditors, it requires less proof to show fraud, where they are sought to be impeached as fraudulent; and, on the other hand, when a prima facie case is made, it requires much stronger proof to show fair dealing than would be required, if the transaction were between strangers. Livey v. Winton, 30 W. Va. 554, 4 S. E. Rep. 451; Coleman v. Cocke, 6 Rand. 618.
Likewise if a conveyance be made by a father to his son in consideration of old debts alleged to be due from the father to the son, and the same is unpeached by his creditors as having been made with intent to hinder, delay and defraud them in the collection of their debts, the son will be held to ‘.stricter proof of his honesty in dealing with his father, than a stranger would be. Knight v. Capito, 23 W. Va. 639.
Similarly, where a bill is filed by a creditor alleging that a deed from a father to his son was in fact voluntary, although reciling on its face a valuable .consideration, and the son in his answer denies the .allegation, and claims that he paid a valuable consideration for the land, the burden of proof is on the son, to show that a valuable consideration was paid, and the recital of the deed is no evidence against the creditor. Himan v. Thorn, 32 W. Va. 507, 9 S. E. Rep. 930.
<. Transactions between Husband, and Wife—'Where creditors of the husband seek to subject real .estate claimed by the wife, which has been conveyed to her, either directly or indirectly from her husband, the burden of showing that it was paid for by her out of her separate estate rests upon her, and, in the absence of such proof, it would he presumed that the purchase money was furnished by her husband. Hutchinson v. Boltz, 35 W. Va. 754, 14 S. E. Rep. 267; Mayhew v. Clark, 33 W. Va. 387, 10 S. E. Rep. 785; Wood v. Harmison, 41 W. Va. 376, 23 S. E. Rep. 560; Yates v. Law, 86 Va. 117, 9 S. E. Rep. 508; Spence v. Repass, 94 Va. 716, 27 S. E. Rep. 583; Crowder v. Garber, 97 Va. 565, 34 S. E. Rep. 470; McConville v. Nat. Val. Bank, 98 Va. 9, 34 S. E. Rep. 891; Runkle v. Runkle, 98 Va. 663, 37 S. E. Rep. 279; Maxwell v. Hanshaw, 24 W. Va. 405.
Thus, in a suit by creditors to set aside a deed to secure notes executed to the grantor by his wife, the grounds for setting aside being fraud, where the wife claims that the original transaction represented a loan by her to him, the burden is on her to show that fact, and also a contemporaneous promise by him to pay the debt. Darden v. Ferguson (Va. 1897), 27 S. E. Rep. 435.
And where a husband conveys a judgment to a trustee for the benefit of his wife, or executes a deed of trust for the same purpose, the burden is thrown upon the wife to show, as against creditors attacking either for fraud, that the transaction was fair and bona fide, to so secure to her a subsisting and valid debt. Livey v. Winton, 30 W. Va. 554, 4 S. E. Rep. 451.
Moreover, if property is alleged to have been purchased by a wife, or a conveyance of property is made to her during coverture, the burden is upon her to prove distinctly that she paid for it with means not derived from her husband. Evidence that she made the purchase, or that the property was conveyed to her, amounts to nothing, unless it is accompanied by clear and full proof that she paid for it with her own separate estate; and in the absence of such proof the presumption is that her husband furnished the means to pay for it and it will be subject to his debts. McMasters v. Edgar, 22 W. Va. 673; Stockdale v. Harris, 23 W. Va. 499; Brooks v. Applegate, 37 W. Va. 373, 16 S. E. Rep. 585; Grant v. Sutton, 90 Va. 771, 19 S. E. Rep. 784.
So if a wife delivers money or property of her own to her husband, which he uses in his business, the presumption is that such delivery was intended as a gift; and in order to constitute such delivery a loan, as against the creditors of the husband, the wife must prove an express promise of the husband to repay, or establish by the circumstances that it was a loan, and not a gift. Zinn v. Law, 32 W. Va. 447, 9 S. E. Rep. 871.
And in Morriss v. Harveys, 75 Va. 726, the court declared that, while it is true that neither a judgment nor the substitution of other securities will prevent a court of equity, when a deed is sought to be impeached, as voluntary, from looking to the original cause of action to ascertain whether it was a subsisting debt contracted at the time the deed was made, and where the right of third persons have intervened, as in the case of a settlement upon a wife and children, it is certainly competent for them to show, if they can, that not only thp judgment, but the debt upon which it is founded, has been satisfied and discharged by the substitution of a new security. The burden of proving that a transfer 3).y the husband to his wife’s brother was bona fide and for a valuable consideration rests upon the wife and upon the creditors. Thus, in Herzog v. Wether, 24 W. Va. 199, an insolvent husband transferred to his wife’s brother, by deed for an alleged valuable consideration, his personal property; soon thereafter the brother transferred the property in *184 like manner to another brother, and the latter immediately transferred it to his sister, the wife of the insolvent husband, as a gift in consideration of fraternal affection. In a controversy between the wife and the creditors of the husband as to the right to have the property subjected to the payment of debts contracted by the husband before he made the transfer, the above principle was laid down.
f. Indebtedness as an Element.—Moreover, where there is a transfer of property, either directly or indirectly, by an insolvent husband to his wife during coverture, it is justly regarded with suspicion; and unless it fairly appears that it was entirely free from any wrongful intent or purpose to withdraw the property from the husband’s creditors, it will not be sustained. And in such transfer there is a presumption against:the wife in favor of the husband’s creditors which she must overcome by affirmative proof. Maxwell v. Hanshaw, 24 W. Va. 405.
And in Hutchison v. Kelly, 1 Rob. 123 (1842), the presumption of fraud, in respect to voluntary conveyances when there are existing debts, came before the court for consideration. The conclusion drawn from the cases by Chancellor Kent in Reade v. Livingston (N. Y.), 3 Johns. Ch. Rep. 500, that if the grantor be indebted at the tim e of a voluntary conveyance. it is presumed to be fraudulent in respect to debts then existing, and no circumstances can repel the legal presumption of fraud, was approved by Judge Stanard but was disapproved by Judge Baldwin, who rendered the opinion of the court. The principle was declared by Judge Baldwin to be, that, while the indebtedness of the grantor at the time a voluntary conveyance raises a legal presumption against its validity, yet the presumption is only prima facie and not conclusive. The principles laid down in this case were approved in the Bank of Alexandria v. Patton, 1 Rob. 499 (1843). For fuller discussion of principles, and collection of cases, see ante, "Transfers Which Are Not Affected with Fraud, but'Are Inoperative as to Certain Persons.”
a. Intent of Grantor.—Under W. Va. Code 1899, ch. 74, relating to fraudulent conveyances, etc., a bona, fide purchaser for valuable consideration, who has no notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor is protected. But when the plaintiff has shown that the conveyance was made by the grantor with intent to d felay, hinder, or defraud creditors, then the grantor must meet this by showing that he was a purchaser for value, and without notice of the fraudulent intent of. his grantor; and the recital in the deed of the payment of the purchase money is not sufficient. Blackshire v. Pettit, 35 W. Va. 547, 14 S. E. Rep. 132.
And where the facts and circumstances connected with a fraudulent conveyance necessarily establish the complicity of the grantee in the fraudulent intent of the grantor, it is not necessary by direct proof to show notice of such intent to the grantee. Core v. Cunningham, 27 W. Va. 206.
2. Admissibility.
a. In General.—Large latitude is always given to the admission of evidence where the charge is fraud. Piedmont Bank v. Hatcher, 94 Va. 229, 26 S. E. Rep. 505. And it seems well settled, that the rule in pari delicto potior est conditio defendendis, does not apply, where the policy of the law requires that a fraudulent or vicious conveyance should be enforced; and, therefore, where a debtor makes a fraudulent conveyance of his property, for the purpose of protecting it from his creditors, the fraudulent grantee may enforce such conveyance in a court of law, and the debtor will not be allowed to defeat the claim by proving fraud. Starke v. Littlepage, 4 Rand. 368.
So the maxim, “Nemo allegans suam turpitudinem audiendus est,” if it be law, does not apply, where it is the creditors of the parties who assail the deed, and call on one of them to prove the fraud. Brown v. Mohneaux, 21 Gratt. 539.
b. Evidence Inadmissible by Reason of the Incompetency of Parties.—See monographic note on “Witnesses.”
Husband and Wife.—In William and Mary College v. Powell, 12 Gratt. 372, a postnuptial settlement was made by a husband upon his wife. The wife after-wards died; then a bill was filed by a creditor of the husband, against her children, to set aside the settlement as fraudulent as to the creditor. The court held that the husband was not a competent witness to prove the consideration upon which the settlement was made. So where husband and wife are both parties, and interested, their evidence is not admissible, because they are incompetent to testify. Perry v. Ruby, 81 Va. 317; Burton v. Mill, 78 Va. 468; Thornton v. Gaar, 87 Va. 315, 12 S. E. Rep. 753; Flynn v. Jackson, 93 Va. 341, 25 S. E. Rep. 1; De Farges v. Ryland, 87 Va. 404, 12 S. E. Rep. 805; Scott v. Rowland, 82 Va. 484, 4 S. E. Rep. 595.
c. When Evidence Is Admissible to Prove Consideration.—When the deed is assathed by third parties on the ground of fraud, it is admissible to show, in addition to the consideration expressed in the deed, that a substantial and valuable consideration was paid, or the converse. Casto v. Fry, 33 W. Va. 449, 10 S. E. Rep. 799. And this principle is extended to the introduction of parol evidence to show other valuable consideration, where a deed is made in consideration of “natural love and affection," and the further consideration of “one dollar.” Harvey v. Alexander, 1 Rand. 219.
And in Eppes v. Randolph, 2 Call 125, decided in 1799, and before the provision making any gift, conveyance, etc., upon consideration of marriage, void as to existing creditors (see Va. Code 1887, § 2459), and therefore not in the light of that provision, it was held that, although a deed does not mention that it was made in consideration of a marriage contract, the party may, nevertheless, aver and prove it.
d. When and against Whom Recitals in Deeds Are Admissible as Evidence.—It is the settled law of this state that the recital in a deed of the payment of a valuable consideration for the property therein conveyed is not admissible- as evidence of such payment as against a stranger or a creditor of the grantor assailing the deed as voluntary, and fraudulent as to him. Cohn v. Ward, 32 W. Va. 34, 9 S. E. Rep. 41; Childs v. Hurd, 32 W. Va. 66, 9 S. E. Rep. 362.
And under Va. Code 1887, § 2461, after a loan to a person with whom, or with those claiming under him, possession had remained five years, a deed is. made by the lender, declaring the original loan and continuing it; but this deed is never admitted to record, the deed cannot affect the creditor of the person in possession and ought not to be received as evidence against such creditors. Pate v. Baker, 8 Leigh 80.
Nevertheless, the recital in a postnuptial settlement of a consideration for the deed, is evidence against persons claiming under the settler, but not against the creditors of the settler contesting the fairness or the validity of the deed. Blow v. May *185 nard. 2 Leigh 29; Lawrence v. Blow, 2 Leigh 29; Perry v. Ruby, 81 Va. 317; Flynn v. Jackson, 93 Va. 341, 25 S. E. Rep. 1.
e. Prior or Subsequent Conduct of Persons Interested. -“Parol declarations of a grantor previous to the execution of a deed, and at the very moment of executing it, are admissible to explain the intention with which it was made. Land v. Jeffries, 5 Rand. 211.
But it is a well-settled rule of evidence that the declarations of the grantor, made subsequent to the conveyance, are not admissible to affect the title of his grantee ; and this is most certainly true if made a year subsequent. Casto v. Fry, 33 W. Va. 449, 10 S. E. Rep. 799; Claytor v. Anthony, 6 Rand. 285.
However, where fraud in the sale and purchase of property is in issue, the evidence of other frauds of like character, committed by the same party, at or about the same time, is admissible. Piedmont Bank v. Hatcher, 94 Va. 229, 26 S. E. Rep. 505.
3. weight.
a. In General— In order to set aside a conveyance claimed to be fraudulent as to creditors, it must be shown that both grantor and grantee participated in, or had knowledge of the fraud. Mer. Bank v. Belt (Va. 1898), 30 S. E. Rep. 467. And the fraud must be clearly proved. First Nat. Bank v. Bowman, 36 W. Va. 649, 14 S. E. Rep. 989; Greer v. O’Brien, 36 W. Va. 277, 15 S. E. Rep. 74; Arnold v. Slaughter, 36 W. Va. 589, 15 S. E. Rep. 250.
However, it is not necessary to prove that the grantee had positive knowledge of such fraudulent intent. It is sufíicien t to prove that the grantee had knowledge of facts and circumstances which would have excited the suspicion of a man of ordinary care and prudence, and put him upon inquiry as to the bonajides of the transaction, which inquiry would necessarily have led to a discovery of the fraud of Ms grantor. American Net & Twine Co. v. Mayo, 87 Va. 182, 33 S. E. Rep. 523.
And it is not enough that the purpose of the grantor be fraudulent. Knowledge of such purpose must be clearly brought home to the alienee. Where the latter had denied such knowledge on oath, it cannot be held that his denial is overthrown by mere circumstances of suspicion adduced against him. Batchelder v. White, 89 Va. 103.
But if a husband conveys a tract of land to Ms wife, and the conveyance is attacked by his creditors, the deed should be set aside if the evidence is conflicting; though the preponderance is against the good faith of the transaction. Noyes v. Carter (Va.), 23 S. E. Rep. 1.
Moreover, if a deed bears upon its face such marks or badges of fraud as to clearly show that the intent of the grantor was to delay, hinder, or defraud his creditors, such deed is fraudulent on its face, and the court will so hold it on inspection. In such case the thing itself speaks, and conclusively proclaims the fraudulent intent, because the grantor is taken to intend what he does, and the natural or necessary consequences of his act. Douglass Mdse. Co. v. Laird, 37 W. Va. 687, 17 S. E. Rep. 188. And evidence will not be received to contradict such conclusion. Long v. Meriden, etc., Co., 94 Va. 594. 27 S. E. Rep. 499.
And the usual badges of fraud are : Gross inadequacy of price ; uo .security taken for the purchase money; unusual length of credit for the bonds which have been taken at long periods ; conveyance in payment of antecedent indebtedness of a father to his son when they reside together ; threats and pendency of suits ; concealment of the transactions which relate to the conveyances ; keeping the deed unacknowledged and unrecorded fora considerable time ; remaining in possession by the grantor as before the conveyance. Any of these facts may make a case of prima facie fraud, calling on the parties for explanation. Hickman v. Trout, 83 Va. 478, 3 S. E. Rep. 131; Todd v. Sykes, 97 Va. 143, 33 S. E. Rep. 517; Paul v. Baugh, 85 Va. 955, 9 S. E. Rep. 329; Young v. Willis, 82 Va. 291; Armstrong v. Lachman, 84 Va. 726, 6 S. E. Rep. 129; Reilly v. Barr, 34 W. Va. 95, 11 S. E. Rep. 750; Didier v. Patterson, 93 Va. 534, 25 S. E. Rep. 661. But the privthege of longer time and possession, not exceeding five years, upon paying interest, does not affect validity ; nor will the fact that creditors may be hindered and delayed, in the absence of fraudulent intent. Keagy v. Trout, 85 Va. 390, 7 S. E. Rep. 329; Sipe v. Earman, 26 Gratt. 563; Young v. Willis, 82 Va. 291.
b. In Uquity.-—Whthe no rule can be laid down as to the extent of evidence required to set aside a conveyance as fraudulent, it must satisfy the chancellor’s conscience, and it may be, and generally must be, circumstantial. Armstrong, Cator & Co. v. Lachman, 84 Va. 726, 6 S. E. Rep. 129; Witz, Biedler & Co. v. Osburn, 83 Va. 227, 2 S. E. Rep. 33; Moore v. Ullman, 80 Va. 307.
c. Circumstantial Evidence.— Whthe the burden of proving a deed fraudulent as to creditors is upon th c-creditors, positive evidence of fraudulent intent is not required, but it may be deduced from the circum - stances of the transaction and the relation and situation of the parties to it and to each other. Circumstantial evidence if adequate to satisfy the court of such fraudulent intent, is sufficient, and often the only evidence attainable. Reynolds v. Gawthrop, 37 W. Va. 3, 16 S. E. Rep. 364; Moore v. Ullman, 80 Va. 307; Armstrong, Cator & Co. v. Lachman, 84 Va. 726, 6 S. E. Rep. 129; Witz, Biedler & Co. v. Osburn, 83 Va. 227, 2 S. E. Rep. 33.
Therefore, a fraudulent intent need not be established-by express proof but may be shown by iusl legal implication from the evidence where the circumstances are such that the intent may be justly inferred. Pratt v. Cox, 22 Gratt. 330; Johnson v. Wagner, 76 Va. 591; Lockhard v. Beckley, 10 W. Va. 101.
Or, as expressed in Martin v. Rexroad, 15 W. Va. 512, fraud should be legally inferred from the fact» and circumstances of the case, when the facts and circumstances are of such a character as to lead a reasonable man to the conclusion that the sale was made with the intent to hinder, delay or defraud existing or future creditors. And further, where the facts and circumstances in any case are such a» to make a. prima facie case of fraudulent intent, they are to be taken as conclusive evidence of such intent, unless rebutted by other facts and circumstances in the case. Sturm v. Chalfant, 38 W. Va. 248, 18 S. E. Rep. 451; Goshorn v. Snodgrass, 17 W. Va. 717; Hutchinson v. Boltz, 35 W. Va. 754, 14 S. E. Rep. 267; Himan v. Thorn, 32 W. Va. 507, 9 S. E. Rep. 930: Parker v. Valentine, 27 W. Va. 677: Bockhard v. Beckley, 10 W. Va. 88; Richardson v. Ralphsnyder, 40 W. Va. 15, 20 S. E. Rep. 854; Livesay v. Beard, 22 W. Va. 585; Saunders v. Parrish, 86 Va. 592, 10 S. E. Rep. 748; Paul v. Baugh, 85 Va. 955, 9 S. E. Rep. 329: Hickman v. Trout, 83 Va. 478, 3 S. E. Rep. 131: Alsop v. Catlett, 97 Va. 364, 34 S. E. Rep. 48; Reilly v. Barr. 34 W. Va. 95, 11 S. E. Rep. 750; Ferguson v. Daughtrey, *186 94 Va. 308, 26 S. E. Rep. 822. See Shaver v. Swartz, Va. Dec., vol. 1, p. 56.

d. Nature and Circumstances of the Transaction.

(a) In General. —Whthe fraud must be proved, the transaction itself may furnish proof of the fraud so satisfactory and conclusive as to outweigh the answers of the defendants denying the fraud, or even the evidence of witnesses. Hazlewood v. Forrer, 94 Va. 703, 27 S. E. Rep. 507; Todd v. Sykes, 97 Va. 143, 33 S. E. Rep. 517.
Therefore, wherever there appears to be connected with the transaction circumstances indicating excessive effort to give the appearance of fairness or regularity, which are not usual attendants of such business, the courts will regard such circumstances as badges of fraud. Hart v. Sandy, 39 W. Va. 644, 20 S. E. Rep. 665.
Thus, the including in such a deed perishable property which must be consumed or become worthless before the time fixed for the sale, though it may not of itself be sufficient to set aside the deed as fraudulent, yet it is a fact indicative of a fraudulent intent. Quarles v. Kerr, 14 Gratt. 48.
So when the facts and circumstances tend to show that a gift was intended, and that the husband used and dealt with the property as his own, the m ere parol testimony of the husband and wife of a private understanding between themselves that the transaction should be considered or was intended as a loan to the husband by the wife, and not a gift, will not, as against the creditors of an insolvent husband, rebut the presumption of a gift. Zinn v. Law, 32 W. Va. 447, 9 S. E. Rep. 871.
(ft) Conduct.—Fraud may be deduced from deceptive assertions, and from incidents and circumstances evincing a fraudulent intent. Sturm v. Chalfant, 38 W. Va. 248, 18 S. E. Rep. 451.
Thus, in a suit, if the burden of proof as to the existence and validity of certain alleged debts, be cast upon the grantee, and the persons, to whom or by whom any of such debts were paid, as well as the subscribing witnesses to such deed, are within the power of the grantee, and instead of examining them he becomes a witness for himself in regard to such consideration, such failure to call and examine such witnesses unless satisfactorily explained will be regarded as a badge of fraud upon said conveyance. Knight v. Capito, 23 W. Va. 639.
(c) Possession.—Concurrent possession of both the grantor and grantee in an absolute deed after the conveyance is a badge of fraud. Livesay v. Beard, 22 W. Va. 585.
However, it is not an evidence of fraud, for a mortgagor, of personal property to continue in possession, if the mortgage appears to have been made upon a ionafide consideration, and is duly recorded. But' if the mortgagor afterwards by deed releases the equity of redemption to the mortgagee (which deed is not duly recorded), and still retains the possession, such evidence is sufficient to render the deed void as against creditors. Clayborn v. Hill, 1 Wash. 177.
So when a conveyance is made in consideration of a pre-existing indebtedness, it is a badge of fraud for the grantee to retain the evidence of such indebtedness, in his possession uncancelled, after the conveyance has been completed. Webb v. Ingham, 29 W. Va. 389, 1 S. E. Rep. 816.
And in Forkner v. Stuart, 6 Gratt. 197, it was held, on a sale of slaves, if the possession of the slaves does not accompany the sale, but remains with the vendor, such retention of possession by the vendor is prima facie evidence of fraud, but is not conclusive ; and it is liable to be repelled by satisfactory legal evidence of the fairness and good faith of the transaction.
(d) Relationship.—Transactions between a father -and child, brother and sister, and many others, between whom there exists a natural and strong motive to provide for a dependent at the expense of honest creditors, if such transaction be impeached as fraudulent, may be shown to be fraudulent by less proof than would be required when different relations exist; and the party claiming the benefit of such transaction, will be held to a fuller and stricter proof of its justice; and the fairness of the transaction, after it is shown to be prima facie fraudulent, will require greater proof tobe established than would be required if the transaction were between strangers. Burt v. Timmons, 29 W. Va. 441, 2 S. E. Rep. 780.
Therefore, where a conveyance is made to a near relative, the fact is calculated to awaken suspicion, and the transaction will be closely scrutinized, though the fact is not of itself sufficient to raise a presumption of fraud. So mere proof of inadequacy of price is insufficient to implicate the grantee in the fraudulent intent as inadequacy of price, unless extremely gross, does not per se prove fraud. It must appear that the price was so manifestly inadequate as to shock the moral sense, and create at once upon its being mentioned a suspicion of fraud. Bierne v. Ray, 37 W. Va. 571, 16 S. E. Rep. 804.
But while transactions between father and son are subject to critical scrutiny, yet if the circumstances show them to be fair, open, and free from fraudulent intent, the relationship of the parties will not vitiate or render them void. Douglass v. Douglass, 41 W. Va. 13, 23 S. E. Rep. 671.
Consequently the mere fact that a party conveys his property to a son or a broth er is not per se a badge of fraud, but, when such conveyance is attacked as fraudulent, such relationship, connected with other circumstances may strengthen the presumption of. fraud. Farmers’ Transp. Co. v. Swaney (W. Va. 1900), 37 S. E. Rep. 592.
And the evidence to sustain an alleged parol gift by a father to his daughter on her marriage, should be clear and cogent. Collins v. Lofftus, 10 Leigh 5.
(e) Husband and Wife.—Transactions between a husband and wife, between whom there exists a natural and strong motive to provide for a dependent at the expense of honest creditors, if such transaction be impeached as fraudulent, may be shown to be fraudulent by less proof than would be required when different relations exist; and the party claiming the benefit of such transaction will be held to a fuller and stricter proof of its justice ; and the fairness of the transaction, after it is shown to be prima facie fraudulent, will require greater proof to be established than would be required if the transaction were between strangers. Burt v. Timmons, 29 W. Va. 441, 2 S. E. Rep. 780.
And moreover, if a husband conveys a tract, of land to his wife, and the conveyance is attacked as fraudulent by his creditors, the deed should be set aside if the evidence is conflicting, as the presumption is against the good faith of the transaction. Noyes v. Carter (Va.), 23 S. E. Rep. 1.
e. Insolvency—Insolvency does not deprive the owner of property of the right to sell it, unless the sale, be made with intent to hinder, delay and defraud his creditors ; and even then, the title of the purchaser will not be invalidated if the sale is *187 for valuable consideration, and the purchaser has no notice of the fraudulent intent of the grantor. It is not necessary, however, to prove positive knowledge of the fraudulent intent of the grantor. Ferguson v. Daughtrey, 94 Va. 308, 26 S. E. Rep. 822.
And the fact that a deed of trust of all of an insolvent's property, executed to secure part of his creditors, provides for payment of the surplus to the grantor, is not of itself evidence of fraudulent intent. Harvey v. Anderson (Va.), 24 S. E. Rep. 914.
But when a debtor in failing circumstances conveys property for a grossly inadequate consideration, that is evidence of fraudulent intent. Livesay v. Beard, 22 W. Va. 585.
f. Consideration.—Where Iraudulent intent against creditors is sought to be made out against a transfer of his property by a debtor on the sole ground of inadequacy of consideration, without any other •element tending to show fraud, the inadequacy must be so great as fairly to induce the belief of fraudulent intent. Wood v. Harmison, 41 W. Va. 376, 23 S. E. Rep. 560.
But it is evidence of fraud for a debtor who is in failing circumstances to convey property for a grossly inadequate consideration. Livesay v. Beard, 22 W. Va. 585.
g. Bill Pro Confesso.—And in Price v. Thrash, 30 Gratt. 515, it was held that, fraud could be proven by a bill taken pro confesso, in which notice of the fraud is clearly charged. Welsh v. Solenberger, 85 Va. 441, 8 S. E. Rep. 91.
F. INJUNCTION.—Where a deed is made by a father to his son of land for one-half of its value with the fraudulent intent of hindering, delaying and defrauding his creditors, and the deed of trust is executed at the same time to secure the payment of the bond for the purchase money, which bond is assigned to a third person, and the trustee in the deed of trust advertises the land for sale, and the creditor of the father at the time of the conveyance to the son obtains an injunction to prohibit the sale of the land by the trustee, the injunction ought not on motion to be dissolved whether the third person to whom the bond was assigned, was or was not a party to the fraud. Beall v. Shaull, 18 W. Va. 258.
And in Terrell v. Imboden, 10 Leigh 321, an obligee in a bond secured by a deed of trust, made a deed transferring the bond and deed of trust for the benefit of his creditors. Afterwards, at the request of the obligor, the obligee signed a receipt, stating, that on the day of the date thereof he received the amount of the bond. The bond was in fact executed without consideration, and the receipt was in fact given without any payment. The creditors for whose benefit the bond was assigned had no notice of its being without consideration until after the assignment: but the obligor knew of the assignment when he took the receipt. In a suit between the obligor and those claiming under the assignment, an injunction awarded to restrain the sale of the property conveyed to secure the bond, was dissolved; and the court ol appeals affirmed the order of dissolution. See monographic note on “Injunctions” appended to Claytor v. Anthony. 15 Gratt. 518.
G. TRIAL.
Directing an Issue—When Proper. —Where a charge of fraud is made in the bill, but denied in the answer, and the testimony is such as to leave it doubtful, a court of equity ought to direct an issue to ascertain it. Bullock v. Gordon, 4 Munf. 450; Marshall v. Thompson, 2 Munf. 412.
I When New Trial Proper.—If the jury find a sale to be bona Me and valid, the court ought not to set aside the verdict and award a new trial, unless the evidence is plainly insufficient to warrant the jury in concluding, that despite the fact that the vendor continued in possession of the property after the sale and the strong legal presumption thence arising, that the sale is not for a fair and valuable consideration, and that the vendor retained an interest in the property after the sale, and that such sale is fraudulent and void, the consideration is fair, and no interest in the property is retained by the vendor after the sale, and it is otherwise untainted with fraud. Bindley v. Martin, 28 W. Va. 773.
In another case the owner of a slave, residing in Tennessee, delivered a slave to his son-in-law, who was about to remove to Virginia, and took from him a deed, specifying that the slave was lent to his som in-law who was to take good care of her and deliver her back to him when he should demand her; the owner told the subscribing witness, that the deed was taken to show that the slave was his property, in case she should be taken by his son-in-law's creditors while the slave remained in Tennessee, but that “he intended to give her to his son-in-law anyhow.” The son-in-law removed with the slave to Virginia. In a contest between the owner and the son-in-law’s mortgagees of the slave, who had possession, the jury found a verdict for the owner, and the court refused to grant another trial: upon appeal it was held that a new trial was properly refused. Mahon v. Johnston, 7 Leigh 317.
H. DEGREE.
I. Interlocutory Degree -As a Bar to Another Suit.—In Quarles v. Kerr, 14 Gratt. 48, a trustee filed a bill to enforce the trust deed, and the court decreed the sale and distribution of the trust subject among the creditors provided for, except one, who wa.s excluded under the provisions of the deed, because he sued out an execution on his judgment. The creditor who was excluded then filed a bill to set aside the trust deed, on the ground that it was iraudulent on its face. The court held that the question whether the deed was iraudulent was not put in issue in the first case, and therefore could not be decided; and that as the decree in the first case was interlocutory merely, it could be no bar to the second suit.
2. When Degree is Final—Where a decree annuls a conveyance for fraud and directs a commissioner to ascertain the location and value of the lands and the liens thereon, it is not a final decree in the sense that an answer may not be filed thereafter. Welsh v. Solenberger, 85 Va. 441, 8 S. E. Rep. 91; Va. Code 1887, § 3275.
3. When Degree Is Erroneous. - Tf there be several parties who claim to be paid their debts, and to be indemnified for securityship out of the debtor’s lands and chattels conveyed by a third party, and there be an adversary creditor by judgment, who claims to have the deed set aside for fraud, and the property sold to pay his judgment debt, an interlocutory decree, which, without deciding on the validity of the deeds or the extent to which, and in what order the said .several debts are chargeable on the property, yet directs that the lands conveyed shall be sold for cash, and the proceeds to be paid into bank to the credit of the cause, is premature and erroneous, and has a tendency to sacrifice the property, by discouraging the creditors from bidding as they probably would, if their right *188 to satisfaction of their debts, etc., had been previously ascertained.
Sucha decree, however, may be proper as it regards the sale of chattels, because they are perishable, liable tobe wasted, and no sacrifice need be apprehended, because they maybe sold in detail. As to the lands, they should in such case, be put into the hands of the receiver, to be rented out, until the rights of the parties, in respect to the subject, are determined, having a due regard to the rights of the widow of the debtor. Cole v. McRae, 6 Rand. 644 (1828).
And in a suit by a judgment creditor to set aside a deed as fraudulent, it is error to set the deed aside in toto, as it is valid and binding between the parties to the fraud, and only void as to creditors. Love v. Tinsley, 32 W. Va. 25, 9 S. E. Rep. 44; Duncan v. Custard, 24 W. Va. 730.
Moreover, if a court, by its decree, has cancelled and set aside a fraudulent deed and charged the lands thereb3T attempted to be conveyed with the amount of the debt due to the fraudulent grantee, such decree is erroneous and will be for that cause reversed. Kan. Val. Bk. v. Wilson, 25 W. Va. 242.
4. When Improper fora Court to Decree as to the Sufficiency of Property to Pay Debts.— Where a deed of trust to secure creditors has been assathed by an unsecured creditor, and one of the secured debts has been stricken out by the appellate court as fraudulent, that court will not, upon mere estimates of the value of the property conveyed, declare that it is not more than sufficient to pay to the other secured creditors whose debts are not disputed. Stoneburner v. Motley, 95 Va. 784, 30 S. E. Rep. 364.
5. When Vendor of Land and Assignee of Debt Not Entitled to a Decree.—Although a contract for the sale of a tract of land be made with a husband, yet if it is understood between the parties at the time the contract is made that the purchase money is to be paid by the wife out of her separate estate, and the deed is made by the vendor to the husband, and a vendor’s lien retained to secure the purchase money, yet if the vendor knowingly receives the purchase money from the wife, in accordance with the original understanding, and such land is conveyed by the husband to the wife, in consideration of her payment of the purchase money, said vendor cannot attack such conveyance as fraudulent to a debt due from the husband as purchase money for a mule, of which the wife had no notice; neither can the assignee of such debt so attack such conveyance. Prim v. McIntosh, 43 W. Va. 790, 28 S. E. Rep. 742.
6. Decree When Relief in general Prayed for.—If in a bill by creditors to set aside a deed of trust for payment of debts, on the ground that it is fraudulent on its face, the bill does not ask for an account, but there is a prayer for general relief, and the deed is sustained as valid, the plaintiffs are entitled to an account. And in such case, the court below having dismissed the bill generally, and it not appearing that the plaintiffs asked for an account or that the court considered the question, the appellate court will affirm the decree sustaining the deed, and reverse it as to the account ; but with costs to the appellee. Marks v. Hill, 15 Gratt. 400.
And in Beall v. Silver, 2 Rand. 401, a creditor obtained judgment against his debtor, without running interest, and his execution was obstructed by a fraudulent conveyance made by the debtor, of his property. Subsequently a suit in chancery was brought to remove the obstruction of the conveyance, and for relief generally. The court declared that itwas proper for the chancellor to decree the interest, as well as to set aside the conveyance ; the prayer for general relief being sufficient to cover the demand for interest.
Moreover, in Austin v. Winston, 1 H. & M. 33, the court declared, that where a transaction between a debtor and certain of his creditors, is intended by them both to defraud the other creditors of the debtor, but the latter, under all the circumstances, of the case, is not so culpable as the former, it would seem that the court of equity ought not, altogether, to refuse relief to the debtor, but should apportion the relief granted to the decree of criminality in both parties, so as, on the one hand, to avoid the encouragement of fraud, and on the other, to prevent extortion and oppression.
7. Decree Setting Aside a Conveyance.—It is error to decree a conveyance void, in toto, and to set it aside absolutel3r, when it is void only as to creditors, whose debts were contracted before the time of making the conveyance ; but such error is not sufficient to reverse the decree, but may be corrected and the decree affirmed as corrected. Linsey v. McGannon, 9 W. Va. 154.
But when, in a suit to set aside a deed of conveyance as fraudulent and void as to plaintiff’s debt, and to sell the real estate therefor, the court ascertains and decrees that it is so fraudulent and void, it is error not to decree further, and set aside said deed and provide for the sale of the property conveyed to pay the debt. Chrislip v. Teter, 43 W. Va. 356, 27 S. E. Rep. 288. See in general connection, Cronie v. Hart, 18 Gratt. 739.
However, if the value of property settled, exceeds the value of the dower relinquished, the deed should be set aside as to the excess, and supported as to the residue. Taylor v. Moore, 2 Rand. 563.
And in Beall v. Silver, 2 Rand. 401, a creditor obtained judgment against his debtor, without running interest, and his execution was obstructed by a fraudulent conveyance made by the debtor, of his property. Subsequently a suit in chancery was brought to remove the obstruction of the conveyance, and for relief generally. The court declared that it was proper for the chancellor to decree the interest, as well as to set aside the conveyance; the prayer for general relief being sufficient to cover the demand for interest.
Sale—Fraudulent Representations.—If a person purchases goods on credit by means of fraudulent representations, or was under age at the time, it is no ground for annulling a sale of the goods made to secure a debt for borrowed money, due a person ignorant of such means, there being no collusion with the buyer to defraud other creditors. Jones v. Christian, 86 Va. 1017, 11 S. E. Rep. 984.
Deed of Trust—Trustee Not a Party to the Fraud.— And although a deed of trust to secure a creditor be made with intent to defraud other creditors of the grantor, it will not be set aside in the absence of proof that either the trustee or the creditor secured was a party to the fraud. Alsop v. Catlett, 97 Va. 364, 34 S. E. Rep. 48; Oberdorfer v. Meyer, 88 Va. 384, 13 S. E. Rep. 756; Paul v. Baugh, 85 Va. 955, 9 S. E. Rep. 329; Penn v. Penn, 88 Va. 361, 13 S. E. Rep. 707.
Antenuptial Settlement—Wife Connives at Fraud.— An antenuptial deed of marriage settlement will not be set aside at the instance of the husband’s creditors, on the ground that the wife connived at *189 the fraud, when the entire testimony shows that the wife, before marriage, had no knowledge of any fraud in the settlement. Noble v. Davies (Va. 1887), 4 S. E. Rep. 206.
8. Degree Ordering Sale.
Necessity of Convening Creditors, Reporting Debts, Ascertaining Rents and Profits.—in a suit brought to have an alleged fraudulent conveyance set aside, and to subject the property to the payment of the creditor’s claim, it is not required by statute, or by the general law on this subject, that all the creditors shall be convened, and their debts reported, or that it should be ascertained whether the rents will pay off his debts in live years, or in a reasonable time, before there can be a decree of sale. Core v. Cunningham, 37 W. Va. 206; Burt v. Timmons, 29 W. Va. 441, 2 S. E. Rep. 780; State v. Bowen, 38 W. Va. 91, 18 S. E. Rep. 375.
But the Code of Virginia 1860, ch. 186, § 9, requires that the lien of a judgment may be enforced in •equity, bnt forbids a decree of sale unless it appears that the rents and profits of the land subject to the lien will not satisfy the judgment in five years. Under this statute it was held in Cronie v. Hart, 18 Gratt. 739 (1868), that, before setting aside a deed as fraudulent towards its creditors, the court should direct an inquiry as to whether plaintiff's .debts could not be paid out of the rents and profits -of the property conveyed in five years.
Propriety of Decree for Sale When Trustee Is a Non= .resident.—in a suit by judgment creditors against their debtors and others to set aside a deed of trust and to subject the land to the payment of their debts, it appeared that the trustee living out of the state, was not a party to the suit, and had not signed the deed ; but it did not appear that he had accepted or acted under it. It was held, that the court might properly decree a sale of land, and appoint a commissioner to make the sale. Barger v. Buckland, 28 Gratt. 850.
When Deed Declared Void, It Should Be Set Aside and Provision Made for Sale.—When, in a suit to set aside a deed of conveyance as fraudulent and void as to the plaintiff’s debt, and to sell the real estate therefor, the court ascertains and decrees that it is so fraudulent and void, it is error not to decree further, and set aside said deed and provide for the sale of the property conveyed to pay the debt. Chrislip v. Teter, 43 W. Va. 356, 27 S. E. Rep. 288; Coleman v. Cocke, 6 Rand. 618.
And if the sale or conveyance is fraudulent, and gives unlawful preferences, then such sale or conveyance will be set aside, and a resale be made, so far as may be necessary to pay the honest claims against such insolvent fraudulent debtor. First Nat. Bank of Cumberland v. Parsons, 42 W. Va. 137, 24 S. E. Rep. 554.
A Moiety of the Land, Only Decreed to Be Sold.— Moreover, if a judgment debtor has conveyed away lands fraudulently, and retained other lands, the court on setting aside the conveyance at the suit of a judgment creditor, should direct a sale of a moiety of the whole, embracing in the moiety decreed to be sold, the land not conveyed by the debtor, and taking only so much of the land conveyed as will, with the land retained by the debtor, constitute a moiety of the aggregate of the whole. This was the rule, as declared in McNew v. Smith, 5 Gratt. 84 (1848), decided prior to the Va. Code 1849.
9. Decree for Sale of Property Other Than That Conveyed.—And where a deed void as to creditors, is valid as between the parties, in a .suit by the grantor’s creditors to subject the lands to payment of their claims, other property of the grantor in the hands of parties to the suit will be so applied to the payment of the claims. Fones v. Rice, 9 Gratt. 568.
So, on a bill against fraudulent donees of a deceased person and his heir to subject the lands conveyed and those descended, the whole may be decreed to be sold to satisfy the plaintiff’s debt. Blow v. Maynard, 2 Leigh 29.
10. Personal Degree.—And in a suit to subject lands to the payment of a lien and to set aside fraudulent conveyances, the report of sale having been made, and it being found that the sale will not produce sufficient money to pay the lien, expense of sale, and costs, a personal decree should be rendered against all the fraudulent grantors and grantees for any costs remaining after providing for the payment of the liens and expenses of sale. Hinton v. Ellis, 27 W. Va. 422.
However, where the property is still in possession of the fraudulent purchaser, the creditor cannot take a personal, money decree for his debt, or the value of the property, against the purchaser, but must subject the property itself: however, if the fraudulent purchaser has sold the property to a bona fide purchaser, so that it cannot be reached, the creditor may have a money decree against the fraudulent purchaser for the amount he received for the property, or, if that be less than its actual value, then for such value ; if the bona fide purchaser yet owes for the property, the money in his hands may be followed and subjected in his hands. Vance Shoe Co. v. Haught, 41 W. Va. 375, 23 S. E. Rep. 553.
And a creditor cannot have a judgment for the recovery of money against the grantee of a debtor on mere proof that the conveyance was fraudulent. Ringold v. Suiter, 35 W. Va. 186, 13 S. E. Rep. 46.
But in a creditors’ suit in chancery to avoid divers fraudulent conveyances made by the common debtor to different colluding grantees, all or an intermediate number of whom are made parties, the plaintiffs may elect to proceed wholly against any one of such grantees. And where such grantee, against whom plaintiffs elect to proceed, has, in the meanwhile, aliened the property received by him, and a personal decree is entered against him for the full amount of the plaintiffs’ claims (not exceeding the value of the debtor’s in terest in the property so received by him), such grantee is not entitled to a decree over against his codefendants for contribution. Ellington v. Moore, 4 Va. Law Reg. 608.
In Greer v. Wright, 6 Gratt. 154, a defendant, to evade the payment of an anticipated judgment, transferred to his brother two bonds, executed by two obligors, and also his interest in the real estate of his deceased father. Judgment was rendered against him, and he took the oath of an insolvent debtor and surrendered nothing. The plaintiff then filed a bill against the defendant and his brother, and one of the obligors and the sheriif, and obtained a decree setting aside the transfers. It was held that, in the first instance, it was erroneous to make a joint and personal decree against the defendant and his brother, but it should have been against the two obligors for the amount they respectively owed.
11. Operation and Effect of Decree.—Where in a bill by a creditor against the trustee and executor of his debtor to have payment of his debt, and charging, deed fraudulent, and voluntary in part, the court makes a decree directing a commissioner, *190 among other things, to take an account of debts of the testator, the statute of limitations ceases to run against creditors from the date of that decree. Harvey v. Steptoe, 17 Gratt. 289.
J. LIEN OF ATTACKING CREDITOR.
1. Lien of Plaintiff.
When Lien Begins.—In Wallace v. Treakle (1876), 27 Gratt. 479, sec. 2, ch. 179, Code 1849 (Va. Code 1860, ch. 179, sec. 2), came before the court for the first time for its true construction. Christian, J., delivering the opinion of the court, said : “I think there could be no doubt that it was the intention of the legislature to declare that a party creditor who filed his bill to avoid a fraudulent conveyance acquired a lien upon the property conveyed in such void conveyance, if he obtained a decree setting it aside, and in that event the lien attaches from the day the bill is filed.’'
This rule was also followed by the West Virginia court in Sweeney v. Grape Sugar Co., 30 W. Va. 443, 4 S. E. Rep. 431 (1887), where it was held, that general creditors who, by bill, answer, or petition, assail a deed of their debtor conveying lands as fraudulent, and succeed, have a lien on the land for their respective debts from the filing of such bill, answer, or petition. Hughes v. Hamilton, 19 W. Va. 366 (1882); Guggenheimer v. Lockridge, 39 W. Va. 457, 19 S. E. Rep. 874; Witz v. Lockridge, 39 W. Va. 463, 19 S. E. Rep. 876.
But subsequent to this time in the First National Bank of Cumberland v. Parsons, 42 W. Va. 137, 24 S. E. Rep. 554 (1896), and after the W. Va. Acts of 1891, p. 353, ch. 123 (W. Va. Code 1899, ch. 74, sec. 3), relating to acts void as to creditors and purchasers, the court held, that, in view of this statutory provision, "The former rule in equity of rewarding the diligence of the creditor who first assathed the fraudulent deed of an insolvent debtor with a preference over the other creditors must give way to the statute as inconsistent therewith upon this statute as thus amended. This equitable rule of rewarding the diligence of the first assailant of the fraudulent deed of an insolvent debtor sometimes led to such hardship, especially where the deed had to be held to be fraudulent on its face, that the preference given the vigilant assailant was sometimes worse than fraud.”
However, by the Va. Code 1887, sec. 2460, it is expressly declared that when In such case a creditor institutes a suit to avoid a gift, conveyance, etc,, on the grounds of its being void as to creditors and purchasers, such creditors shall have a lien from the Ume of bringing his suit. Craig v. Hoge, 95 Va. 276, 28 S. E. Rep. 317. And this advantage is not lost to a creditor secured by the deed of trust which is attacked as fraudulent, as he may, while claiming under the deed, assail the validity of other debts secured in the same deed. His attitude aspurchaser does not impair his right as creditor to assail such debts as fraudulent or otherwise void. Runkle v. Runkle, 98 Va. 663, 37 S. E. Rep. 279. However, it was held in Craig v. Hoge, 95 Va. 275, 28 S. E. Rep. 317, that, if a creditor plaintiff succeeds in his attack upon a particular preferred debt secured in the deed, the debt being fraudulent, such debt will be eliminated from the security, but the creditor will not be substituted to the priority of the eliminated debt; the deed will stand just as it was, with the exception of the fraudulent debt, which will be excluded. See Runkle v. Runkle, 98 Va. 663, 37 S. E. Rep. 279. See Cohn v. Ward, 36 W. Va. 516, 15 S. E. Rep. 140. This lien, however, is conditional. As against creditors, with or without notice, and purchasers for value without notice, the lien is valid, only from the time that the plaintiff creditor files his memorandum of lis pendens, as provided by Va. Code 1887, sec. 2460: Acts 1893-94, p. 614. Davis v. Bonney, 89 Va. 755, 17 S. E. Rep. 229. Moreover, this lien fastens only upon the property conveyed, and not, like the lien of a j udgment on all of the debtor’s estate. Davis v. Bonney, 89 Va. 755, 17 S. E. Rep. 229. Here, also, should be noted, the case of Oppenheim v. Myers (Va. 1901), 39 S. E. Rep. 218, in which an action was brought by defendants as creditors to set aside a voluntary conveyance by plaintiffs, and the conveyance was set aside. Afterwards the plaintiff’s husband died and she petitioned to have the property set aside as her homestead. It was held that the petition should be granted under Va. Code 1887, sec. 3642, providing that the homestead may be set apart at any time before it is subjected to sale, notwithstanding sec. 2460 providing that the credi tor causing such conveyance to be set aside shall have a lien on the property from the commencement of the action. See generally, Wright v. Hencock, 3 Munf. 521.
Furthermore, a creditor who joins in a suit to set aside a fraudulent conveyance some time after the filing of the bill is entitled to a lien prior to that of the creditor commencing the suit where the former filed such memorandum and the latter did not. Davis v. Bonney, 89 Va. 755, 17 S. E. Rep. 229.
Nevertheless, the priority of a creditor’s lien obtained by first filing a memorandum concerning a creditors’ suit to set aside a fraudulent conveyance as required by Va. Code 1887, sec. 2460, is not affected by the fact that the lien attached after the rendition of a decree in favor of such creditor and of another creditor who commenced the suit. Davis v. Bonney, 89 Va. 755, 17 S. E. Rep. 229.
2. Petitioning Creditor’s Lien.
When Lien Begins.—And it is further provided by Va. Code 1887, sec. 2460, that when a creditor comes into a suit which is brought by another creditor, to assail a fraudulent or voluntary conveyance, he shall have a lien from the time of filing his petition. This section was amended by Acts 1893-94, ch. 556, pp. 614, 615, so as to allow the petition to be filed in the clerk’s office at rules. 2 Va. Law Reg. 433. Such lien is conditional, and subject to the principles governing plaintiff’s lien, explained ante. “Lien of Plaintiff."
K. DISPOSITION OF THE PROPERTY.
1. In General.
Placing Lands in Hands of a Receiver.—If there be several parties who claim tobe paid their debts, and to be indemnified for securityship out of a debtor’s land and chattels conveyed by deeds, and there be an adversary creditor by judgment, who claims the right to have the deeds set aside for fraud, and the property sold to pay his judgment debt, an interlocutory decree, which, without deciding on the validity of the said several debts, yet directs that the land conveyed shall be sold for cash, and the proceeds to be paid into bank to the credit of the cause, is premature and erroneous, because it has a tendency to sacrifice the property, by discouraging the creditors from bidding, as that probably would, if their right to satisfaction of their debts had been previously ascertained.
Such a decree may be proper as it regards the sale of chattels, because they are perishable, liable to be wasted, and no sacrifice need be apprehended, because they may be sold In detail.
*191 As to the lands, they should in such case, be put into the hands of a receiver, to be rented out, until the rights of the parties, in respect to that subject, are determined, having a due regard to the rights ot the widow of the debtor. Cole v. M'Rae, 6 Rand. 644.
Directing an Account.—And in McNew v. Smith, 5 Gratt. 84, it was held to be a correct practice, for a court, at the suit of judgment creditor, upon setting aside a sale of personal property by the debtor, as fraudulent and void, and directing the purchaser to deliver the property to a commissioner who was directed to sell it, to direct an account of its value in order to subject the purchaser for the amount, upon his failure to so deliver the property to the commissioner as directed.
8. Subjecting Land to Claims of Creditors.— Where a deed is proven to have been made on a secret trust in fraud of the grantor’s creditors, it will be set aside: and the land subjected to the payment of the debts due the creditors. And a co-surety who has paid the debt by reason of the principal’s insolvency, and has been subrogated to the lien of the judgment paid, may have the land conveyed subjected to the payment of his claim. Hawker v. Moore, 40 W. Va. 49, 20 S. E. Rep. 848.
And though a trust deed is held to be valid in a suit by a judgment creditor to set it aside the creditor is entitled to the surplus after paying the debt secured. Sipe v. Earman, 26 Gratt. 563.
3. Costs and Attorney's Fees.—In a suit to su bject land to the payment of a judgment lien and to set aside deeds for fraud against the plaintiff, it is proper to decree that the costs of the suit shall be iirst paid out of the proceeds of sale of the land. Hinton v. Ellis, 27 W. Va. 422.
Moreover, in a suit by certain creditors to set aside a deed of trust because they were postponed to other creditors of the insolvent grantor, where the trustee was interested to a certain extent in one of the preferred claims, and. together with others, defended the suit, on a decree for plaintiffs, the court properly refused to allow the trustee attorney’s fees out of the fund. Darby v. Gilligan, 37 W. Va. 59, 16 S. E. Rep. 507. See monographic note on “Costs in Civil Cases.”
4. Priorities or Creditors.--It is unnecessary to ascertain the liens existing upon the land before making a distribution of the proceeds of the sale of the land, and the party filing the bill and setting aside the conveyance is entitled to be first satisfied out of such proceeds, unless there are prior liens. State v. Bowen, 38 W. Va. 91, 18 S. E. Rep. 375.
And where a deed of personal property, giving preference to creditors accepting its terms, was sought to be enforced in equity by creditors who had accepted its terms, and other creditors filed answers attacking it for fraud, such answers may be regarded as cross bills; and where such defendants were defeated in the court below and they alone appealed, and procured a reversal of the decree, and the deed was declared void, they have priority, there being no liens before their answers were filed, and are entitled to be first paid out of the fund. Clark v. Figgins, 31 W. Va. 156, 5 S. E. Rep. 643; First Nat. Bank v. Parsons, 42 W. Va. 137, 24 S. E. Rep. 554.
Moreover, where a grantor executes successive deeds of the same property to secure different debts, none of them being given subject to those previously executed, if any of the deeds are subsequently declared void as in fraud of creditors, the proceeds of the property must he applied to the payment of the remaining valid incumbrances in the order of their priorities, before any claims of unsecured creditors of the grantor can be paid. Lewis v. Caperton, 8 Gratt. 148.
In this connection, it was declared in Farmers’ Bank v. Corder, 32 W. Va. 233, 9 S. E. Rep. 220, that, although where a deed was made directly from a husband to his wife, and as part of the consideration she agreed to pay one joint creditor of her husband $300, and another $100, with interest on the amount, which debt the husband owed to these parties, and to secure which amount the vendor's lien was reserved, the deed might be set aside as to general creditors as fraudulent, yet the liens thus reserved must be respected as liens on the equitable title conveyed as of the date of the record of said deed, if said claims were valid in other respects.
Nevertheless, creditors not secured in a deed of trust, who sue to overthrow it on the ground that the debts secured and preferred are fraudulent, and succeed in overthrowing some only of the debts secured, are not advanced in priority so as to take the rank of the debts overthrown, and get payment out of the property conveyed in preference to buna .Me creditors preferred by the deed, but the whole property remains to answer the demands of the bonajlde preferred creditors, according to the deed. Cohn v. Ward, 36 W. Va. 516, 15 S. E. Rep. 140. See ante, “Lien of Creditor.”
L. REVIEW.
1. Presentation and Reservation in Lower Court of Grounds of Review.
When Objection Should Be Hade in Lower Court.
Charge of Fraud.—Where it is not charged in the court below that a conveyance is fraudulent, such charge cannot, for the first time, be made in the appellate court. Pracht v. Lange, 81 Va. 711.
Excessive Judgment.—Moreover, it is too late for a grantor in a fraudulent deed to urge in appellate court that the judgment is excessive in a suit to annul that deed and subject the property to that judgment. Wray v. Davenport, 79 Va. 19.
Omission by Court to Hake Such Direction That a Complete Decree Can Be Rendered— Cause for Reversal. —However, where it appears, in a suit to set aside a bond and trust deed as fraudulent towards creditors, that they have been assigned, the failure of the court, before entering a decree on the merits, to direct the assignee to be made a parly, so that a complete decree, binding on all persons interested, maybe rendered, is cause for reversal on appeal, though no obj ection for want of parties was taken in the trial court. Thornton v. Gaar, 87 Va. 315, 12 S. E. Rep. 753.
Failure to Fthe Copy of Execution and Judgment —No Ground for Reversal.—But in a suit in equity by a judgment creditor to set aside fraudulent conveyances of properly by his debtor, where the judgment and execution are admitted by the pleadings, the failure to file a copy of them in the cause is not a ground of reversal of the decree of the court below setting aside the conveyances, especially if no objection is taken in that court to the failure to file them. McNew v. Smith, 5 Gratt. 84.
Defendants Are Not Summoned to Answer Petition —Question Cannot Be Raised in Appellate Court.- And in a suit to set aside an alleged fraudulent conveyance, other creditors filed their petitions setting up their debts, asked to be made parties plaintiff, and prayed certain reliei, but did not ask for process *192 against defendants. An account was directed to ascertain the priority of the claims, of which defendants had full notice, and on the coming in of the commissioner’s report the grantee filed exceptions. It was held, that the objection that the defendants were not summoned to answer the petitions could not he raised for the first time on appeal. Flynn v. Jackson, 93 Va. 341, 25 S. E. Rep. 1.
2. What Parties Are Entitled to Allege error.—And in a suit to set aside a fraudulent conveyance from a husband to his wife, it was declared that depositions taken after notice given the wife may be read against her; hut, when read against her husband also, the wife, who alone appeals from a decree setting aside her deed, is not entitled to a reversal of the decree because of a want of notice to her husband of the taking of the depositions. Silverman v. Greaser, 27 W. Va. 550.
Moreover, in a suit to set aside a fraudulent conveyance, the judgment debtor cannot question the fraud on appeal, where the alienees do not appeal. Price v. Thrash, 30 Gratt. 515.
3. Reversal Dependent upon a Question of Fact.—And in a suit to set aside a deed from a man to his intended wife given, prior to 1887, in consideration of marriage, it was shown that, when the deed was given, he was insolvent, and had recently purchased a good deal of property on credit, and that the deed would leave the creditors unpaid. Prior to the marriage a notice was served on the wife in which such suspicious circumstances were set forth. Upon these facts, it was held that the commissioner who heard and saw the witnesses, having held that there was no proof of fraudulent participation on the part of the grantee, and his report having been confirmed by the circuit court the deed would not he set aside. Moore v. Butler, 90 Va. 683, 19 S. E. Rep. 850.